### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| **BRANDON WILDER,** *et. al.,* **Individually and on behalf of all others similarly situated** | § § § § | Civil Action No. 1:22-CV-00681-JPH |
| | § | |
| *Plaintiffs,* | § § | **JURY TRIAL DEMANDED** |
| **v.** | § § | **COLLECTIVE ACTION PURUSANT ] U.S.C. § 216(b)** |
| | § | |
| **THE KROGER CO.,** | § § | **CLASS ACTION PURUSANT TO FED** |
| *Defendant.* | § § | **CIV. P. 23(b)(3)** |
| | § § § | |

### <u>FIRST AMENDED COLLECTIVE/CLASS ACTION COMPLAINT</u>

Plaintiffs, Brandon Wilder, Christy Tyndall, Michael Bauer, Virginia Henson, Carissa Miller,

Jeremy Smith, Daniel Keplinger, Robert Acker, Yvonne Copeland, and Dalte Beal bring this action

individually and on behalf of all current and former employees ("Plaintiffs and the Putative

Collective/Class Members") who worked for The Kroger Co. or any of its subsidiaries[1] ("Defendant"

---

[1] Kroger's subsidiaries include but are not limited to: 84.51 LLC; 84.51 HQ Building Company, LLC; Alpha Beta Company; Ansonborough Square Investors I, LLC; Ansonborough Square Retail, LLC; Ardrey Kell Investments, LLC; Bay Area Warehouse Stores, Inc.; Beech Tree Holdings, LLC; Bleecker Ventures LLC; Bluefield Beverage Company; Box Cutter, Inc.; Cala Co.; Cala Foods, Inc.; CB&S Advertising Agency, Inc.; Cheeses of All Nations, Inc.; Country Oven, Inc.; Crawford Stores, Inc.; Creedmoor Retail, LLC; Dillon Companies, LLC; Dillon Real Estate Co., Inc.; Distribution Trucking Company; Dotto, Inc.; Edgewood Plaza Holdings, LLC; Embassy International, Inc.; Farmacia Doral, Inc.; FM, Inc.; FMJ, Inc.; Food 4 Less GM, Inc.; Food 4 Less Holdings, Inc.; Food 4 Less Merchandising, Inc.; Food 4 Less of California, Inc.; Food 4 Less of Southern California, Inc.; Fred Meyer, Inc.; Fred Meyer Jewelers, Inc.; Fred Meyer Stores, Inc.; Glasswing Labs LLC; Glendale/Goodwin Realty I, LLC; Grubstake Investments, LLC; Harris Teeter, LLC; Harris Teeter Properties, LLC; Harris-Teeter Services, Inc.; Harris Teeter Supermarkets, Inc.; Healthy Options Inc.; Henpil, Inc.; Hood-Clayton Logistics LLC; HT Fuel DE, LLC; HT Fuel NC, LLC; HT Fuel SC, LLC; HT Fuel VA, LLC; HTGBD, LLC; HTP Bluffton, LLC; HTP Plaza LLC; HTP Relo, LLC; HTPS, LLC; HTTAH, LLC; Hughes Markets, Inc.; Hughes Realty, Inc.; Inter-American Foods, Inc.; Inter-American Products, Inc.; IRP, LLC; I.T.A., Inc.; ITAC 119, LLC; ITAC 265, LLC; Jondex Corp.; Jubilee Carolina, LLC; J.V. Distributing, Inc.; KCDE-2 LLC; KCDE-3 LLC; KCDE-4 LLC; KCDE-5 LLC; KCDE – 2013, LLC; Kee Trans, Inc.; KGO LLC; Kiosk Medicine Kentucky, LLC; Kirkpatrick West Retail, LLC; KPF, LLC; KPS, LLC; KRGP LLC; KRLP Inc.; The Kroger Co. of Michigan; Kroger Community Development Entity, LLC; Kroger

or "Kroger")—anywhere in the United States, at any time from January 1, 2022 through the final disposition of this matter, and were affected by the MyTime payroll system, to recover compensation, liquidated damages, treble damages, compensatory damages, and attorneys' fees and costs pursuant to the provisions of Sections 207 and 216(b) of the Fair Labor Standards Act of 1938 ("FLSA"), as amended 29 U.S.C. §§ 201–19, and the Kentucky Wage and Hour Act, KY. REV. STAT. ANN. §§ 337.010–337.994 ("Kentucky Acts"); Alabama common-law; Arizona Fair Wages and Healthy Families Act, A.R.S. §§ 23-350–362 ("Arizona Acts"), the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1—105/15, and the Illinois Wage Payment and Collection Act ("IWPCA") 820 ILCS 115/1—115/15 (collectively, the "Illinois Acts"); Michigan common law; the Ohio Minimum Fair

---

Dedicated Logistics Co.; Kroger Fulfillment Network, LLC; Kroger G.O. LLC; Kroger HQ LLC; Kroger Limited Partnership I; Kroger Limited Partnership II; Kroger LM Real Estate Holdings, LLC; Kroger Management Co.; Kroger Management – Corryville, LLC; Kroger Management – NMTC Athens I, LLC; Kroger Management – NMTC Champaign I, LLC; Kroger Management – NMTC Champaign II, LLC; Kroger Management – NMTC Cincinnati I, LLC; Kroger Management – NMTC Dallas I, LLC; Kroger Management – NMTC Danville I, LLC; Kroger Management – NMTC Logansport I, LLC; Kroger Management – NMTC Missouri I, LLC; Kroger Management – NMTC Oak Ridge I, LLC; Kroger Management – NMTC Olney I, LLC; Kroger Management – NMTC Omaha I, LLC; Kroger Management – NMTC Portsmouth I, LLC; Kroger Management – NMTC Starkville I, LLC; Kroger Management – NMTC Topeka I, LLC; Kroger MC Holdings, LLC; Kroger MTL Management, LLC; Kroger NMTC Fremont I, LLC; Kroger Opportunity Fund I, Inc.; Kroger OZ1 Inc.; Kroger OZ2 Inc.; Kroger OZ3 Inc.; Kroger OZ1 LLC; Kroger OZ2 LLC; Kroger OZ3 LLC; Kroger Prescription Plans, Inc.; Kroger Specialty Infusion AL, LLC; Kroger Specialty Infusion CA, LLC; Kroger Specialty Infusion Holdings, Inc.; Kroger Specialty Infusion TX, LLC; Kroger Specialty Pharmacy CA, LLC; Kroger Specialty Pharmacy FL 2 LLC; Kroger Specialty Pharmacy Holdings, Inc.; Kroger Specialty Pharmacy Holdings I, Inc.; Kroger Specialty Pharmacy Holdings 2, Inc.; Kroger Specialty Pharmacy Holdings 3, Inc.; Kroger Specialty Pharmacy, Inc.; Kroger Specialty Pharmacy LA, LLC; Kroger Texas L.P.; KV Anderson, LLC; Latta Village, LLC; LCGP3 Home Cooking, Inc.; The Little Clinic LLC; The Little Clinic Management Services LLC; The Little Clinic of Arizona LLC; The Little Clinic of Colorado LLC; The Little Clinic of IN LLC; The Little Clinic of Kansas LLC; The Little Clinic of Mississippi LLC; The Little Clinic of Ohio LLC; The Little Clinic of Tennessee LLC; The Little Clinic of TX LLC; The Little Clinic of VA LLC; Local Mkt LLC; Main & Vine LLC; Matthews Property 1, LLC; Mega Marts, LLC; Michigan Dairy, L.L.C.; Murray's Cheese LLC; Murray's LIC LLC; Murray's Table LLC; Pace Dairy Foods Company; Paramount Logistics, LLC; Pay Less Super Markets, Inc.; Peyton's-Southeastern, Inc.; Plum Labs LLC; Pontiac Foods, Inc.; Queen City Assurance, Inc.; Ralphs Grocery Company; Ralphs Fresh Fare RBF, LLC; Relish Labs LLC; RGC Southeast Properties LLC; Rocket Newco, Inc.; Roundy's Acquisition Corp.; Roundy's Illinois, LLC; Roundy's, Inc.; Roundy's Supermarkets, Inc.; RCK Foods Second Story, Inc.; Shop-Rite, LLC; Smith's Beverage of Wyoming, Inc.; Smith's Food & Drug Centers, Inc.; Southern Ice Cream Specialties, Inc.; Stallings Investors I, LLC; Sunrise R&D Holdings, LLC; Sunrise Technology LLC; TLC Corporate Services LLC; TLC Immunization Clinic LLC; TLC of Georgia LLC; Topvalco, Inc.; Ultimate Mart, LLC; Ultra Mart Foods, LLC; Vine Court Assurance Incorporated; Vitacost.com, Inc.; Woodmont Holdings, LLC.

Wage Standards Act, O.R.C. §§ 4111–4111.99, ("Ohio Wage Act"), and the Ohio Prompt Pay Act ("OPPA"), O.R.C. § 4113.15–4113.99 (the Ohio Wage Act and the OPPA will be collectively referred to as the "Ohio Acts"); Tennessee common law; Texas common law; West Virginia Wage Payment and Collection Act ("West Virginia Acts") W. Va. Code §21-5-1–21-5-18; and Virginia common law.

Plaintiffs' FLSA claims are asserted as a collective action under Section 16(b) of the FLSA, 29 U.S.C. § 216(b), while the additional state law claims are asserted as class actions under Federal Rule of Civil Procedure 23. The following allegations are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others.

## I.
## OVERVIEW

1.      This is a collective action to recover liquidated damages, and other applicable penalties brought pursuant to the FLSA and class actions pursuant to the state laws of Kentucky, Alabama, Arizona, Illinois, Michigan, Ohio, Tennessee, Texas, Virginia, and West Virginia under FED. R. CIV. PROC. 23 to recover unpaid wages, liquidated damages, and other applicable penalties.

2.      Plaintiffs and the Putative Collective/Class Members are those similarly situated persons who have worked for Kroger at any time during the relevant time period(s) and have not been paid for all hours worked, nor the correct amount of overtime in violation of state and federal law.

3.      During the relevant time periods, Kroger's time keeping system, known as MyTime suffered outages and glitches which affected Plaintiffs and the Putative Collective/Class Members recorded hours of work and pay.

4.      Since the outages and glitches, which have continued since the installation of the MyTime payroll system, Plaintiffs and the Putative Collective/Class Members have not been paid for all hours worked, received payment outside the time frames required under state and federal law, been paid at the incorrect rates of pay, not paid all earned compensation, and suffered improper wage deductions all in violation of state and federal law.

5.      As a result, Kroger's employees—Plaintiffs and the Putative Collective/Class Members—were not paid (and remain unpaid) for all hours worked after the onset of the time clock outages in violation of the FLSA and relevant state laws.

6.      Kroger knowingly and deliberately failed to compensate Plaintiffs and the Putative Collective/Class Members for all hours worked and the proper amount of overtime on a routine and regular basis during the relevant time period.

7.      Plaintiffs and the Putative Collective/Class Members did not and currently do not perform work that meets the definition of exempt work under the FLSA or relevant state laws.

8.      Plaintiffs and the Putative Collective/Class Members seek to recover liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b), and to recover all unpaid wages, liquidated damages, treble damages, compensatory damages, and other damages owed under the state laws of Alabama, Arizona, Illinois, Kentucky, Michigan, Ohio, Tennessee, Texas, Virginia, and West Virginia as class actions pursuant to Federal Rule of Civil Procedure 23.

9.      Plaintiffs pray that all similarly situated workers be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to this lawsuit.

10.     Plaintiffs also pray that the Rule 23 classes are certified as defined herein, and the Plaintiffs designated herein be named as Class Representatives.

## II.
## THE PARTIES

11.     Plaintiff, Brandon Wilder ("Wilder") was employed by Kroger in Kentucky during the relevant time periods. Plaintiff Wilder did not receive compensation for all hours worked in the time frame required under the FLSA and the Kentucky Acts.[2]

---

[2] The written consent of Wilder is on file with this Court. ECF No. 1–1.

12. Plaintiff Christy Tyndall ("Tyndall") was employed by Kroger in Alabama during the relevant time periods. Plaintiff Tyndall did not receive compensation for all hours worked in the time frame required under the FLSA and Alabama state law.[3]

13. Plaintiff Michael Bauer ("Bauer") was employed by Kroger in Arizona during the relevant time periods. Plaintiff Bauer did not receive compensation for all hours worked in the time frame required under the FLSA and Arizona state law.[4]

14. Plaintiff Virginia Henson ("Henson") was employed by Kroger in Illinois during the relevant time periods. Plaintiff Henson did not receive compensation for all hours worked in the time frame required under the FLSA and Illinois state law.[5]

15. Plaintiff Carissa Miller ("Miller") was employed by Kroger in Michigan during the relevant time periods. Plaintiff Miller did not receive compensation for all hours worked in the time frame required under the FLSA and Michigan state law.[6]

16. Plaintiff Jeremy Smith ("Smith") was employed by Kroger in Ohio during the relevant time periods. Plaintiff Smith did not receive compensation for all hours worked in the time frame required under the FLSA and Ohio state law.[7]

17. Plaintiff Daniel Keplinger ("Keplinger") was employed by Kroger in Tennessee during the relevant time periods. Plaintiff Keplinger did not receive compensation for all hours worked in the time frame required under the FLSA and Tennessee state law.[8]

---

[3] The written consent of Tyndall is on file with this Court. ECF No. 31–1.

[4] The written consent of Bauer is on file with this Court. ECF No. 31–1.

[5] The written consent of Henson is on file with this Court. ECF No. 28–1.

[6] The written consent of Miller is on file with this Court. ECF No. 29–1.

[7] The written consent of Smith is on file with this Court. ECF No. 16–2.

[8] The written consent of Keplinger is on file with this Court. ECF No. 8–1.

18. Plaintiff Robert Acker ("Acker") was employed by Kroger in Texas during the relevant time periods. Plaintiff Acker did not receive compensation for all hours worked in the time frame required under the FLSA and Texas state law.[9]

19. Plaintiff Yvonne Copeland ("Copeland") was employed by Kroger in Virginia during the relevant time periods. Plaintiff Copeland did not receive compensation for all hours worked in the time frame required under the FLSA and Virginia state law.[10]

20. Plaintiff Dalte Beal ("Beal") was employed by Kroger in West Virginia during the relevant time periods. Plaintiff Beal did not receive compensation for all hours worked in the time frame required under the FLSA and West Virginia state law.[11]

21. The FLSA Collective Members are those current and former employees who were employed by Kroger or any of its subsidiaries anywhere in the United States from January 1, 2022, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiffs worked and were paid.

22. The Kentucky Class Members are those current and former employees who were employed by Kroger in Kentucky, at any time from January 1, 2022, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Wilder worked and was paid.

23. The Alabama Class Members are those current and former employees who were employed by Kroger in Alabama, at any time from January 1, 2022, through the final disposition of

---

[9] The written consent of Acker is on file with this Court. ECF No. 36–1.

[10] The written consent of Copeland is on file with this Court. ECF No. 14–2.

[11] The written consent of Beal is on file with this Court. ECF No. 4–1.

this matter, and have been subjected to the same illegal pay system under which Plaintiff Tyndall worked and was paid.

24. The Arizona Class Members are those current and former employees who were employed by Kroger in Arizona, at any time from January 1, 2022, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Bauer worked and was paid.

25. The Illinois Class Members are those current and former employees who were employed by Kroger in Illinois, at any time from January 1, 2022, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Henson worked and was paid.

26. The Michigan Class Members are those current and former employees who were employed by Kroger in Michigan, at any time from January 1, 2022, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Miller worked and was paid.

27. The Ohio Class Members are those current and former employees who were employed by Kroger in Ohio, at any time from January 1, 2022, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Smith worked and was paid.

28. The Tennessee Class Members are those current and former employees who were employed by Kroger in Tennessee, at any time from January 1, 2022, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Keplinger worked and was paid.

29. The Texas Class Members are those current and former employees who were employed by Kroger in Texas, at any time from January 1, 2022, through the final disposition of this

matter, and have been subjected to the same illegal pay system under which Plaintiff Acker worked and was paid.

30.     The Virginia Class Members are those current and former employees who were employed by Kroger in Virginia, at any time from January 1, 2022, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Copeland worked and was paid.

31.     The West Virginia Class Members are those current and former employees who were employed by Kroger in West Virginia, at any time from January 1, 2022, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Beal worked and was paid.

32.     Defendant The Kroger Co. is a domestic for-profit corporation, organized under the laws of the State of Kentucky and has been served and appeared herein.

### III.
### JURISDICTION & VENUE

33.     This Court has federal question jurisdiction over the FLSA claims pursuant to 28 U.S.C. § 1331 as this is an action arising under 29 U.S.C. §§ 201–19.

34.     This Court has original jurisdiction over the additional state law claims (add CAFA language)

35.     This Court has supplemental jurisdiction over the additional state law claims pursuant to 28 U.S.C. § 1367.

36.     Plaintiffs have not entered into an arbitration agreement that would affect the Court's subject-matter jurisdiction.

37.     This Court has general personal jurisdiction over Kroger because Ohio qualifies as its home state.

38.     Venue is proper pursuant to 28 U.S.C. § 1391 in the Southern District of Ohio because this is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

39.     Additionally, Kroger's corporate headquarters are in Cincinnati, Ohio, which is located within this District and Division.

## IV.
## ADDITIONAL FACTS

40.     Kroger is one of the largest grocery retail chain stores in the United States.[12]

41.     To provide its services, Kroger employed (and continues to employ) numerous workers—including Plaintiffs and the individuals that make up the putative collective and classes.

42.     While exact job titles may differ, these employees were subjected to the same or similar illegal pay practices for similar work throughout Kroger's facilities in the United States.

43.     Plaintiff Wilder was employed by Kroger as a delivery driver and as a warehouse worker in Union, Kentucky.

44.     Due to the MyTime outages and glitches, Plaintiff Wilder was not paid during his employment with Kroger and only received some of his pay after he was forced to quit due to lack of pay.

45.     Kroger has wholly failed to pay Plaintiff Wilder for his last two (2) weeks of work.

46.     Plaintiff Tyndall is employed by Kroger as a Front-End Customer Service in Opelika, Alabama.

47.     Due to the MyTime outages and glitches, Plaintiff Tyndall has not been paid for all hours worked, including overtime hours, has had improper deductions applied to her wages, has been

---

[12] https://www.thekrogerco.com/about-kroger/our-business/.

paid at the incorrect rate of pay, and has not been paid all wages due within the time frame required under state and federal law.

48.     Plaintiff Bauer is employed by Kroger as a Courtesy Clerk in Meza, Arizona.

49.     Due to the MyTime outages and glitches, Plaintiff Bauer has not been paid for all hours worked, including overtime hours, has had improper deductions applied to his wages, has been paid at the incorrect rate of pay, and has not been paid all wages due within the time frame required under state and federal law.

50.     Plaintiff Henson is employed by Kroger as a Food Service Management Representative in Decatur, Illinois.

51.     Due to the MyTime outages and glitches, Plaintiff Henson has not been paid for all hours worked, including overtime hours, has had improper deductions applied to her wages, has been paid at the incorrect rate of pay, and has not been paid all wages due within the time frame required under state and federal law.

52.     Plaintiff Miller is employed by Kroger as a Cashier in Plymouth, Michigan.

53.     Due to the MyTime outages and glitches, Plaintiff Miller has not been paid for all hours worked, including overtime hours, has had improper deductions applied to her wages, has been denied earned bonuses, has been paid at the incorrect rate of pay, and has not been paid all wages due within the time frame required under state and federal law.

54.     Plaintiff Smith has been employed by Kroger as a Delivery Driver in Columbus, Ohio.

55.     Due to the MyTime outages and glitches, Plaintiff Smith has not been paid for all hours worked, including overtime hours, hashad improper deductions applied to his wages, has been paid at the incorrect rate of pay, and has not been paid all wages due within the time frame required under state and federal law.

56.     Plaintiff Keplinger is employed by Kroger as a Nutrition Lead in Lawrenceburg, Tennessee.

57.     Due to the MyTime outages and glitches, Plaintiff Keplinger has not been paid for all hours worked, including overtime hours, hashad improper deductions applied to his wages, has been paid at the incorrect rate of pay, and has not been paid all wages due within the time frame required under state and federal law.

58.     Plaintiff Acker was employed by Kroger as an Overnight Stocker in Denton, Texas.

59.     Due to the MyTime outages and glitches, Plaintiff Acker has not been paid for all hours worked, including overtime hours, has had improper deductions applied to his wages, and has not been paid all wages due within the time frame required under state and federal law. Indeed, immediately after MyTime was installed in his store in March 2022, Plaintiff Acker began noticing several hours were regularly missing from his pay each week. Although he was eventually paid for *some* of his unpaid hours, that pay often came weeks or months after the compensation was originally due.

60.     Plaintiff Copeland is employed by Kroger as aa Apparel Lead in Chesapeake, Virginia.

61.     Due to the MyTime outages and glitches, Plaintiff Copeland has not been paid for all hours worked, including overtime hours, had improper deductions applied to her wages, has been paid at the incorrect rate of pay, and has not been paid all wages due within the time frame required under state and federal law. Indeed, since MyTime was installed in her store, Plaintiff Copeland's wages frequently omit whole days worked from her payable time.

62.     Plaintiff Beal was employed by Kroger as a Floral Lead in Weirton, West Virginia.

63.     Due to the MyTime outages and glitches, Plaintiff Beal has not been paid for all hours worked, including overtime hours, had had improper deductions applied to her wages, has been paid at the incorrect rate of pay, and has not been paid all wages due within the time frame required under state and federal law.

64.     Kroger employed (and continues to employ) other individuals who perform(ed) the same or similar job duties under the same pay provisions as Plaintiffs.

65.     Moreover, Plaintiffs and the Putative Collective/Class Members are similarly situated with respect to their pay structure and, as set forth above, the pay plan of Kroger which resulted in the complained of FLSA and state law violations alleged herein.

66.     Specifically, after installation of the MyTime system, Plaintiffs and the Putative Collective/Class Members began to encounter outages and glitches with the payroll system.

67.     Due to these outages and glitches, Plaintiffs and the Putative Collective/Class Members suffered a multitude of compensation issues including but not limited to: not being paid for all hours worked, including overtime hours, not being paid at least the minimum wage, not being paid earned bonuses, not being paid accrued vacation time, being paid at the incorrect rate of pay, and not being paid within the time frames required under state and federal law.

68.     During the relevant time period, Plaintiffs were (and continue to be) paid on a weekly basis.

69.     On information and belief, all other Putative Collective/Class Members employed by Kroger and any of its subsidiaries throughout the United States have also suffered the same state and federal wage violations as Plaintiffs. *See* https://www.salon.com/2022/11/11/a-glitch-in-krogers-new-payroll-system-means-some-employees-havent-been-fully-paid-since-labor-day/.

70.     Specifically, Kroger ordered that the MyTime payroll software system be installed and used as the official Kroger payroll system for all of its employees, including those employed by its wholly-owned subsidiaries.

71.     Because Kroger was (and is) able to affect the Plaintiffs and the Putative Collective/Class Members' pay and conditions of employment through its decision to use the MyTime system and caused the federal and state wage violations, Kroger qualifies as an employer of every

worker in its various subsidiaries who were affected (and continue to be affected) by the MyTime system. *See Branning v. Romeo's Pizza, Inc.*, No. 1:19 CV 2092, 2020 WL 3275716, at *3 (N.D. Ohio Apr. 6, 2020).

72.     Kroger is obligated under federal and state law to pay for work performed on its behalf in a timely manner.

73.     The failure to pay wages on their regularly occurring pay date violates the FLSA and Kroger is liable for liquidated damages for committing such violation. *See Martin v. United States*, 130 Fed. Cl. 578 (Feb. 13, 2017).

74.     Guidance issued by the Department of Labor, U.S. DEP'T OF LABOR, WAGE & HOUR DIVISION, DOL FACT SHEET #70: FREQUENTLY ASKED QUESTIONS REGARDING FURLOUGHS AND OTHER REDUCTIONS IN PAY AND HOURS WORKED ISSUES (Nov. 2009), *available at* http://www.dol.gov/whd/regs/compliance/whdfs70.pdf, indicates that under the circumstances Kroger violated the FLSA by not paying Plaintiffs and the Putative Collective/Class Members on their regularly scheduled payday.

75.     The state laws of Alabama, Arizona, Illinois, Kentucky, Michigan, Ohio, Tennessee, Texas, Virginia, and West Virginia also require the payment of wages for all hours worked on the employer's behalf.

76.     As a result of Kroger's failure to timely pay all earned compensation, Plaintiffs the Putative Collective/Class Members are entitled to liquidated damages for all unpaid wages and for wages that were not paid within the time frames required under federal law.

77.     Kroger knew or should have known that its delay in payment for all hours worked, its failure to pay wages at their proper rate, its failure to pay all compensation earned, its application of improper deductions, and its failure to pay Plaintiffs and the Putative Collective/Class Members for

all hours worked including overtime hours at the rates required under federal and state law violated the FLSA and relevant state laws.

78.     Kroger knew or should have known that its failure to comply with federal and state wage laws would cause, did cause, and continues to cause financial injury to Plaintiffs and the Putative Collective/Class Members.

79.     Likewise, Kroger knew or should have known that its failure to pay its employees for the time they expended working on its behalf would also violate state common law, and would cause, did cause, and continues to cause financial injury to Plaintiffs and the Putative Collective/Class Members.

80.     Because Kroger did not pay Plaintiffs and the Putative Collective/Class Members all owed compensation within the time frames required under the FLSA and relevant state laws, Kroger's pay policies and practices willfully violated (and continue to violate) the FLSA and relevant state laws.

81.     Plaintiffs and the Putative Collective/Class Members seek to recover liquidated damages, and all other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b), and all unpaid wages, liquidated damages, treble damages, and all other damages available pursuant to their relevant state law claims.

## V.
## CAUSES OF ACTION

### COUNT ONE
**(Collective Action Alleging FLSA Violations)**

**A.     FLSA COVERAGE**

82.     All previous paragraphs are incorporated as though fully set forth herein.

83.     The FLSA Collective is defined as:

**ALL CURRENT AND FORMER EMPLOYEES OF THE KROGER CO. OR ANY OF ITS SUBSIDIARIES, ANYWHERE IN THE UNITED STATES FROM JANUARY 1, 2022, THROUGH THE FINAL DISPOSITION OF**

**THIS MATTER, WHO WERE AFFECTED BY THE MYTIME PAYROLL SYSTEM ("FLSA Collective" or "FLSA Collective Members").**

84. At all material times, Plaintiffs and the FLSA Collective Members have been employees within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

85. At all material times, Kroger has been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

86. At all material times, Kroger and its subsidiaries have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that that enterprise has had, and has, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

87. Specifically, Kroger operates numerous retail facilities throughout the United States, purchases materials through commerce, transports materials through commerce and on the interstate highways, and conducts transactions through commerce, including the use of credit cards, phones and/or cell phones, electronic mail and the Internet.

88. During the respective periods of Plaintiffs and the FLSA Collective Members' employment by Kroger, these individuals have provided services for Kroger that involved interstate commerce for purposes of the FLSA.

89. In performing work for Kroger, Plaintiffs and the FLSA Collective Members have been engaged in commerce or in the production of goods for commerce within the meaning of §§ 203(b), 203(i), 203(j), 206(a), and 207(a) of the FLSA. 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

90. Specifically, Plaintiffs and the FLSA Collective Members have been employees of Kroger who assisted Kroger's customers throughout the United States. 29 U.S.C. § 203(j).

91. At all material times, Plaintiffs and the FLSA Collective Members have been individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206 and 207.

92. The proposed class of similarly situated employees, i.e., putative class members, sought to be certified pursuant to 29 U.S.C. § 216(b), is defined in Paragraph 83.

93. The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee and personnel records of Kroger.

## B. FAILURE TO PAY WAGES AND OVERTIME UNDER THE FAIR LABOR STANDARDS ACT

94. Kroger violated provisions of Sections 7, and 15 of the FLSA, 29 U.S.C. §§ 206–7, and 215(a)(2) by employing individuals in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA and failing to pay them at the rates required under the FLSA for all hours worked by their regularly scheduled pay day.

95. Plaintiffs and the FLSA Collective Members have suffered damages and continue to suffer damages as a result of Kroger's acts or omissions as described herein; though Kroger is in possession and control of necessary documents and information from which Plaintiffs would be able to precisely calculate damages.

96. Moreover, Kroger knowingly, willfully, and with reckless disregard carried out its illegal pattern of failing to timely pay Plaintiffs and other similarly situated employees for all hours worked.

97. Kroger knew or should have known its pay practices were in violation of the FLSA.

98. Kroger is a sophisticated party and employer, and therefore knew (or should have known) its pay policies were in violation of the FLSA.

99.    Plaintiffs and the FLSA Collective Members, on the other hand, are (and were) unsophisticated employees who trusted Kroger to pay them timely, according to the law.

100.    The decision and practice by Kroger to not timely pay for all hours worked on their regularly scheduled pay day was neither reasonable nor in good faith.

101.    Accordingly, Plaintiffs and the FLSA Collective Members are entitled to liquidated damages in an amount equal to that of any wages that were paid after their regularly scheduled pay date and attorneys' fees and costs.

## C.    COLLECTIVE ACTION ALLEGATIONS

102.    All previous paragraphs are incorporated as though fully set forth herein.

103.    Pursuant to 29 U.S.C. § 216(b), this is a collective action filed on behalf of all of Kroger's employees who have been similarly situated to Plaintiffs with regard to the work they performed, the manner in which they were paid, and their common subjugation to the policies and procedures implemented by Kroger.

104.    Other similarly situated employees of Kroger have been victimized by Kroger's patterns, practices, and policies related to the time clock outages which are in willful violation of the FLSA.

105.    The FLSA Collective Members are defined in Paragraph 83.

106.    Kroger's failure to pay Plaintiffs and the FLSA Collective Members for all hours worked within the time frame required by the FLSA, results from Kroger's generally applicable policies and practices implemented to address the time clock outages and does not depend on the personal circumstances of Plaintiffs or the FLSA Collective Members.

107.    Thus, Plaintiffs' experiences are typical of the experiences of the FLSA Collective Members.

108.     The specific job titles or precise job requirements of the various FLSA Collective Members do not prevent collective treatment.

109.     All of the FLSA Collective Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be timely paid for all hours worked and at the proper overtime rate for all hours worked in excess of forty (40) hours per workweek.

110.     Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

111.     Absent a collective action, many members of the proposed FLSA collective likely will not obtain redress of their injuries and Kroger will retain the proceeds of its violations.

112.     Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

113.     Accordingly, the FLSA collective of similarly situated plaintiff should be certified as defined as in Paragraph 83 and notice should be promptly sent.

## <u>COUNT TWO</u>
### (Class Action Alleging Violations of the Kentucky Acts)

**A.     KENTUCKY ACTS COVERAGE**

114.     Plaintiffs incorporate by reference all paragraphs and allegations set forth in the statement of facts of this complaint as though fully and completely set forth herein.

115.     The Kentucky Class is defined as:

**ALL CURRENT AND FORMER EMPLOYEES OF THE KROGER CO. OR ANY OF ITS SUBSIDIAIRES, ANYWHERE IN THE STATE OF KENTUCKY FROM JANUARY 1, 2022, THROUGH THE FINAL DISPOSITION OF THIS MATTER, WHO WERE AFFECTED BY THE MYTIME PAYROLL SYSTEM ("Kentucky Class" or "Kentucky Class Members").**

116. At all material times, Kroger has been an "employer" within the meaning of the KWHA. KY. REV. STAT. ANN. § 337.010(d).

117. At all material times, Plaintiff Wilder and the Kentucky Class Members have been "employees" within the meaning of the KWHA. KY. REV. STAT. ANN. § 337.010(e).

**B.     FAILURE TO PAY WAGES IN ACCORDANCE WITH THE KENTUCKY ACTS**

118. All previous paragraphs are incorporated as though fully set forth herein.

119. The Kentucky Acts require that "[e]very employer doing business in [Kentucky] shall . . . pay to each of its employees all wages or salary earned to a day not more than eighteen (18) days prior to the date of that payment." KY. REV. STAT. ANN. § 337.020.

120. Kentucky has willfully failed to pay Plaintiff Wilder and the Kentucky Class Members for all hours they worked.

121. Specifically, Kroger failed (and continues to fail) to pay all compensation earned for work performed by Plaintiff Wilder and the Kentucky Class.

122. Plaintiff Wilder and the Kentucky Class Members have suffered damages and continue to suffer damages as a result of Kroger's acts or omissions as described herein, and Kroger is in possession and control of necessary documents and information from which Plaintiff Wilder would be able to precisely calculate damages.

123. Plaintiff Wilder, on behalf of herself and the Kentucky Class Members, seeks recovery of their unpaid wages and an additional equal amount as liquidated damages, attorneys' fees, costs, and reasonable expenses of this action to be paid by Kroger. *See* KY. REV. STAT. ANN. §337.385.

124. The proposed class of employees sought to be certified pursuant to the Kentucky Acts, is defined in Paragraph 115.

125. The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Kroger.

## C.     KENTUCKY CLASS ALLEGATIONS

126.    Plaintiff Wilder brings his Kentucky claims as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all similarly situated individuals employed by Kroger to work in Kentucky at any time between January 1, 2022, through the final disposition of this matter.

127.    Class action treatment of Plaintiff Wilder's claims are appropriate because, as alleged below, all of Federal Rule of Civil Procedure 23's class action requisites are satisfied.

128.    The number of Kentucky Class Members is so numerous that joinder of all class members is impracticable.

129.    Plaintiff Wilder's claims share common questions of law and fact with the claims of the Kentucky Class Members.

130.    Plaintiff Wilder is a member of the Kentucky Class, his claims are typical of the claims of the other Kentucky Class Members, and he has no interests that are antagonistic to or in conflict with the interests of the other Kentucky Class Members.

131.    Plaintiff Wilder and his counsel will fairly and adequately represent the Kentucky Class Members and their interests.

132.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

133.    Accordingly, the Kentucky Class should be certified as described in Paragraph 115.

### COUNT THREE
**(Class Action Alleging Violations of Alabama Common Law)**

## A.     VIOLATIONS OF ALABAMA COMMON LAW

134.    Plaintiffs incorporate by reference all paragraphs and allegations set forth in the statement of facts of this complaint as though fully and completely set forth herein.

135. Plaintiff Tyndall further brings this action pursuant to the equitable theory of *quantum meruit. See Cooley v. HMR of Alabama, Inc.,* 259 F. Supp. 3d 1312, 1317 (N.D. Ala. 2017).

136. The Alabama Common-Law Class is defined as:

**ALL CURRENT AND FORMER EMPLOYEES OF THE KROGER CO. OR ANY OF ITS SUBSIDIARIES, ANYWHERE IN THE STATE OF ALABAMA FROM JANUARY 1, 2022, THROUGH THE FINAL DISPOSITION OF THIS MATTER, WHO WERE AFFECTED BY THE MYTIME PAYROLL SYSTEM ("Alabama Class" or "Alabama Class Members").**

137. The Alabama Class Members are entitled to recover their unpaid compensation for services rendered on behalf of Kroger.

138. Plaintiff Tyndall does not seek unpaid overtime or minimum wages covered by the FLSA through her Alabama state law claims, therefore these claims are not preempted by the FLSA. *See id.*

139. The Alabama Class Members provided valuable services for Kroger, at Kroger's direction and with Kroger's acquiescence.

140. Kroger accepted the Alabama Class Members' services and benefited from their timely dedication to Kroger's policies and adherence to Kroger's schedule.

141. Kroger was aware that Plaintiff Tyndall and the Alabama Class Members expected to receive compensation for the services they provided to Kroger at the rates promised by Kroger.

142. Kroger has therefore benefited from services rendered by Plaintiff Tyndall and the Alabama Class Members and Plaintiff Tyndall and the Alabama Class Members are entitled to recover pursuant to the equitable theory of *quantum meruit.*

**B. ALABAMA CLASS ALLEGATIONS**

143. Plaintiff Tyndall brings her Alabama Claims as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all similarly situated individuals employed by Kroger to work in Alabama since January 1, 2022. *See* ALA. CODE § 6-2-38(m).

144.    Class action treatment of the Alabama Class Members is appropriate because, as alleged below, all of Federal Rule of Civil Procedure 23's class action requisites are satisfied.

145.    The number of Alabama Class Members is so numerous that joinder of all class members is impracticable.

146.    Plaintiff Tyndall's Alabama state-law claims share common questions of law and fact with the claims of the Alabama Class Members.

147.    Plaintiff Tyndall is a member of the Alabama Class, her claims are typical of the claims of the other Alabama Class Members, and she has no interests that are antagonistic to or in conflict with the interests of the other Alabama Common Law Class Members.

148.    Plaintiff Tyndall and her counsel will fairly and adequately represent the Alabama Class Members and their interests.

149.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

150.    Accordingly, the Alabama Class should be certified as defined in Paragraph 136.

## COUNT FOUR
### (Class Action Alleging Violations of Arizona Act)

A.    **VIOLATIONS OF ARIZONA LAW**

151.    Plaintiffs incorporate by reference all paragraphs and allegations set forth in the statement of facts of this complaint as though fully and completely set forth herein.

152.    The Arizona Class is defined as:

**ALL CURRENT AND FORMER EMPLOYEES OF THE KROGER CO. OR ANY OF ITS SUBSIDIARIES, ANYWHERE IN THE STATE OF ARIZONA FROM JANUARY 1, 2022, THROUGH THE FINAL DISPOSITION OF THIS MATTER, WHO WERE AFFECTED BY THE**

**MYTIME PAYROLL SYSTEM ("Arizona Class" or "Arizona Class Members").**

153.    At all times hereinafter mentioned, Kroger has been an employer within the meaning of the Arizona Act, A.R.S. § 23-350(3).

154.    At all times hereinafter mentioned, Plaintiff Bauer and the Arizona Class Members have been employees within the meaning of the Arizona Act, A.R.S. § 25-350(2).

**B.      FAILURE TO PAY WAGES AND OVERTIME IN ACCORDANCE WITH  THE ARIZONA ACTS**

155.    All previous paragraphs are incorporated as though fully set forth herein.

156.    Kroger owes Plaintiff Bauer and the Arizona Class Members wages, as defined in section 25-350(7) of the Acts, to compensate them for labor and services they provided to Kroger in the furtherance of their job duties. *See* A.R.S. § 25-350(7), 351(C).

157.    Plaintiff Bauer and other Arizona Class Members were not (and currently are not) exempt from receiving compensation benefits under the Arizona Acts.

158.    Plaintiff Bauer and the Arizona Class Members performed compensable work, including overtime work for Kroger and Kroger violated the Arizona Acts by failing to pay Plaintiff Bauer and other Arizona Class Members for all of the hours they worked on its behalf, and for failing to pay the correct rates of compensation for all hours worked, including hours worked in excess of forty (40) hours. *See* A.R.S. § 25-350(7), 351(C).

159.    Plaintiff Bauer and the Arizona Class Members have suffered damages and continue to suffer damages as a result of Kroger's acts or omissions as described herein; though Kroger is in possession and control of necessary documents and information from which Plaintiff Bauer would be able to precisely calculate damages.

160.    The Arizona Acts provides that Plaintiff Bauer and the Arizona Class Members are entitled to recover treble, or three times, the amount of their unpaid wages. *See* A.R.S. § 25-355(A).

161.    In violating the Arizona Acts, Kroger acted willfully, without a good faith basis and with reckless disregard of clearly applicable Arizona law.

162.    The proposed class of employees, i.e. putative class members sought to be certified pursuant to the Arizona Acts, is defined in Paragraph 152.

163.    The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Kroger.

## A.    ARIZONA CLASS ALLEGATIONS

164.    Plaintiff Bauer brings his Arizona Acts claims as a class action pursuant to Rule 23 on behalf of all similarly situated individuals employed by Kroger to work in Arizona at any time since January 1, 2022.

165.    Class action treatment of Plaintiff Bauer and the Arizona Class Members' claims is appropriate because, as alleged below, all of Rule 23's class action requisites are satisfied.

166.    The number of Arizona Class Members is so numerous that joinder of all class members is impracticable.

167.    Plaintiff Bauer's Arizona state-law claims share common questions of law and fact with the claims of the Arizona Class Members.

168.    Plaintiff Bauer is a member of the Arizona Class, his claims are typical of the claims of the other Arizona Class Members, and he has no interests that are antagonistic to or in conflict with the interests of other class members.

169.    Plaintiff Bauer and his counsel will fairly and adequately represent the Arizona Class Members and their interests.

170.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class

members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

171.    Accordingly, the Arizona Class should be certified as defined in Paragraph 152.

**COUNT FIVE**
**(Class Action Alleging Violations of the Illinois Acts)**

**A.    ILLINOIS ACTS COVERAGE**

172.    Plaintiffs incorporate by reference all paragraphs and allegations set forth in the statement of facts of this complaint as though fully and completely set forth herein.

173.    The Illinois Class is defined as:

**ALL CURRENT AND FORMER EMPLOYEES OF THE KROGER CO. OR ANY OF ITS SUBSIDIARIES, ANYWHERE IN THE STATE OF ILLINOIS FROM JANUARY 1, 2022, THROUGH THE FINAL DISPOSITION OF THIS MATTER, AND WERE AFFECTED BY THE MYTIME PAYROLL SYSTEM ("Illinois Class" or "Illinois Class Members").**

174.    At all times hereinafter mentioned, Kroger was and has been an "employer" within the meaning of the Illinois Acts. *See* 820 ILCS § 115/1; *see also* 820 ILCS § 105/3(c)–(d).

175.    At all times hereinafter mentioned, Plaintiff Henson and the Illinois Class Members have been "employees" within the meaning of the Illinois Acts. *See id.*

176.    Plaintiff Henson and the Illinois Class Members were or have been employed by Kroger since January 1, 2022, and have been covered employees entitled to the protections of the Illinois Acts and were not exempt from the protections of the Illinois Acts.

177.    The employer, Kroger, is not exempt from paying wage and overtime benefits under the Illinois Acts.

**B.    FAILURE TO PAY WAGES IN ACCORDANCE WITH THE ILLINOIS ACTS**

178.    All previous paragraphs are incorporated as though fully set forth herein.

179.    The Illinois Acts require employers like Kroger to pay all agreed upon wages for all hours worked. 820 ILCS § 115/2.

180. The Illinois Acts also require employers like Kroger to pay non-exempt employees no less than time-and-one-half their regular rates of pay for each hour worked in excess of forty (40) hours in a workweek. 820 ILCS § 105/4a.

181. Plaintiff Henson and Illinois Class Members are **_non-exempt_** employees who Kroger agreed to compensate for each hour worked. *See id.*

182. Kroger has a company-wide policy and practice of failing to pay Plaintiff Henson and Illinois Class Members all compensation due to them.

183. Kroger has a continuing policy and practice of failing to pay the contractually agreed upon compensation for all hours worked, including overtime hours.

184. Kroger has a continuing policy and practice of failing to pay overtime wages for all hours worked in excess of forty (40) hours in a workweek.

185. The compensation that Kroger failed to pay Plaintiff Henson and the Illinois Class Members constitute recoverable "wages" and "wage supplements" under the Illinois Acts because Kroger owes such compensation pursuant to an employment contract or agreement between the parties. *See* 820 ILCS § 115/2.

186. As a result of Kroger's illegal and company-wide policies applicable to Plaintiff Henson and Illinois Class Members' wages, and its failure to pay the contractually agreed upon wages and overtime wages to the Illinois Class Members, Kroger violated the Illinois Acts.

187. Kroger's failure to pay for all hours worked, and failure to pay overtime wages for all hours worked in excess of forty (40) in a workweek to the Illinois Class Members who performed work on behalf of Kroger in Illinois is part of a continuing course of conduct.

188. Plaintiff Henson and Illinois Class Members who performed work on behalf of Kroger in Illinois are entitled to invoke the benefits of the Illinois Acts, including but not limited to 820 ILCS § 105/12(a); 820 ILCS § 115/14; 820 ILCS § 115/11; and 815 ILCS § 205/2.

189.    As a result, this action, "may encompass all violations that occurred as part of Kroger's continuing course of conduct regardless of the date on which they occurred."

190.    Plaintiff Henson and Illinois Class Members have suffered damages and continue to suffer damages as a result of Kroger's acts or omissions described herein; though Kroger is in possession and control of necessary documents and information from which the Illinois Class Members would be able to precisely calculated damages.

191.    Plaintiff Henson and Illinois Class Members seek the amount of their underpayments based on Kroger's failure to pay all wages and wage supplements, as defined by the Illinois Acts for all hours worked, including hours worked in excess of forty (40) hours in a workweek, treble the amount of unpaid wages and wage supplements as liquidated damages, 5% of the amount of unpaid wages and wage supplements for each month following the date the payments were due, and such other legal and equitable relief from Kroger's willful conduct as the Court deems just and proper.

192.    Accordingly, the Illinois Acts Class should be certified as defined in Paragraph 173.

## C.    ILLINOIS CLASS ALLEGATIONS

193.    Plaintiff Henson brings her Illinois claims pursuant to Illinois Statutes as a class action pursuant to Rule 23 on behalf of all similarly situated individuals employed by Kroger to work in Illinois since January 1, 2022.

194.    Class action treatment of Plaintiff Henson and the Illinois Class Members' claims is appropriate because, as alleged below, all of Rule 23's class action requisites are satisfied.

195.    The number of Illinois Class Members is so numerous that joinder of all class members is impracticable.

196.    Plaintiff Henson's Illinois state-law claims share common questions of law and fact with the claims of the Illinois Class Members.

197. Plaintiff Henson is a member of the Illinois Class, her claims are typical of the claims of other Illinois Class Members, and she has no interests that are antagonistic to or in conflict with the interests of other class members.

198. Plaintiff Henson and her counsel will fairly and adequately represent the Illinois Class Members and their interests.

199. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

200. Accordingly, the Illinois Class should be certified as defined in Paragraph 173.

<u>**COUNT SIX**</u>
**(Michigan Class Action Allegations)**

**A.  VIOLATIONS OF MICHIGAN COMMON LAW**

201. Plaintiffs incorporate by reference all paragraphs and allegations set forth in the statement of facts of this complaint as though fully and completely set forth herein.

202. Plaintiff Miller further brings this action pursuant to the equitable theory of *quantum meruit*. *See Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187, 195, 729 N.W.2d 898, 904 (2006).

203. The "Michigan Class" is defined as:

**ALL CURRENT AND FORMER EMPLOYEES OF THE KROGER CO. OR ANY OF ITS SUBSIDIAIRES, ANYWHERE IN THE STATE OF MICHIGAN FROM JANUARY 1, 2022, THROUGH THE FINAL DISPOSITION OF THIS MATTER, WHO WERE AFFECTED BY THE MYTIME PAYROLL SYSTEM ("Michigan Class" or "Michigan Class Members").**

204. The Michigan Class Members are entitled to recover their unpaid compensation for services rendered on behalf of Kroger.

205.     Plaintiff Miller does not seek unpaid overtime or minimum wages covered by the FLSA through her Michigan state-law claims, therefore these claims are not preempted by the FLSA. *See Athan v. United States Steel*, 364 F. Supp. 3d 748, 755 (E.D. Mich. 2019).

206.     Plaintiff Miller and the Michigan Class Members provided valuable benefits—their labor—to Kroger.

207.     Kroger accepted Plaintiff Miller and the Michigan Class Members' services and benefited from their timely dedication to Kroger's customers.

208.     Kroger was aware that Plaintiff Miller and the Michigan Class Members expected to be compensated for the services they provided to Kroger.

209.     Allowing Kroger to retain the benefit of Plaintiff Miller and the Michigan Class Members' labor without paying them for it would result in inequity.

210.     Plaintiff Miller and the Michigan Class Members are entitled to recover pursuant to the equitable theory of *quantum meruit*.

211.     Accordingly, the Michigan Class should be certified as defined in Paragraph 203.

**B.     MICHIGAN CLASS ACTION ALLEGATIONS**

212.     Plaintiff Miller and the Michigan Class Members bring their Michigan common law claims as a class action pursuant to Rule 23 on behalf of all similarly situated individuals employed by Kroger to work in Michigan since January 1, 2022.

213.     Class action treatment of Plaintiff Miller and the Michigan Class Members' claims is appropriate because all of Rule 23's class action requisites are satisfied.

214.     The number of Michigan Class Members is so numerous that joinder of all class members is impracticable.

215.     Plaintiff Miller's Michigan state-law claims share common questions of law and fact with the claims of the Michigan Class Members.

216. Plaintiff Miller is a member of the Michigan Class, her claims are typical of the claims of other Michigan Class Members, and she has no interests that are antagonistic to or in conflict with the interests of other Michigan Class Members.

217. Plaintiff Miller and her counsel will fairly and adequately represent the Michigan Class Members and their interests.

218. Class certification is appropriate under FED R. CIV. P. 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

219. Accordingly, the Michigan Class should be certified as defined in Paragraph 203.

### COUNT SEVEN
**(Class Action Alleging Violations of the Ohio Acts)**

**A.     OHIO ACTS COVERAGE**

220. Plaintiffs incorporate by reference all paragraphs and allegations set forth in the statement of facts of this complaint as though fully and completely set forth herein.

221. The Ohio Class is defined as:

**ALL CURRENT AND FORMER EMPLOYEES OF THE KROGER CO. OR ANY OF ITS SUBSIDIARIES, ANYWHERE IN THE STATE OF OHIO FROM JANUARY 1, 2022, THROUGH THE FINAL DISPOSITION OF THIS MATTER, WHO WERE AFFECTED BY THE MYTIME PAYROLL SYSTEM ("Ohio Class" or "Ohio Class Members").**

222. At all times relevant to this action, Plaintiff Smith and the Ohio Class Members were covered employees within the meaning of the Ohio Acts. *See* O.R.C. § 4111.03(D)(3); OPPA, O.R.C. § 4113.15 (A).

223. At all times relevant to this action, Kroger was a covered employer within the meaning of the Ohio Acts. *See* O.R.C. § 4111.03(D)(2); OPPA, O.R.C. § 4113.15 (A).

224. Plaintiff Smith and the Ohio Class Members are not exempt from receiving compensation benefits under the Ohio Acts.

## B.    FAILURE TO PAY WAGES IN ACCORDANCE WITH THE OHIO ACTS

225. All previous paragraphs are incorporated as though fully set forth herein.

226. At all times relevant to this action, Kroger violated the Ohio Acts by willfully refusing to pay Plaintiff Smith and the putative Ohio Class Members the statutorily mandated overtime premium of 150% of their regular rate for all hours worked beyond forty (40) hours in a workweek.

227. At all times relevant to this action, Kroger violated the Ohio Acts by willfully refusing to pay Plaintiff Smith and the putative Ohio Class Members all wages, including overtime, on or before the first day of each month for wages earned during the first half of the preceding month ending with the fifteenth day thereof, and, on or before the fifteenth day of each month, for wages earned during the preceding calendar month as required by the Ohio Acts. O.R.C. § 4113.15.

228. Plaintiff Smith and the Ohio Class Members were not paid all wages, including overtime wages at one and one-half times their regular rates within thirty (30) days of performing the work.

229. The wages of Plaintiff Smith and the Ohio Class Members remain unpaid for more than thirty (30) days beyond their regularly scheduled payday.

230. Plaintiff Smith and the Ohio Class Members have suffered damages and continue to suffer damages as a result of Kroger's acts or omissions as described herein; though Kroger is in possession and control of necessary documents and information from which Plaintiff Smith would be able to precisely calculate damages.

231. In violating the Ohio Acts, Kroger acted willfully, without a good faith basis, and with reckless disregard of Ohio Acts.

232.    Kroger lacked a good faith basis in the manner in which it paid Plaintiff Smith and the putative Ohio Class Members and Kroger's violations of the Ohio Acts were willful.

233.    Plaintiff Smith and the Ohio Class Members are entitled to payment of their overtime wages and six percent (6%) of the wages or a minimum of $200.00 for violations of the Ohio Acts and attorneys' fees. *See* O.R.C. § 4113.15.

234.    The proposed class of employees, i.e. putative class members sought to be certified pursuant to the Ohio Acts, is defined in Paragraph 221.

235.    The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Kroger.

## C.    OHIO CLASS ALLEGATIONS

236.    All previous paragraphs are incorporated as though fully set forth herein.

237.    Plaintiff Smith brings her Ohio Acts claims as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all similarly situated individuals employed by Kroger who worked in Ohio at any time since January 1, 2022.

238.    Class action treatment of Plaintiff Smith and the Ohio Class Members' claims is appropriate because all of Rule 23's class action requisites are satisfied.

239.    The number of Ohio Class Members is so numerous that joinder of all class members is impracticable.

240.    Plaintiff Smith's Ohio state-law claims share common questions of law and fact with the claims of the Ohio Class Members.

241.    Plaintiff Smith is a member of the Ohio Class, his claims are typical of the claims of other Ohio Class Members, and he has no interests that are antagonistic to or in conflict with the interests of other Ohio Class Members.

242.     Plaintiff Smith and his counsel will fairly and adequately represent the Ohio Class Members and their interests.

243.     Class certification is appropriate under FED R. CIV. P. 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

244.     Accordingly, the Ohio Class should be certified as defined in Paragraph 221.

**COUNT EIGHT**
**(Class Action Alleging Violations of Tennessee Common Law)**

**A.     VIOLATIONS OF TENNESSEE COMMON LAW**

245.     Plaintiffs incorporate by reference all paragraphs and allegations set forth in the statement of facts of this complaint as though fully and completely set forth herein.

246.     Plaintiff Keplinger further brings this action pursuant to the equitable theory of *quantum meruit. See Cannon v. Citicorp Credit Servs., Inc., (USA)*, No. 2:12-CV-88, 2014 WL 1267279, at *5 (E.D. Tenn. Mar. 26, 2014); *Carter v. Jackson-Madison Cty. Hosp. Dist.*, No. 110CV01155JDBEGB, 2011 WL 13238697, at *4 (W.D. Tenn. Dec. 13, 2011) (citing *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 524–25 (Tenn. 2005); *Whitehaven Cmty. Baptist Church v. Holloway*, 973 S.W.2d 592, 596 (Tenn. 1998); *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 154 (Tenn. 1966)).

247.     The Tennessee Class is defined as:

**ALL CURRENT AND FORMER EMPLOYEES OF THE KROGER CO. OR ANY OF ITS SUBSIDIARIES, ANYWHERE IN THE STATE OF TENNESSEE FROM JANUARY 1, 2022, THROUGH THE FINAL DISPOSITION OF THIS MATTER, WHO WERE AFFECTED BY THE MYTIME PAYROLL SYSTEM ("Tennessee Class" or "Tennessee Class Members")**

248.     Plaintiff Keplinger and the Tennessee Class Members are entitled to recover their unpaid compensation for services rendered on behalf of Kroger.

249.    Plaintiff Keplinger does not seek unpaid minimum and overtime wages covered by the FLSA through his Tennessee state law claims and therefore these claims are not preempted by the FLSA. *See Cannon v. Citicorp Credit Servs., Inc., (USA)*, No. 2:12-CV-88, 2014 WL 1267279, at *5 (E.D. Tenn. Mar. 26, 2014) (citing *Woodall v. DSI Renal, Inc.*, No. 11–2590, 2012 WL 1038626, at *3–6 (W.D. Tenn. Mar. 27, 2012); *Carter v. Jackson-Madison Cty. Hosp. Dist.*, No. 1:10-CV-01155-JDB, 2011 WL 1256625, at *11 (W.D. Tenn. Mar. 31, 2011)).

250.    Plaintiff Keplinger and the Tennessee Class Members provided valuable services for Kroger, at Kroger's direction, and with Kroger's acquiescence.

251.    Plaintiff Keplinger and the Tennessee Class Members conferred a valuable benefit on Kroger because they provided their labor services to Kroger without compensation.

252.    Kroger accepted Plaintiff Keplinger and the Tennessee Class Members' services and benefited from their timely dedication to Kroger's policies and adherence to Kroger's schedule.

253.    Kroger was aware that Plaintiff Keplinger and the Tennessee Class Members expected to be compensated for the services they provided Kroger.

254.    Kroger has therefore benefited from services rendered by Plaintiff Keplinger and the Tennessee Class Members, and it is inequitable for Kroger to retain the benefit of Plaintiff Keplinger and the Tennessee Class Members' services without paying fair value for them.

255.    Plaintiff Keplinger and the Tennessee Class Members are thus entitled to recover pursuant to the equitable theory of *quantum meruit*.

## C.    TENNESSEE CLASS ALLEGATIONS

256.    Plaintiff Keplinger and the Tennessee Class Members brings their Tennessee claim as a class action pursuant to Rule 23 on behalf of all similarly situated individuals employed by Kroger to work in Tennessee since January 1, 2022.

257. Class action treatment of Plaintiff Keplinger and the Tennessee Class Members' claims is appropriate because all of Rule 23's class action requisites are satisfied.

258. The number of Tennessee Class Members is so numerous that joinder of all class members is impracticable.

259. Plaintiff Keplinger's Tennessee state-law claims share common questions of law and fact with the claims of the Tennessee Class Members.

260. Plaintiff Keplinger is a member of the Tennessee Class, his claims are typical of the claims of other Tennessee Class Members, and he has no interests that are antagonistic to or in conflict with the interests of other Tennessee Class Members.

261. Plaintiff Keplinger and his counsel will fairly and adequately represent the Tennessee Class Members and their interests.

262. Class certification is appropriate under FED R. CIV. P. 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

263. Accordingly, the Tennessee Class should be certified as defined in Paragraph 247.

### COUNT NINE
**(Class Action Alleging Violations of Texas Common Law)**

**A.     VIOLATIONS OF TEXAS COMMON LAW**

264. Plaintiffs incorporate by reference all paragraphs and allegations set forth in the statement of facts of this complaint as though fully and completely set forth herein.

265. Plaintiff Acker further brings this action pursuant to the equitable theory of *quantum meruit*. *See Artemis Seafood, Inc. v. Butcher's Choice, Inc.*, No. CIV. A. 3:98-0282, 1999 WL 608853, at *3 (N.D. Tex. Aug. 11, 1999) (citing *Schuchart & Assocs. v. Solo Serve Corp.*, 1983 WL 1147, at *23 (W.D. Tex. June 29, 1983)).

266.     The Texas Class is defined as:

**ALL CURRENT AND FORMER EMPLOYEES OF THE KROGER CO. OR ANY OF ITS SUBSIDIARIES, ANYWHERE IN THE STATE OF TEXAS FROM JANUARY 1, 2022, THROUGH THE FINAL DISPOSITION OF THIS MATTER, WHO WERE AFFECTED BY THE MYTIME PAYROLL SYSTEM ("Texas Class" or "Texas Class Members").**

267.     The Texas Class Members are entitled to recover their unpaid compensation for services rendered on behalf of Kroger.

268.     Plaintiff Acker does not seek unpaid minimum and overtime wages covered by the FLSA through his Texas state law claim and therefore this claim is not preempted by the FLSA. *See Carman v. Meritage Homes Corp.*, 37 F. Supp. 3d 860, 867 (S.D. Tex. 2014).

269.     The Texas Class Members provided valuable services for Kroger, at Kroger's direction and with Kroger' acquiescence.

270.     Kroger accepted the Texas Class Members' services and benefited from their timely dedication to Kroger' policies and adherence to Kroger' schedule.

271.     Kroger was aware that Plaintiff Acker and the Texas Class Members expected to be compensated for the services they provided Kroger.

272.     Kroger has therefore benefited from services rendered by Plaintiff Acker and the Texas Class Members are entitled to recover pursuant to the equitable theory of *quantum meruit*.

## B.     TEXAS CLASS ALLEGATIONS

273.     Plaintiff Acker brings his Texas claim as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all similarly situated individuals employed by Kroger to work in Texas since January 1, 2022. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.004.

274.     Class action treatment of the Texas Class Members is appropriate because, as alleged below, all of the Federal Rule of Civil Procedure 23's class action requisites are satisfied.

275. The number of Texas Class Members is so numerous that joinder of all class members is impracticable.

276. Plaintiff Acker's Texas state-law claims share common questions of law and fact with the claims of the Texas Class Members.

277. Plaintiff Acker is a member of the Texas Class, his claims are typical of the claims of the other Texas Class Members, and he has no interests that are antagonistic to or in conflict with the interests of the other Texas Class Members.

278. Plaintiff Acker and his counsel will fairly and adequately represent the Texas Class Members and their interests.

279. Class certification is appropriate under the Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

280. Accordingly, the Texas Class should be certified as defined in Paragraph 266.

## COUNT TEN
**(Class Action Alleging Violations of the Virginia Common Law)**

**A. VIOLATIONS OF VIRGINIA COMMON LAW**

281. All previous paragraphs are incorporated as though fully set forth herein.

282. Plaintiff Copeland further brings this action pursuant to the equitable theory of *quantum meruit* to recover unpaid compensation which is not covered by the FLSA. *See Mongold v. Woods*, 278 Va. 196, 677 S.E.2d 288, 292 (2020).

283. The "Virginia Class" is defined as:

**ALL CURRENT AND FORMER EMPLOYEES OF THE KROGER CO. OR ANY OF ITS SUBSIDIARIES, ANYWHERE IN THE STATE OF VIRGINIA FROM JANUARY 1, 2022, THROUGH THE FINAL DISPOSITION OF THIS MATTER, WHO WERE AFFECTED BY THE**

**MYTIME PAYROLL SYSTEM ("Virginia Class" or "Virginia Class Members").**

284.     The Virginia Class Members are entitled to recover their unpaid compensation for services rendered on behalf of Kroger.

285.     Plaintiff Copeland does not seek unpaid minimum and overtime wages covered by the FLSA through her Virginia state law claims and therefore these claims are not preempted by the FLSA. *Id.*

286.     The Plaintiff Copeland and the Virginia Class Members provided valuable services—their labor—to Kroger, at Kroger's direction and with Kroger's acquiescence.

287.     Kroger acknowledged and accepted Plaintiff Copeland and the Virginia Class Members' services and benefited from their timely dedication to Kroger's customers.

288.     Kroger was aware that Plaintiff Copeland and the Virginia Class Members expected to be compensated for the services they provided to Kroger.

289.     Despite reasonably knowing that Plaintiff Copeland and the Virginia Class Members expected to be compensated for all of the labor they provided, Kroger instead accepted or retained the benefits of their labor without them for its value.

290.     Kroger has therefore benefited from services rendered by the Plaintiff Copeland and the Virginia Class Members, and they are entitled to recover pursuant to the equitable theory of *quantum meruit*.

291.     Further it would be unjust to allow Kroger to retain the benefit conferred by Plaintiff Copeland and the Virginia Class Members under these circumstances.

292.     Accordingly, the Virginia Class should be certified as defined in Paragraph 283.

**B.     VIRGINIA CLASS ALLEGATIONS**

293.     Plaintiff Copeland and the Virginia Class Members bring their Virginia common law claims as a class action pursuant to Rule 23 on behalf of all similarly situated individuals employed by

Kroger or any of its subsidiaries in Virginia from January 1, 2022 through the final disposition of this matter. *See* VA. CODE ANN. § 8.01-246(4).

294. Class action treatment of Plaintiff Copeland and the Virginia Class Members' claims is appropriate because all of Rule 23's class action requisites are satisfied.

295. The number of Virginia Class Members is so numerous that joinder of all class members is impracticable.

296. Plaintiff Copeland's Virginia state-law claims share common questions of law and fact with the claims of the Virginia Class Members.

297. Plaintiff Copeland is a member of the Virginia Class, her claims are typical of the claims of other Virginia Class Members, and she has no interests that are antagonistic to or in conflict with the interests of other Virginia Class Members.

298. Plaintiff Copeland and her counsel will fairly and adequately represent the Virginia Class Members and their interests.

299. Class certification is appropriate under FED R. CIV. P. 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

300. Accordingly, the Virginia Class should be certified as defined in Paragraph 283.

### COUNT ELEVEN
**(Class Action Alleging Violations of the West Virginia Act)**

**A.    WEST VIRGINIA ACTS COVERAGE**

301. All previous paragraphs are incorporated as though fully set forth herein.

302. The West Virginia Class is defined as:

**ALL CURRENT AND FORMER EMPLOYEES OF THE KROGER CO. OR ANY OF ITS SUBSIDIARIES, ANYWHERE IN THE STATE OF WEST VIRGINIA FROM JANUARY 1, 2022, THROUGH THE FINAL**

**DISPOSITION OF THIS MATTER, WHO WERE AFFECTED BY THE MYTIME PAYROLL SYSTEM ("West Virginia Class" or "West Virginia Class Members").**

303. At all times hereinafter mentioned, Kroger has been an "employer" within the meaning of the West Virginia Acts. *See* W. Va. Code § 21-5-1–18.

304. At all times hereinafter mentioned, Plaintiff Beal and the West Virginia Class Members have been "employees" within the meaning of the West Virginia Acts. *See* W. Va. Code § 21-5-1(b).

**B.     FAILURE TO PAY WAGES IN ACCORDANCE WITH THE WEST VIRGINIA ACTS**

305. All previous paragraphs are incorporated as though fully set forth herein.

306. The West Virginia Acts require that "[e]very person, firm, or corporation doing business in this state. . . shall settle with its employees at least twice every month and with no more than 19 days between settlements. . ." W. Va. Code §21-5-3(a).

307. Kroger failed to pay Plaintiff Beal and the West Virginia Class Members all "wages" and "fringe benefits" due within the time frame required by the West Virginia Acts. W. Va. Code Ann. § 21-5-1.

308. Plaintiff Beal and the West Virginia Class Members have suffered damages and continue to suffer damages as a result of Kroger's acts or omissions as described herein, and Kroger is in possession and control of necessary documents and information from which Plaintiff Beal would be able to precisely calculate damages.

309. Plaintiff Beal, on behalf of herself and the West Virginia Class Members, seek recovery of their unpaid compensation and an additional equal amount as liquidated damages, attorneys' fees, costs, and reasonable expenses of this action to be paid by Kroger. *See* W. Va. Code § 21-5-12.

310. Plaintiff Beal and the West Virginia Class Members previously provided a written demand and notice of unpaid wages, prior to asserting this class action under the West Virginia Acts. W. Va. Code Ann. § 21-5-4a.

311.     The proposed class of employees sought to be certified pursuant to the West Virginia Acts, is defined in Paragraph 302.

312.     The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Kroger.

## C.     WEST VIRGINIA CLASS ALLEGATIONS

313.     Plaintiff Beal brings her West Virginia claims as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all similarly situated individuals employed by Kroger to work in West Virginia at any time between January 1, 2022 through the final disposition of this matter.

314.     Class action treatment of Plaintiff Beal's claims are appropriate because, as alleged below, all of Federal Rule of Civil Procedure 23's class action requisites are satisfied.

315.     Kroger employs (and has employed) numerous individuals during the relevant window of recovery and joinder of their individual claims would be impracticable.

316.     Plaintiff Beal's claims share common questions of law and fact with the claims of the West Virginia Class Members.

317.     Plaintiff Beal is a member of the West Virginia Class, her claims are typical of the claims of the other West Virginia Class Members, and she has no interests that are antagonistic to or in conflict with the interests of the other West Virginia Class Members.

318.     Plaintiff Beal and her counsel will fairly and adequately represent the West Virginia Class Members and their interests.

319.     Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

320.     Accordingly, the West Virginia Class should be certified as described in Paragraph 302.

**VI.**
**RELIEF SOUGHT**

321.   Plaintiff respectfully prays for judgment against Kroger as follows:

a.      For an Order certifying the FLSA Collective as defined in Paragraph 83 and requiring Kroger to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all putative collective action members;

b.      For an Order certifying the Kentucky Class as defined in Paragraph 115 and designating Plaintiff Wilder as the Class Representative of the Kentucky Class;

c.      For an Order certifying the Alabama Class as defined in Paragraph 136 and designating Plaintiff Tyndal as the Class Representative of the Alabama Class;

d.      For an Order certifying the Arizona Class as defined in Paragraph 152 and designating Plaintiff Bauer as the Class Representative of the Arizona Class;

e.      For an Order certifying the Illinois Class as defined in Paragraph 173 and designating Plaintiff Henson as the Class Representative of the Illinois Class;

f.      For an Order certifying the Michigan Class as defined in Paragraph 203 and designating Plaintiff Miller as the Class Representative of the Michigan Class;

g.      For an Order certifying the Ohio Class as defined in Paragraph 221 and designating Plaintiff Smith as the Class Representative of the Ohio Class;

h.      For an Order certifying the Tennessee Class as defined in Paragraph 247 and designating Plaintiff Keplinger as the Class Representative of the Tennessee Class;

i.      For an Order certifying the Texas Class as defined in Paragraph 266 and designating Plaintiff Acker as the Class Representative of the Texas Class;

j.      For an Order certifying the Virginia Class as defined in Paragraph 283 and designating Plaintiff Copeland as the Class Representative of the Virginia Class;

k. For an Order certifying the West Virginia Class as defined in Paragraph 302 and designating Plaintiff Beal as the Class Representative of the West Virginia Class;

l. For an Order approving the form and content of a notice to be sent to all putative FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

m. For an Order pursuant to Section 16(b) of the FLSA finding Kroger liable for unpaid back wages due to Plaintiff (and those FLSA Collective Members who have joined in the suit), and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff (and those FLSA Collective Members who have joined in the suit);

n. For an Order pursuant to Kentucky statutory law awarding Plaintiff Wilder and the Kentucky Class Members unpaid compensation and other damages allowed by law;

o. For an Order pursuant to Alabama common law awarding Plaintiff Tyndall and the Alabama Class Members unpaid compensation and other damages allowed by law;

p. For an Order pursuant to Arizona statutory law awarding Plaintiff Bauer and the Arizona Class Members unpaid compensation, treble damages, attorneys fees and costs, and other damages allowed by law;

q. For an Order pursuant to Illinois statutory law awarding Plaintiff Henson and the Illinois Class Members unpaid compensation, treble damages, compensatory damages, attorneys' fees and costs and other damages allowed by law;

r. For an Order pursuant to Michigan common law awarding Plaintiff Miller and the Michigan Class Members unpaid compensation and other damages allowed by law;

s. For an Order pursuant to Ohio statutory law awarding Plaintiff Smith and the Ohio Class Members unpaid compensation, liquidated damages, attorneys' fees and costs, and other damages allowed by law;

t. For an Order pursuant to Tennessee common law awarding Plaintiff Keplinger and the Tennessee Class Members unpaid compensation and other damages allowed by law;

u. For an Order pursuant to Texas common law awarding Plaintiff Acker and the Texas Class Members unpaid compensation and other damages allowed by law;

v. For an Order pursuant to Virginia common law awarding Plaintiff Copeland and the Virginia Class Members unpaid compensation and other damages allowed by law;

w. For an Order pursuant to West Virginia statutory law awarding Plaintiff Beal and the West Virginia Class Members unpaid compensation and other damages allowed by law;

x. For an Order awarding costs and expenses of this action;

y. For an Order awarding attorneys' fees;

z. For an Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law;

aa. For an Order awarding Plaintiffs a service award as permitted by law;

bb. For an Order compelling the accounting of the books and records of Kroger, at Kroger's own expense; and

cc. For an Order granting such other and further relief as may be necessary and appropriate.

Date:   March 9, 2023

Respectfully submitted,

By:   /s/ Robert E. DeRose
**Robert E. DeRose** (OH Bar No. 005214)
bderose@barkanmeizlish.com
**BARKAN MEIZLISH DEROSE COX, LLP**
4200 Regent Street, Suite 210
Columbus, Ohio 43219
Telephone: (614) 221-4221
Facsimile: (614) 744-2300

By:   /s/ Clif Alexander
**Clif Alexander** (admitted *pro hac vice*)
Texas Bar No. 24064805
clif@a2xlaw.com
**Austin W. Anderson** (*pro hac vice anticipated*)
Texas Bar No. 24045189
austin@a2xlaw.com
**ANDERSON ALEXANDER, PLLC**
819 N. Upper Broadway
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284

***Attorneys in Charge for Representative Plaintiffs and Putative Collective/Class Members***

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

/s/ Clif Alexander
Clif Alexander