# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **BRANDON WILDER,** *et al. individually* | : | |
| *and on behalf of all others similarly situated,* | : | **Case Nos. 1:22-cv-681,** |
| | : | **1:23-cv-287,** |
| *Plaintiffs,* | : | **1:24-cv-521.** |
| | : | |
| v. | : | **Judge Jefferey P. Hopkins** |
| | : | |
| **THE KROGER CO.,** | : | |
| | : | |
| *Defendant.* | : | |

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF RULE 23 CLASS ACTION SETTLEMENT

Brandon Wilder, Donald Austin, Otis Wood, and Kasey Ebersole ("Plaintiffs" or "Representative Plaintiffs") hereby move this Court to preliminarily certify the Rule 23 Classes identified herein for the purpose of settlement after finding that the Settlement Agreement ("Agreement") (attached as Exhibit 1) falls within the range of possible approval and is neither illegal nor collusive. Plaintiffs also ask this Court to authorize the issuance of the proposed Notice (attached as Exhibit 2) to the Putative Class Members and schedule a Final Fairness Hearing to ultimately determine whether the Agreement at issue is fair, reasonable, and adequate, as required by Federal Rule of Civil Procedure 23.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................................................iii

I.  Introduction.......................................................................................................................1

II.  Issues Presented ................................................................................................................2

III.  Summary of Facts and Procedural History.......................................................................3

IV.  Summary of the Settlement Terms ...................................................................................4

    A.  The Settlement Fund.............................................................................................4

    B.  Individuals Included in the Rule 23 Classes ........................................................5

    C.  Allocation Formula...............................................................................................6

    D.  Scope of Release ..................................................................................................6

    E.  Attorneys' Fees and Litigation Costs...................................................................8

    F.  Class Representatives & Service Awards .............................................................9

    G.  Settlement Administration ....................................................................................9

V.  Argument and Authorities............................................................................................... 11

    A.  The Class Action Settlement Procedure ............................................................ 11

    B.  Preliminary Settlement Approval is Appropriate............................................... 11

        1.  The Class Representatives and Class Counsel Have Adequately Represented the Class (Fed. R. Civ. P. 23(e)(2)(A)). ...................................................... 13

        2.  The Agreement Was Negotiated at Arms' Length (Fed. R. Civ. P. 23(e)(2)(B)). .......... 14

        3.  The Settlement Provides Substantial Relief to Plaintiffs and Class Members (Fed. R. Civ. P. 23(e)(2)(C)) ......................................................................... 15

        4.  The Settlement Provides Substantial Relief to Plaintiffs and Class Members (Fed. R. Civ. P. 23(e)(2)(D))........................................................................ 16

    C.  Certification of the Rule 23 Settlement Classes is Appropriate ................................................ 16

        1.  Class Certification Under Rule 23........................................................................ 16

            i.  Rule 23(a)(1)'s Numerosity Requirement is Met........................................ 17

            ii.  Rule 23(a)(2)'s Commonality Requirement is Met...................................... 17

            iii.  Rule 23(a)(3)'s Typicality Requirement is Met.......................................... 18

            iv.  Rule 23(a)(4)'s Requirement that the Class Representatives and Class Adequately Protect Class Interests Is Met.............................................. 18

            v.  Rule 23(b)(3)'s Requirement for Predominance and Superiority Are Met............. 19

        2.  The Court Should Appoint Plaintiffs' Counsel as Class Counsel................................... 21

        3.  The Court Should Approve the Parties' Proposed Notice ........................................... 22

VI.  Conclusion ...................................................................................................................... 23

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (1997)..................................................................21

*Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457 (S.D. Fla. 2002)...............12

*Bert v. AK Steel Corp.*, No. 1:02-CV-467, 2008 WL 4693747 (S.D. Ohio Oct. 23, 2008)........................14

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992)................................................12

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977)......................................................................12

*Cross v. Nat'l Trust Life Ins. Co.*, 553 F.2d 1026 (6th Cir. 1977)..............................................19

*DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171 (8th Cir. 1995)..................................................17

*Deposit Guarantee Nat'l Bank v. Roper*, 455 U.S. 326 (1989) .................................................17

*Franks v. Kroger Co.*, 649 F.2d 1216 (6th Cir. 1981) ...............................................................11

*Gevaerts v. TD Bank, N.A.*, No. 11:14-CV-20744-RLR, 2015 WL 12533121 (S.D. Fla. Aug. 4, 2015) ..........................................................................................................................................11

*In re GMC Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) .........................16, 17

*In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330 (N.D. Ohio 2001). ............................13

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953 (9th Cir. 2009) ......................20

*Levell v. Monsanto Research Corp.*, 191 F.R.D. 543 (S.D. Ohio 2000) .........................................12

*Little Caesar Entrp., Inc. v. Smith*, 172 F.R.D. 236 (E.D. Mich. 1997) .......................................18

*Lott v. Louisville Metro Gov't*, No. 3:19-CV-271-RGJ, 2023 WL 2562407 (W.D. Ky. Mar. 17, 2023) .........................................................................................................................................12, 13

*Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. 2001).....................................................14

*Mitcham v. Intrepid U.S.A., Inc.*, No. 3:17-CV-703-CHB, 2019 WL 2269918 (W.D. Ky. May 28, 2019).........................................................................................................................................11

*Parkhill v. Minn. Mut. Life Ins. Co.*, 188 F.R.D. 332 (D. Minn. 1999) ...................................17, 18

*Powers v. Hamilton Cnty. Pub. Def. Comm.*, 501 F.3d 592 (6th Cir. 2007)...................................19

*Rangel v. PLS Check Cashers of Cal., Inc.*, 899 F.3d 1106 (9th Cir. 2018)......................................7

*Richardson v. Wells Fargo Bank, N.A.*, 839 F.3d 442 (5th Cir. 2016).............................................7

*Robinson v. Ford Motor Co.*, Nos. 1:04 CV 00844, 1:04-CV-00845, 2005 WL 5253339 (S.D. Ohio June 15, 2005) ......................................................................................................................13

*Senne v. Kansas City Royals Baseball Corp.*, No. 17-16245, 2019 WL 3849564 (9th Cir. Aug. 16, 2019) ..........................................................................................................................................20

*Senter v. Gen. Motors Corp.*, 532 F.2d 511 (6th Cir. 1976)........................................................18

*Simmons v. Trans Express Inc.*, No. 19-438, 2021 WL 4955860, 2021 U.S. App. LEXIS 32032 (2d Cir. Oct. 26, 2021) ........................................................................................................... 7

*Spine & Sports Chiropractic, Inc. v. ZirMed, Inc.*, No. 3:13-CV-00489, 2015 WL 1976398 (W.D. Ky. May 4, 2015) .............................................................................................................. 13

*Sprague v. Gen. Motors Corp.*, 133 F.3d 388 (6th Cir. 1998) ............................................................ 18

*Swigart v. Fifth Third Bank*, 288 F.R.D. 177 (S.D. Ohio 2012) ............................................... 17, 18

*Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559 (6th Cir. 2001) ........................... 11

*Tennessee Ass'n of Health Maint. Organizations, Inc. v. Grier*, 262 F.3d 559 (6th Cir. 2001) ........................ 12

*Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D. 262 (E.D. Ky. 2009) ..................................... 11, 12

*Then v. Great Arrow Builders, LLC*, No. 2:20-CV-00800-CCW, 2022 WL 562807 (W.D. Pa. Feb. 23, 2022) ........................................................................................................................... 7

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016) ...................................................................... 19

*Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084 (6th Cir. 2016) ....................................................... 12

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................ 11, 13, 20, 21

**Other Authorities**

2 Newberg on Class Actions § 4:49 (5th ed. 2012) ................................................................... 19, 20

4 Newberg on Class Actions § 11.41 (4th ed. 2002) ......................................................................... 12

**Statutes**

26 M.R.S.A. § 626-A ........................................................................................................................ 2

820 ILCS 105/12(a) ......................................................................................................................... 2

A.R.S. § 23-355 ............................................................................................................................... 2

C.R.S.A. § 8-4-109 ......................................................................................................................... 2

CAL. LABOR CODE § 225.5 ............................................................................................................. 2

MASS. GEN. LAWS ANN. ch. 149, § 150 (West) ........................................................................... 2

MD Code, Labor and Employment, § 3-507.2 ............................................................................... 2

N.J. STAT. ANN. § 34:11-4.10 ......................................................................................................... 2

VA CODE ANN. § 40.1-29 ............................................................................................................... 2

## I.
### INTRODUCTION

This action consists of three consolidated lawsuits asserting federal and state wage and hour violations against Defendant—The Kroger Co. ("Kroger")—related to the launch of its transition to a new cloud-based timekeeping and payroll system known as MyInfo/MyTime.[1] Representative Plaintiffs and Kroger have agreed to settle the consolidated actions as a nationwide class action[2] that ensures compensation for those individuals negatively affected by the transition to the cloud-based MyInfo/MyTime timekeeping and payroll system (the "glitch") as identified by Deloitte, the third-party accounting firm retained by Kroger. Under the terms of the Agreement, Class Members will receive not only their unpaid/underpaid wages and benefits but will also receive an additional amount of damages/penalties for underpayments and/or over-deductions caused by Kroger's glitch.

By this Motion, the Parties seek certification, for settlement purposes only, of two (2) settlement classes pursuant to Federal Rule of Civil Procedure 23. Specifically, the Parties seek to certify Class A and Class B, as defined below:

> **Class A**—Includes all individuals employed by Kroger as non-exempt employees from September 1, 2022 to May 31, 2023, in Arizona, California, Colorado, Illinois, Maine, Maryland, Massachusetts, New Jersey, and Virginia who experienced an instance of underpayment within a given pay period for the hours they worked (or that they took as PTO) in that pay period (a "Negative Variance") or experienced an over-deduction from their wages relating to benefits (an "Over Deduction") as identified in the Deloitte Analysis.

> **Class B**—Includes all individuals employed by Kroger as non-exempt employees from September 1, 2022 to May 31, 2023, in every other state where Kroger does business, excluding Oregon and Washington, who experienced an instance of underpayment within a given pay period for the hours they worked (or that they took as PTO) in that pay period (a "Negative Variance") or experienced an over-

---

[1] The three consolidated cases are *Brandon Wilder, et al. v. The Kroger Co.*, No. 1:22-cv-681 (S.D. Ohio.); *Donald Austin, et al. v. Kroger Limited Partnership I Mid Atlantic Marketing Area*, No. 1:23-cv-287 (E.D. Va.); and *Kacey Ebersole v. Dillon Companies, LLC*, No. 1:23-cv-845 (D. Colo.) ("Consolidated Actions").

[2] Excluded from the classes are those individuals who worked for Kroger or its subsidiaries or affiliates in Washington and Oregon.

deduction from their wages relating to benefits (an "Over Deduction") as identified in the Deloitte Analysis.

The Class Members are divided into two classes (Class A and Class B) to account for differences in state wage and hour law and to reflect that some states provide for additional protections (and penalties) related to the non-payment or under-payment of wages and benefits.[3] Plaintiffs Austin, Ebersole, and Wood seek to be appointed as Representative Plaintiffs for Class A as they worked in Virginia, Colorado, and California, respectively. Plaintiff Wilder seeks to be appointed as Representative Plaintiff for Class B, as he worked for Kroger in Kentucky.

## II.
### ISSUES PRESENTED

By this Joint Motion, the Parties ask the Court to: (1) certify the proposed settlement classes pursuant to Rule 23(e) of the Federal Rules of Civil Procedure in connection with the settlement process; (2) for settlement purposes, appoint Austin Anderson and Clif Alexander of ANDERSON ALEXANDER, PLLC and Robert E. DeRose of BARKAN MEIZLISH DEROSE COX, LLP as Class Counsel for the Proposed Settlement Classes (3) appoint the respective Plaintiffs, identified herein, as the Class Representatives for their respective classes; (4) approve the Parties' proposed notice of settlement, attached as Exhibit 2 and proposed notice procedure; (5) set a date by which the Parties

---

[3] Specifically, the following statutes provide for additional damages and penalties for the states included in Class A. A.R.S. § 23-355 (Arizona statute providing for treble damages for the failure to timely pay wages); CAL. LABOR CODE § 225.5 (California statute providing for civil penalties of $100.00 for the failure to timely pay wages, with an additional $200.00 to be paid for each subsequent occurrence, in addition to a 25% penalty of the amount wrongfully withheld); C.R.S.A. § 8-4-109 (Colorado statute providing for penalties up to treble damages or $3,000.00, whichever is greater in the event of a willful failure to pay); 820 ILCS 105/12(a) (Illinois statute providing for a penalty of 5% of the outstanding wage amount to be assessed on a monthly basis); 26 M.R.S.A. § 626-A (Maine statute providing that an employer is subject to a forfeiture of not less than $100 nor more than $500 for each violation, in addition to liquidated damages, attorneys' fees, and pre-judgment interest); MD Code, Labor and Employment, § 3-507.2 (Maryland statute providing for payment of treble damages for unpaid wages); MASS. GEN. LAWS ANN. ch. 149, § 150 (West) (Massachusetts statute authorizing treble damages for failure to timely pay wages), N.J. STAT. ANN. § 34:11-4.10 (West) (New Jersey statute authorizing penalties up to $1,000.00 per occurrence for untimely wage payment); VA CODE ANN. § 40.1-29 (Virginia statute authorizing payment up to "triple the amount of wages due").

must file a motion for final settlement approval and petition for an award of attorneys' fees and costs; and (6) schedule the Fairness Hearing.

## III.
### SUMMARY OF FACTS AND PROCEDURAL HISTORY

Originating in Cincinnati, Ohio, Kroger is the largest traditional grocer in the United States. It has nearly 2,800 stores in thirty-five (35) states operating under twenty-eight (28) different names.[4] On September 1, 2022, Kroger rolled out its new cloud-based MyInfo/MyTime timekeeping and payroll system. Between September 1 and November 5, 2022, Kroger's system experienced glitches such that it failed to accurately record its hourly employees' time and benefits, and failed to accurately and timely process payroll.[5]

On November 17, 2022, Plaintiff Brandon Wilder filed this action against Kroger alleging violations of the FLSA and Kentucky state law ("*Wilder* Action"). Though Wilder was the first to file, four additional class action lawsuits were filed against Kroger seeking relief from damages relating to the glitch.[6] Three of the five actions (the *Wilder, Austin,* and *Ebersole* Actions) are now consolidated before this Court for resolution on a class-wide basis ("Consolidated Actions"). The Oregon and Washington Actions are not affected by the Agreement and individuals who worked for Kroger in Oregon and Washington have been excluded from the defined classes.

Counsel for Plaintiffs in the Consolidated Actions conferred and agreed to attempt to settle the Consolidated Actions on a global basis. To that end, they obtained stays of their respective

---

[4] https://www.thekrogerco.com/about-kroger/history/

[5] After Plaintiff Wilder filed this lawsuit, Kroger retained the services of Deloitte to perform a full audit to identify those affected by the glitch ("Deloitte Audit") and calculate any underpayments or over deductions within a given pay period for the hours worked (or for which PTO was taken) in that pay period ("Negative Variance").

[6] Those actions include: *Woody, et al. v. Fred Meyer Stores, Inc.*, No. 3:22-cv-1800 (D. Ore.) ("Oregon Action"); *Sapphire v. Fred Meyer Stores, Inc.*, No. 2:22-cv-01795-JCC (W.D. Wash.) ("Washington Action"); *Austin, et al., v. Kroger Limited Partnership I Mid Atlantic Marketing Area*, Case No. 1:23-cv-00287 (E.D. Va.) ("*Austin* Action"). *Ebersole v. Dillon Companies, LLC*, No. 1:23-cv-00845 (D. Colo.) ("*Ebersole* Action").

actions and retained nationally-known wage and hour mediator Michael Russell to serve as the third-party neutral. After the provision of data and other information from Kroger and upon further investigation by Plaintiffs, on June 14, 2023 the Parties participated in a full-day in-person mediation session facilitated by Mr. Russell. The Parties were able to reach a settlement in principle of the claims in the Class Actions, which is reflected in the Agreement before the Court.

Though the Parties agreed to the terms of the Agreement at mediation, they waited for Deloitte to complete its audit related to the glitch. Once Deloitte finalized its audit, counsel for Plaintiffs in the Consolidated Actions were provided an opportunity to review the audit and question its findings. Kroger diligently worked with counsel to respond to each query until all parties were satisfied with the findings in the Deloitte audit and were able to move forward and formalize the Agreement before the Court.

Upon execution of the Agreement on September 16, 2024, the Parties implemented the action plan in the Agreement and 1) transferred the *Ebersole* Action to the Southern District of Ohio;[7] 2) moved to consolidate the *Wilder, Austin,* and *Ebersole* Actions; and 3) filed an amended complaint to align the pleadings with the terms of the settlement. Now, the Parties seek preliminary approval of their Settlement Agreement and maintain that it satisfies all requirements of Federal Rule of Civil Procedure 23.

## IV.
### SUMMARY OF THE SETTLEMENT TERMS

### A.    THE SETTLEMENT FUND

The Total Settlement Value is $20,875,139.62. Ex. 1, ¶ 33. This sum includes (1) the total amount of the Negative Variances and Over Deductions that were the result of the MyInfo

---

[7] The *Austin* Action had previously been transferred to the Southern District of Ohio.

Conversion and were identified in the Deloitte Analysis;[8] (2) an additional 50% of the total amount of the Negative Variances and Over Deductions that were the result of the MyInfo Conversion and were identified in the Deloitte Analysis, which is $5,273,920.92; (3) attorneys' fees and costs of $4,878,376.85; and (4) Costs of Claims Administration not to exceed $175,000.00. *See id.*

From the Total Settlement Value, $10,327,297.77 reflects the Funds Available for Settlement. This is the amount Kroger has made available to the Eligible Class Members in exchange for this Agreement and the obligations set forth herein. *See id.* at ¶ 21. This amount includes attorneys' fees and costs, Enhancement Awards to the Enhancement Award Recipients, the amount to be paid to the California Labor and Workforce Development Agency ("LWDA") as funds owed under the California Private Attorneys General Act ("PAGA"), and the Costs of Claims Administration associated with the Agreement. *Id.* at ¶ 22.

## B.    INDIVIDUALS INCLUDED IN THE RULE 23 CLASSES

There were approximately 47,000 Kroger employees who suffered a Negative Variance or Over Deduction because of the glitch in the states included in Class A and B. Those individuals make up the class Plaintiffs seek to preliminarily certify, according to the following definition:

> All individuals employed by Kroger as non-exempt employees from September 1, 2022 to May 31, 2023, where Kroger does business, excluding Oregon and Washington, who experienced an instance of underpayment within a given pay period for the hours they worked (or that they took as PTO) in that pay period (a "Negative Variance") or experienced an over-deduction from their wages relating to benefits (an "Over Deduction")  as identified in the Deloitte Analysis.

The Parties have agreed that the Rule 23 classes should be divided into two classes, with those individuals who worked for Kroger in Arizona, California, Colorado, Illinois, Maine, Maryland, Massachusetts, New Jersey, and Virginia to be included in Class A, and those individuals who worked for Kroger in any other included state to be included in Class B. Each individual who falls

---

[8] Kroger has represented that it has repaid this entire amount to Class Members.

within the above definition will be included in the Class appropriate for the state where he or she worked for Kroger.

## C. ALLOCATION FORMULA

In addition to the initially unpaid/underpaid wages owed (and now paid) to the Class Members,[9] the Net Funds Available for Settlement[10] are $5,231,420.92.[11] The Claims Administrator will divide the Settlement Fund so that Class A Members will receive approximately 62% of their Negative Variances and Overpayments as identified in the Deloitte Analysis and Class B Members will receive approximately 42% of their Negative Variances and Overpayments as identified in the Deloitte Analysis.[12] The Claims Administrator will then calculate the amount of the Settlement Sums by ensuring that each Eligible Class Member receives his or her *pro rata* percentage of the Settlement Fund based on their individual Negative Variances. *See* Ex. 1, ¶ 49(c).

## D. SCOPE OF RELEASE

The Settlement Class Members[13] will be subject to a limited release of their wage and hour claims, and will release

> any and all claims, obligations, demands, actions, rights, causes of action, and liabilities against the Released Parties, of any form whatsoever, arising under federal,

---

[9] Ex. 1, ¶ 49(a).

[10] This amount is determined by taking 50% of the total amount of the Negative Variances and Over Deductions identified in the Deloitte Analysis ($5,273,920.92) less Enhancement Payments of $35,000.00 and less the $7,500.00 amount paid to LWDA as funds owed under PAGA.

[11] Also taken from this sum will be the $2,500.00 in civil penalties to Eligible Class Members employed by Kroger in California. There are 11,173 Eligible Class Members from California, and this sum will provide them each approximately 0.22 cents to be paid in addition to their Settlement Sums.

[12] The exact percentages are as follows: Settlement Class Members in Class A will receive 41.4954066319339% of their Negative Variances and Overpayments according to the Deloitte Analysis; Settlement Class Members in Class B will receive 62.2431099479009% of their Negative Variances and Overpayments according to the Deloitte Analysis.

[13] The Enhancement Payment Recipients have agreed to enter into a general release in exchange for their Enhancement Payment as defined herein. *See* Ex. 1, ¶ 27.

state, or local law before the entry of the Preliminary Approval Order, whether known or unknown, unforeseen, unanticipated, unsuspected, or latent, which have been pled in the Second Amended Complaint or could have been pled in the Second Amended Complaint, relating to claims for wages, overtime, damages, penalties, liquidated damages, unpaid costs, restitution, penalties, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief under the wage and hour laws of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*,[14] and all of its implementing rules and regulations and interpretive guidelines, and under the laws of any state or subdivision thereof in which Kroger does business, including but not limited to the states of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Delaware, Florida, Georgia, Idaho, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Mexico, North Carolina, Ohio, South Carolina, Tennessee, Texas, Utah, Virginia, West Virginia, Wisconsin, and Wyoming, whether based upon state, local, constitutional, statutory, or common law, or any other law, rule, or regulation, including but not limited to, claims under the Alaska Wage and Hour Act, Alaska Stat. § 23.10.050 *et seq.*; Alaska Stat. §§ 23.05.140(a), 23.10.040(a), 23.10.043; Arizona Fair Wages and Healthy Families Act, Ariz. Rev. Stat. §§ 23-350 *et seq.,* 23-362 *et seq.*; Arkansas Minimum Wage Act, Ark. Code §§ 11-4-201 *et seq.*, 11-4-401 *et seq.*, 11-4-612; Cal. Lab. Code §§ 98 – 98.2, 201-203, 204, 210, 216, 218, 218.5, 218.6, 226, 226.7, 510, 558, 1182.12, 1174, 1194, 1194.2, 1197, 1197.1, 1198, 2802; Private Attorneys General Act of 2004, Cal. Lab. Code §§ 2698 *et seq.*; California Business and Professions Code §§ 17200 *et seq.*; IWC California Wage Orders and California Code of Regulations, Title 7, section 11000 *et seq.*; Colorado Minimum Wages of Workers Act, Colo. Rev. Stat. § 8-6-101 *et seq.*; Colorado Wage Claim Act, Colo. Rev. Stat. § 8-4-101 *et seq.*; Colorado Overtime and Minimum Pay Standards Order, 7 CCR § 1103-1; Colo. Const. art. XVIII, § 15; Delaware Minimum Wage Act, 19 Del. Code §§ 901-914; Delaware Wage Payment and Collection Act 19 Del. Code §§ 1101-1115; Art. X, Section 24 Florida Constitution; Florida Minimum Wage Act, Fl. Stat. § 448.110 *et seq.*; Fla. Stat. § § 532.01, 532.02; O.C.G.A. § 34-4-1 *et seq.*; O.C.G.A § 34-7-1 *et seq.*; Idaho Minimum Wage Law, Idaho Code § 44-1501 *et seq.;* Idaho Hours Worked Act, Idaho Code § 44-1201 *et seq.*; Idaho Code § 45-601 *et seq.*; Illinois Minimum Wage Law, 820 Ill. Comp. Stat. § 105 *et seq.*; Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. § 115 *et seq.*; Indiana Minimum Wage Law, Ind. Code § 22-2-2 *et seq.*; Ind. Code § 22-2-5-1 *et seq.*; Kansas Minimum Wage and Maximum Hours Law, Kan. Stat. Ann. § 44-1201 *et seq.*; Kansas Wage Payment Law, Kan. Stat. Ann. § 44-313 *et seq.*; the Kentucky Wage Hour Act, Ky. Rev. Stat., Ch. 337 *et seq.*;  La. Rev. Stat. § 23:631 *et seq.*; Maryland Wage and Hour Law, Md. Lab. and Emp. Code Ann. § 3-400 *et seq.*; Maryland Wage Payment and

---

[14] Though the Sixth Circuit has not specifically addressed the issue, there is support from other Courts of Appeals for the proposition that opt-in FLSA claims may properly be released through an opt-out class settlement. *See Then v. Great Arrow Builders, LLC*, No. 2:20-CV-00800-CCW, 2022 WL 562807, at *4 (W.D. Pa. Feb. 23, 2022) (citing *Richardson v. Wells Fargo Bank, N.A.,* 839 F.3d 442 (5th Cir. 2016); *Rangel v. PLS Check Cashers of Cal., Inc.*, 899 F.3d 1106 (9th Cir. 2018); *see also Simmons v. Trans Express Inc.*, No. 19-438, 2021 WL 4955860, 2021 U.S. App. LEXIS 32032 (2d Cir. Oct. 26, 2021)).

Collection Law, Md. Lab. and Emp. Code Ann. §§ 3-500 *et seq.* 3-305, 3-424; Michigan Workforce Opportunity Wage Act, Mich. Comp. Laws § 408.411 *et seq.*; Michigan, Minimum Wage Law, Mich. Comp. Laws § 408.381 *et seq.*; Michigan Payment of Wages and Fringe Benefits Act, Mich. Comp. Laws § 408.471 *et seq.*; Minnesota Fair Labor Standards Act, Minn. Stat. § 177.21, *et seq.*; Minn. Stat. § 177.41, *et seq.*; Minn. Stat. § 181.01, *et seq.*; Minn. Stat. § 609.52, *et. seq.*; Miss. Code Ann. §§ 71-1-1 *et seq.*; Mo. Rev. Stat. § 290.010 *et seq.,* Mo. Rev. Stat. § 290.500 *et seq.*; Montana Minimum Wage and Overtime Act, Mont. Code Ann. § 39-3-401 *et seq.*; Mont. Code Ann. § 39-3-201 *et seq.*; Mont. Code Ann. § 39-3-101 *et seq.*; Nebraska Wage and Hour Act, Neb. Rev. Stat. § 48-1201 *et seq*; Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. § 48-1228 *et seq.*; Nev. Rev. Stat. Ann. § 608.250 *et seq.*; Nev. Rev. Stat. Ann § 608.016 *et seq.*;, Nev. Const. Art. 15, § 16; New Mexico Minimum Wage Act, N.M. Stat. Ann. § 50-4-1 *et seq.*; North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.1 *et seq.*; the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code Chapter 4111; Section 34a, Article II Ohio Constitution; Ohio Rev. Code § 4113.15; Tennessee Wage Regulations Act, Tenn. Code § 50-2-103; Texas Minimum Wage Act, Tex. Lab. Code § 62.001 *et seq.*; Tex. Lab. Code § 61.001 *et seq.*; Tex. Lab. Code § 63.001 *et seq.*; Utah Minimum Wage Act, Utah Code Ann. § 34-40-101 *et seq.,* Utah Code Ann. § 34-40-201 *et seq.*; Utah Code Ann. § 34-28-1 *et seq.*; Virginia Minimum Wage Act, Code of Va. § 40.1-28.8 *et seq.*; Virginia Wage Payment Law, Code of Va. § 40.1-29 *et seq.*; West Virginia Minimum Wage and Maximum Standard Hours, W. Va. Code § 21-5C-1 *et seq.*; West Virginia Wage Payment and Collection Act, W. Va. Code § 21-5-1 *et seq.*; Wis. Stat. § 104.001 *et seq.*; Wis. Stat. § 109.01 *et seq.*; Wis. Stat. § 103.001 *et seq.*; Wyo. Stat. § 27-4-101 *et seq.*; Wyo. Stat. § 27-4-201 *et seq.*; Wyo. Stat. § 27-4-401 *et seq.*; Wyo. Stat. § 27-4-501 *et seq.*; and all of their implementing rules and regulations and interpretive guidelines, and all claims for penalties, liquidated damages, interest, or restitution relating to or derivative of any or all of those laws. Specifically excluded from this definition are any claims unrelated to the MyInfo Conversion that relate to underpayment of Eligible Class Members' overtime compensation based on a miscalculation of Eligible Class Members' regular rate for purposes of calculating their overtime compensation pursuant to the FLSA or any state law.

Ex. 1, ¶ 28. The Released Parties are designed to include (i) Defendant The Kroger Co.; (ii) Defendant's past or present subsidiaries, divisions, affiliates, parents, successors, and assigns; and (iii) past or present officers, directors, shareholders, members, partners, agents, employees, advisors, insurers, attorneys, representatives, trustees, heirs, executors, administrators, predecessors, successors, and assigns of any of the foregoing. *Id.* at ¶ 25.

## E.  ATTORNEYS' FEES AND LITIGATION COSTS

Class Counsel negotiated an amount to be paid in addition to the Net Settlement Funds Available for Settlement, inclusive of litigation costs and expenses. That amount is $4,878,376.85 and is 23% of the Total Settlement Value. Should this Court preliminarily approve the Agreement, Class Counsel will respectfully show that the requested amount is fair and reasonable at the Final Fairness Hearing.

F.      CLASS REPRESENTATIVES & ENHANCEMENT PAYMENT

The Parties request that the Plaintiffs identified below be appointed as the Class Representatives for the Settlement Classes, as follows:

- o   **Class A**—Plaintiffs Donald Austin (Virginia), Kasey Ebersole (Colorado, and Otis Wood (California)

- o   **Class B**—Plaintiff Brandon Wilder (Kentucky)

As part of the Settlement, the Parties agreed to Enhancement Payment of $5,000.00 for each Class Representative, with an additional $5,000.00 to be paid to Lori Dalton, Sharon Simpson, and Deborah Winston (collectively, Enhancement Payment Recipients").[15] These awards are in addition to their settlement shares as set forth above. Considering that their efforts resulted in a settlement on behalf of the Plaintiffs and Settlement Class Members, and the significant risk to their reputations and future employment, these modest awards are reasonable.

G.      SETTLEMENT ADMINISTRATION

Kroger elected to retain Rust Consulting, Inc., a third-party settlement administrator ("Claims Administrator") to administer the settlement. Under the terms of the Agreement, Kroger is responsible for any administration costs and expenses incurred by the Claims Administrator. The Administrator has provided a quote for its services in an amount not to exceed $175,000.00.

---

[15] Lori Dalton, Sharon Simpson, and Deborah Winston were Named Plaintiffs in *Donald Austin, et al., v. Kroger Limited Partnership I Mid Atlantic Marketing Area*, Case No. 1:23-cv-00287 (E.D. Va.) and their willingness to serve as representative plaintiffs by filing the initial *Austin* Lawsuit benefitted the Class. They have also executed a general release of claims as further consideration for the Enhancement Payment provided by the Agreement. *See* Ex. 1, ¶ 27.

Within five (5) days of the Court's Order granting this motion, Kroger will provide the Claims Administrator with the most current addresses available for the Class Members. *See* Ex. 1, ¶ 56(c)(i). The Claims Administrator will be responsible for formatting, printing, and mailing the Notice Packet to each Plaintiff and Rule 23 Class Member. The Claims Administrator will mail the Notice (attached as Ex. 2) to the Class Members within fifteen (15) days from the entry of the Court's Order granting this motion. *Id.*

The Notice will inform the Class Members about the terms of the Class Action Settlement, advise them about their rights to opt-out of the settlement class, and instruct them how to file an objection and appear at the Final Fairness Hearing. It will also provide the contact information for Class Counsel and the Claims Administrator to answer any questions about the settlement or administration process. The Class Members will have sixty (60) days from the date the Notice is mailed to opt-out of the class or to submit an objection ("Notice Deadline"). *See* Ex. 2. Subject to final approval, any Class Member who does not timely opt-out of the settlement class will be a Settlement Class Member entitled to receive their share of the Net Funds Available for Settlement according to the calculations provided in the Agreement.

Should this Court enter a final approval order and dismiss this consolidated action with prejudice, the Claims Administrator will be responsible for: (1) issuing payment of the Plaintiff and Settlement Class Members' Settlement Sums; (2) calculating, issuing and mailing IRS Form 1099s to the participating Plaintiffs and Class Members; (3) after settlement checks are mailed, providing Class Counsel with the names of any individuals who have not negotiated their settlement checks prior to the void date. Class Counsel will work with the Claims Administrator to take all necessary steps to ensure that the Notice of Settlement and settlement checks are sent to the correct addresses.

**V.**

**ARGUMENT AND AUTHORITIES**

**A.     THE CLASS ACTION SETTLEMENT PROCEDURE**

Rule 23 of the Federal Rules of Civil Procedure establishes a defined procedure and specific criteria for settlement approval in class action settlements like this one. Rule 23(e) describes three steps for the settlement approval process:

(1)     Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval and certification of settlement classes;

(2)     Dissemination of mailed and/or published notice of the settlement to all affected class members; and

(3)     A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Mitcham v. Intrepid U.S.A., Inc.*, No. 3:17-CV-703-CHB, 2019 WL 2269918, at *6 (W.D. Ky. May 28, 2019) (citing *Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565–66 (6th Cir. 2001); *Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D. 262, 270 (E.D. Ky. 2009)); *see also* FED. R. CIV. P. 23(e). This procedure safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests.  With this Motion, Plaintiffs request that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed settlement, certifying the settlement classes, and approving the proposed notice.

**B.     PRELIMINARY SETTLEMENT APPROVAL IS APPROPRIATE**

The Sixth Circuit has recognized "that the law generally favors and encourages the settlement of class actions. *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981) *on reh'g*, 670 F.2d 71 (6th Cir. 1992) (internal citations omitted). "The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain." *Gevaerts v. TD Bank, N.A.*, No. 11:14-CV-20744-RLR, 2015 WL 12533121, at *5 (S.D. Fla. Aug. 4, 2015)

(citing *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex."); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); 4 NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002)); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). The traditional means for handling claims like those at issue here— individual litigation—would unduly tax the court system, require a massive expenditure of public and private resources, and, given the relatively small value of the individual claims, would be impracticable. The Agreement, therefore, is the best vehicle for these employees to receive the relief to which they are entitled in a prompt and efficient manner.

Consistent with Rule 23(e), district courts in the Sixth Circuit review class action settlement proposals using the three-step process outlined above "after which the Court must decide whether the proposed settlement is fair, adequate, and reasonable to the class as a whole, and consistent with the public interest." *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 547 (S.D. Ohio 2000) (citations omitted). "The judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing"; and (2) "[i]f so, the final decision on approval is made after the hearing." *Lott v. Louisville Metro Gov't*, No. 3:19-CV-271-RGJ, 2023 WL 2562407, at *1 (W.D. Ky. Mar. 17, 2023) (quoting ANN. MANUAL COMPLEX LIT. (Fourth) § 13.14 (2019)); *see also Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D. 262, 270 (E.D. Ky. 2009) (referencing *Tennessee Ass'n of Health Maint. Organizations, Inc. v. Grier*, 262 F.3d 559, 565–66 (6th Cir. 2001)).

To ultimately approve a proposed settlement, the court must determine whether it is "fair, reasonable, and adequate." *Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1093 (6th Cir. 2016). The preliminary approval of a proposed settlement is based on the Court's "familiarity with the issues and the evidence of the case as well as the arms-length nature of the negotiations prior to the settlement." *Robinson v. Ford Motor Co.*, Nos. 1:04 CV 00844, 1:04-CV-00845, 2005 WL 5253339, at

*3 (S.D. Ohio June 15, 2005). The court "should also determine that the settlement is neither illegal nor collusive." *See id.* In the event that the court find that the settlement falls within the range of possible approval, notice issues and a fairness hearing is scheduled. *Id.*

Rule 23(e) provides the court with factors to consider when making this ultimate determination. *See* FED. R. CIV. P. 23(e). Under the Rule 23(e)(2) factors, a settlement is "fair, reasonable, and adequate" if:

> (A)      the class representatives and class counsel have adequately represented the class;
>
> (B)      the proposal was negotiated at arm's length;
>
> (C)      the relief provided for the class is adequate, . . .; and
>
> (D)      the proposal treats class members equitably relative to each other.

"At the stage of preliminary approval, the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval." *Lott*, 2023 WL 2562407, at *1 (quoting *Spine & Sports Chiropractic, Inc. v. ZirMed, Inc.*, No. 3:13-CV-00489, 2015 WL 1976398, at *1 (W.D. Ky. May 4, 2015)); *see also* ANN. MANUAL COMPLEX LIT. § 21.662 (4th ed.)). Courts should scrutinize a proposed settlement agreement sufficiently to avoid "rubber-stamp[ing]" it, while still being "mindful of the substantial judicial processes that remain to test the assumptions and representations upon which the [proposed settlement agreement] are premised." *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 338 (N.D. Ohio 2001). A brief review of the Rule 23(e) factors show that preliminary approval is appropriate because the settlement falls within the range of possible approval, and there is no indicia that the settlement is illegal or collusive. *See Robinson*, 2005 WL 5253339, at *3.

> **1. The Class Representatives and Class Counsel Have Adequately Represented the Class (Fed. R. Civ. P. 23(e)(2)(A)).**

Class Representatives and Class Counsel acted quickly and decisively to file this action against Kroger after learning the glitch caused wide-spread payment issues. This early action put

Plaintiffs in a position to be involved in Kroger's initial response to the glitch and to open the door to meaningful early settlement discussions. The Parties exchanged significant informal discovery relating to Kroger's glitch and scheduled an early mediation across the Consolidated Actions. On June 14, 2023, the Parties participated in an in-person mediation with Michael Russell, a nationally recognized wage and hour mediator where a settlement agreement was hammered out. It was the experienced leadership of Class Counsel and the Class Representatives' willingness to take action that brought about the expeditious resolution of the Consolidated Actions. Class Counsel— experienced wage and hour litigators accustomed to resolving claims on a representative basis—are convinced that this settlement is fair and reasonable and in the best interests of the Class Members. See Exhibits 3 and 4, the Declarations of Robert DeRose and Austin Anderson, respectively. This factor supports preliminary approval of the settlement.

### 2. The Agreement Was Negotiated at Arms' Length (Fed. R. Civ. P. 23(e)(2)(B)).

The settlement negotiations were conducted fairly and at arm's-length with the assistance of a skilled mediator and only after the exchange and rigorous analysis of ample data. *C.f., Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001) (recognizing that arm's-length negotiations conducted by competent counsel constitute *prima facie* evidence of a fair settlement); *Bert v. AK Steel Corp.*, No. 1:02-CV-467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) ("The participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."); *Lott*, 2023 WL 2562407, at *2 (recognizing the second factor supported preliminary approval after noting "the Agreement was achieved only after arm's-length and good-faith negotiations between the parties and with a third-party mediatory"). The contested nature of the litigation and the circumstances surrounding the settlement confirm that no illegality or collusion occurred. *Lott*, 2023 WL 2562407, at *1. This factor supports preliminary approval of the settlement.

**3.     The Settlement Provides Substantial Relief to Plaintiffs and Class Members (Fed. R. Civ. P. 23(e)(2)(C)).**

The Total Settlement Value of the Agreement is over twenty million dollars and is on its face substantial. Each member of the Settlement Classes will receive a check containing their Settlement Sum, representing a damage/penalty amount paid. Individuals in Class A—representing states with robust wage laws that provide for additional protections/penalties—will be paid an additional amount equal to approximately 62% of their initial Negative Variance or Over Deduction. Individuals in Class B—representing states with wage laws that do not provide additional protections/penalties—will be paid an additional amount equal to approximately 43% of their initial Negative Variance or Over Deduction.

For example, if a Class Member from Arizona (a state that recognizes treble damages for failure to pay wages) had a Negative Variance of $1,000.00, they would receive a Settlement Sum of an additional $620.00, or 62% of their original Negative Variance. A Class Member from Texas (a state with no additional wage and hour protections) with the same $1,000.00 Negative Variance would receive an additional $420.00, or 42% of their original Negative Variance. These amounts provide them substantial relief for the significant inconvenience and harm caused by Kroger's failure to timely pay them their properly earned wages and its inaccurate over deductions from their pay.

The Parties agree that the Settlement represents a good value given the risks of continued litigation. Plaintiffs would face significant risk that could limit—or eliminate—their claims, including denial of Rule 23 class certification and dispositive motions on Kroger's ultimate liability for additional penalties and damages. Despite these real and significant risks, the Rule 23 Class Members will have received compensation at 162% or 142% of their original damage amount, depending on their membership in Class A and Class B, respectively.

Weighing the risks against the benefits of a settlement, the settlement amount is reasonable and all factors support preliminary approval of the settlement.

**4.** **The Agreement Treats Class Members Equitably Relative to Each Other (Fed. R. Civ. P. 23(e)(2)(4)).**

All Class Members are treated equitably under the Agreement. Though Class Members in states with additional damage protections will receive a slightly higher percentage share from the Net Settlement Funds Available for Settlement, that difference is equitable considering their available damages.

**C.** **CERTIFICATION OF THE RULE 23 SETTLEMENT CLASSES IS APPROPRIATE**

In connection with preliminary approval, Plaintiff requests that the Court certify, for settlement purposes, the following Settlement Classes:

> **Class A**—Includes all individuals employed by Kroger as non-exempt employees from September 1, 2022 to May 31, 2023, in Arizona, California, Colorado, Illinois, Maine, Maryland, Massachusetts, New Jersey, and Virginia who experienced an instance of underpayment within a given pay period for the hours they worked (or that they took as PTO) in that pay period (a "Negative Variance") or experienced an over-deduction from their wages relating to benefits (an "Over Deduction") as identified in the Deloitte Analysis.

> **Class B**—Includes all individuals employed by Kroger as non-exempt employees from September 1, 2022 to May 31, 2023, in every other state where Kroger does business, excluding Oregon and Washington, who experienced an instance of underpayment within a given pay period for the hours they worked (or that they took as PTO) in that pay period (a "Negative Variance") or experienced an over-deduction from their wages relating to benefits (an "Over Deduction") as identified in the Deloitte Analysis.

In total, these classes include 47,014 individuals.

**1.** **CLASS CERTIFICATION UNDER RULE 23**

Class certification "enables courts to treat common claims together, obviating the need for repeated adjudications of the same issues" and serves various important objections such as "the protection of the defendant from inconsistent obligations, the protection of the interests of absentees, the provision of a convenient and economical means for disposing of similar lawsuits, and the facilitation of the spreading of litigation costs among numerous litigations with similar claims." *In re GMC Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 783–84 (3d Cir. 1995)

(internal quotations omitted). "Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device." *Id.* at 784 (quoting *Deposit Guarantee Nat'l Bank v. Roper*, 455 U.S. 326, 339 (1989)).

Plaintiff seeks class certification under Rule 23(b)(3), which provides:

A class action may be maintained if . . . (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

FED. R. CIV. P. 23(b)(3).

### i. Rule 23(a)(1)'s Numerosity Requirement is Met

Rule 23(a)(1)'s numerosity requirement is met if the class is "so numerous that joinder of all members is impracticable." *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 182 (S.D. Ohio 2012). Importantly, "[t]he plaintiff is not required to establish that it is impossible to join all members of the proposed class, but simply that joinder would be difficult and inconvenient." *Id.* Here, numerosity is satisfied because the Classes include over 47,000 individuals. Moreover, each of the subclasses themselves satisfy Rule 23(a)(1)'s numerosity requirements: Class A has 18,964 members and Class B has 28,049 class members.

### ii. Rule 23(a)(2)'s Commonality Requirement is Met

Commonality under Rule 23(a)(2) "is satisfied when the legal question linking the class members is substantially related to the resolution of the litigation." *Id.* at 183 (quoting *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995)). But "individual class members need not be 'identically situated' to meet the commonality requirement." *Id.* (quoting *Parkhill v. Minn. Mut. Life Ins. Co.*, 188 F.R.D. 332, 338 (D. Minn. 1999)). The commonality requirement is satisfied herein, because Class Members were subjected to the same payroll glitch that caused errors in their compensation and benefits. As such, the success or failure of each Class Member's claim turns on

the same common questions of whether they are entitled to receive additional damages and penalties from Kroger as a result of payment errors caused by Kroger's glitch.

### iii.    Rule 23(a)(3)'s Typicality Requirement Is Met

Rule 23(a)(3) requires that "the claims . . . of the representative parties be typical of the claims . . . of the class." *See id.* at 185. Commonality and typicality are "separate and distinct requirements" but "tend to merge" and "are often discussed together." *Id.* (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)). "A proposed class representative's claim is typical if it 'arises from the same event or practice of course of conduct that gives rise to the claims of other class members and [the] claims are based on the same legal theory.'" *Id.* (quoting *Little Caesar Entrp., Inc. v. Smith*, 172 F.R.D. 236, 243 (E.D. Mich. 1997)). The Sixth Circuit has described the typicality requirement in the following manner: "as goes the claim of the named plaintiff, so go the claims of the class." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998).  Here, typicality exists because Plaintiffs and the Class Members share the same legal interest in recovering their unpaid wages based on the same legal theory—that Kroger's glitch that undisputedly deprived them of their correct compensation violated state wage and hour laws.

### iv.    Rule 23(a)(4)'s Requirement that the Class Representatives and Class Counsel Adequately Protect Class Interests Is Met

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). This results in a two-pronged inquiry: "(1) the representatives must have common interests with the unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Swigart*, 288 F.R.D. at 185–86 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)).  In other words, "Rule 23(a)(4) tests the experience and ability of counsel for plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent." *Id.* (quoting *Cross v. Nat'l Trust Life Ins. Co.*, 553 F.2d

1026, 1031 (6th Cir. 1977). Here, both aspects of Rule 23(a)(4)'s adequacy requirement are satisfied. As discussed in the Declarations of Robert E. DeRose and Austin Anderson (Exs. 3 and 4, respectively) Class Counsel is qualified, experienced, and fully able to conduct this litigation on behalf of the proposed classes. Moreover, the proposed class representatives do not have interests that are antagonistic to the other Class Members. Rather, all share a common interest in recovering their unpaid wages. To the extent some state wage laws offer superior protections, those distinctions are satisfied by the creation of Class A (including Class Members from states with greater protections) and Class B (including Class Members from states without additional penalty provisions/damages). Because there are Representative Plaintiffs who are members of both Class A and Class B, both sub-classes are adequately represented.

v.      <u>Rule 23(b)(3)'s Requirements for Predominance and Superiority Are Met</u>

Rule 23(b)(3)'s predominance prerequisite requires courts to ask "whether the common, aggregation-enabling issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting 2 NEWBERG ON CLASS ACTIONS § 4:49 (5th ed. 2012)). Put differently, the predominance inquiry is about whether class-wide questions are "at the heart of the litigation." *Powers v. Hamilton Cnty. Pub. Def. Comm.*, 501 F.3d 592, 619 (6th Cir. 2007) In this case, the proposed classes satisfy the Rule 23(b)(3) predominance requirement because all Class Members share a common set of core predominate facts and legal issues, including:

- All Class Members worked for Kroger;

- All Class Members were non-exempt employees;

- All Class Members were paid by the hour; and

- All Class Members suffered a Negative Variance or Over Deduction;

These common issues predominate over any distinctions between Class Members. *See Senne v. Kansas City Royals Baseball Corp.*, No. 17-16245, 2019 WL 3849564, at *15–16 (9th Cir. Aug. 16, 2019) ("A proposed (b)(3) class may be certified as long as 'one or more of the central issues in the action are common to the class and can be said to predominate . . . even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.") (internal quotations omitted).

"[P]redominance in employment cases is rarely defeated on the grounds of differences among employees so long as liability arises from a common practice or policy of an employer." *Senne*, 2019 WL 3849564, at *15–167 (quoting NEWBERG ON CLASS ACTIONS § 23:33 (5th ed. 2012)). While overarching corporate policies and practices "are not a guarantee that predominance will be satisfied, such policies 'often bear heavily on questions of predominance and superiority.'" *See id.* (quoting I*n re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir. 2009)). Because the only claim to be resolved pertains equally to each Class Member, the predominance requirement is satisfied. *See id.*

The superiority requirement of Rule 23(b)(3) requires the Court to find that a class action is superior to other available methods for the fair and efficient adjudication of the dispute. FED. R. CIV. P. 23(b)(3). Four factors are necessary for courts to consider in addressing the superiority factor: (1) the interests of the members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action. *See id.* In this case, each factor weighs in favor of certification.

Looking to the first and second factors together, considering the interest of the members of the class in individually controlling the prosecution of separate actions and the extent of and nature

of other pending litigation about the controversy by members of the class show that class action treatment is superior to other forms of litigation. Kroger's glitch occurred over two years ago. Since that time, five lawsuits have been filed as a result of the glitch—three of those five are consolidated before this Court for purposes of effectuating the settlement agreement. The individuals involved in the other two lawsuits pending in the Western District of Washington and the District of Oregon have been specifically excluded from the definition of the class. Thus, no class members have expressed any interest in individual litigation and this settlement agreement resolves the majority of the pending litigation against Kroger related to the glitch. As to the third factor, the settlement of these consolidated actions will resolve litigation against Kroger for thirty-three (33) of the thirty-five (35) states where Kroger operates and resolve the claims of approximately 47,000 individuals. This ensures that what could have been extensive and protracted litigation is resolved uniformly and efficiently. Finally, the manageability factor is automatically satisfied when a case is being certified for settlement purposes. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 593 (1997)

Based on the above, the proposed settlement classes satisfy the requirements of Rule 23 and should be certified for settlement purposes.

### 2. THE COURT SHOULD APPOINT CLASS COUNSEL AS CLASS COUNSEL

A court certifying a class generally must appoint class counsel. *See* FED. R. CIV. P. 23(g)(1)(A). The Rule lists several factors for the courts' consideration: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class. *See id.* In addition, the court may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id.* at 23(g)(1)(B).

Here, Plaintiffs request that ANDERSON ALEXANDER, PLLC and BARKAN MEIZLISH DEROSE COX, LLP be appointed Class Counsel.  As already explained, these firms have diligently litigated this action and, after substantial investigation and analysis, negotiated a fair settlement with the assistance of a third-party mediator.  Moreover, as explained in the DeRose and Anderson declarations, these firms each have substantial credentials in class and collective action litigation. *See* Exhibits 3 and 4.

### 3.     THE COURT SHOULD APPROVE THE PARTIES' PROPOSED NOTICE

The content of the proposed Notice of Class Action Settlement, which is attached hereto as Exhibit 2, fully complies with due process and Rule 23. *See* FED. R. CIV. P. 23(c)(2)(B). Pursuant to Rule 23(c)(2)(B), the notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice must concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members under Rule 23(c)(3).

*Id.* The Notice proposed here satisfies each of these requirements. It describes the terms of the settlement, informs the class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing. Accordingly, the detailed information in the proposed Notice is more than adequate to put Class Members on notice of the proposed settlement and is within the requirements of Federal Rule of Civil Procedure 23(c)(2)(B).

## VI.
### CONCLUSION

For all of the reasons stated above, the Parties respectfully request that the Court enter the

Proposed Order submitted herewith.

Date:   November 26, 2024                     Respectfully submitted,

By:   /s/ *Robert E. DeRose*
      **Robert E. DeRose** (OH Bar No. 005214)
      bderose@barkanmeizlish.com
      **BARKAN MEIZLISH DEROSE COX, LLP**
      4200 Regent Street, Suite 210
      Columbus, Ohio 43219
      Telephone: (614) 221-4221
      Facsimile: (614) 744-2300

By:   /s/ *Clif Alexander*
      **Clif Alexander** (admitted *pro hac vice)*
      Texas Bar No. 24064805
      clif@a2xlaw.com
      **Austin W. Anderson** (application *pro hac vice* forthcoming)
      Texas Bar No. 24045189
      austin@a2xlaw.com
      **ANDERSON ALEXANDER, PLLC**
      819 N. Upper Broadway
      Corpus Christi, Texas 78401
      Telephone: (361) 452-1279
      Facsimile: (361) 452-1284

      ***Counsel for Plaintiff and the Putative
      Class Members***

## CERTIFICATE OF CONFERENCE

Plaintiffs' Counsel has conferred with Defendant's Counsel. As a result of that conference, this Motion is filed as unopposed.

*/s/ Clif Alexander*
Clif Alexander

## CERTIFICATE OF SERVICE

I hereby certify that on November 26, 2024, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Southern District of Ohio using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Clif Alexander*
Clif Alexander

*Plaintiffs' Unopposed Motion for Preliminary Approval of Rule 23 Class Action Settlement*     24