**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

|  |  |  |
|---|---|---|
| **BRANDON WILDER, *individually and on behalf of all others similarly situated*,** | : | **Case No. 1:22-cv-681** |
|  | : |  |
| *Plaintiffs*, | : |  |
|  | : | **Judge Jeffrey P. Hopkins** |
| v. | : |  |
|  | : |  |
| **THE KROGER CO.,** | : |  |
|  | : |  |
| *Defendant*. | : |  |

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into this ___ day of September 2024, by and among Plaintiffs Brandon Wilder, Donald Austin, Kacey Ebersole, and Otis Woods (together "Plaintiffs"), individually and on behalf of all members of certain classes identified herein, and Defendant The Kroger Co., on behalf of its affiliates, divisions, predecessors, successors, and subsidiaries (collectively, "Defendant," "Kroger," or the "Company"). Plaintiffs and Kroger are collectively referred to herein as the "Parties."

WHEREAS, on November 17, 2022, Wilder commenced litigation in the U.S. District Court for the Southern District of Ohio (the "Court") captioned *Brandon Wilder, individually and on behalf of all others similarly situated v. The Kroger Co.*, Case No. 1:22-cv-681 (the "*Wilder* Action"), in which he asserted claims under the Fair Labor Standards Act, 29 U.S.C. 201, *et seq.* (the "FLSA") and the Kentucky Wage and Hour Act, Ky. Rev. Stat. Ann. 337.00, *et seq.* (the "Kentucky Acts"), arising out of Kroger's alleged failure to appropriately and timely compensate individuals who were employed by Kroger in the United States for all hours worked per workweek due to a conversion to a new payroll system entitled MyInfo (the "MyInfo Conversion");

1

WHEREAS, on January 9, 2023, Kroger filed its Original Answer, denying all liability and asserting numerous defenses;

WHEREAS, on February 6, 2023, the Court granted the Parties' Joint Motion to Stay the Case and Stipulation Regarding the Tolling of the Statute of Limitations;

WHEREAS, on March 13, 2023, Wilder amended the complaint in the *Wilder* Action to join Christy Tyndall, Michael Bauer, Virginia Henson, Carissa Miller, Jeremy Smith, Daniel Keplinger, Robert Acker, Yvonne Copeland, and Dalte Beal as plaintiffs, and to add claims under Alabama common law, the Arizona Fair Wages and Families Act, A.R.S. 23-350-362, the Illinois Minimum Wage Law, 820 ILCS 105/1-105/15, the Illinois Wage Payment and Collection Act, 820 ILCS 115/1-115/15, Michigan common law, Tennessee common law, Texas common law, and the West Virginia Wage Payment and Collection Act, W.Va. Code 21-5-1-21-5-18;

WHEREAS, on March 28, 2023, Kroger filed its Answer to Plaintiff's First Amended Collective/Class Action Complaint, denying all liability and asserting numerous defenses;

WHEREAS, on January 19, 2023, Donald Austin, Sharon Simpson, Lori Dalton and Deborah Winston commenced litigation in the U.S. District Court for the Eastern District of Virginia captioned *Donald Austin, et al., v. Kroger Limited Partnership I Mid Atlantic Marketing Area*, Case No. 1:23-cv-00287, in which they asserted claims under the FLSA and the Virginia Wage Payment Law, Virginia Code § 40.1-29 *et seq*., the Virginia Overtime Wage Act, Virginia Code § 40.1-29.2 *et seq*., the Virginia Minimum Wages Act, Virginia Code § 40.1-28.8 *et seq*., the West Virginia Wage Payment and Collection Act, West Virginia § 21-5-1 *et seq*., and the West Virginia Minimum Wage and Maximum Hours Standards for Employees Act, W. Va. Code § 21-5C-3, *et seq*., arising out of Kroger's alleged failure to appropriately and timely compensate

2

individuals who were employed by Kroger in the United States for all hours worked per workweek since the introduction of MyTime or MyInfo (the "*Austin* Action");

WHEREAS, on May 15, 2023, the *Austin* Action was transferred, upon Defendant's unopposed motion, to the Court;

WHEREAS, on January 31, 2023, Kacey Ebersole commenced litigation in the District Court of Denver County, Colorado, captioned *Kacey Ebersole v. Dillon Companies, LLC*, Case No. 2023CV30353, in which she asserted claims under the Colorado Wage Claim Act, CRS § 8-4-101 *et seq.,* the Colorado Minimum Wage Act, CRS § 8-6-101 *et seq.*, and the Colorado Civil Theft Statute, CRS § 18-4-405, arising out of Kroger's alleged failure to appropriately and timely compensate individuals who were employed by Kroger in the United States for all hours worked per workweek due to the MyInfo Conversion to a new payroll system. On April 5, 2023, Defendant removed the *Ebersole* Litigation to the United States District Court for the District of Colorado, Case No. 1:23-cv-00845 (the "*Ebersole* Action"). Defendant moved to transfer the *Ebersole* Action to the Court on April 27, 2023, and Ebersole and Defendant jointly moved to stay the transfer motion, and the *Ebersole* Action, on May 16, 2023. The *Ebersole* Action has been stayed since May 16, 2023;

WHEREAS, as of July 31, 2023, 482 individuals have filed consents to join the *Wilder* Action or the *Austin* Action as party plaintiffs;

WHEREAS, the Parties determined to attempt to settle the *Wilder* Action, *Austin* Action, and *Ebersole* Action (collectively, the "Class Actions") on a global basis and retained nationally-known wage and hour mediator Michael Russell to assist in that effort. After the provision of data and other information from Defendant and upon investigation by Plaintiffs of the claims in

3

the Class Actions, the Parties participated in a full-day mediation session facilitated by Mr. Russell on June 14, 2023. The Parties were able to reach a settlement in principle of the claims in the Class Actions, which is reflected in this Agreement;

WHEREAS, there are two separately pending class actions brought under the laws of the states of Oregon and Washington, styled as *Samantha Woody, et al. v. Fred Meyer Stores, Inc.,* United Stated District Court for the District of Oregon, Portland Division, Case No. 3;22-cv-01800, and *Amelia Sapphire, et al. v. Fred Meyer Stores, Inc.,* Superior Court of Washington in and for King County, Case No. 22-2-19510-0-SEA, respectively, which are brought as class actions on behalf of employees in the states of Oregon and Washington only, and which are not resolved by this Settlement Agreement;

WHEREAS, Plaintiffs have conducted a thorough investigation into the facts relating to the claims asserted in the Class Actions and that could be asserted in the Class Actions and are of the opinion and belief that the settlement described herein is fair, reasonable, adequate, and in the best interests of all in light of all known facts and circumstances, including the considerable expense of discovery and litigation, defenses that could be asserted by Defendant, uncertainty of the results through continued litigation and appeal, and the risk of delay and an adverse judgment;

WHEREAS, Kroger denies that it has committed any wrongdoing or violated any local, state, constitutional, or federal law pertaining to payment of wages, overtime, or hours of work, and has vigorously defended the claims asserted in the Class Actions. Kroger nonetheless desires to settle the Class Actions and the claims asserted therein on the terms and conditions set forth in this Agreement, for the purpose of avoiding the burden, expense, and uncertainty of

4

continuing litigation, and for the purpose of putting to rest the controversies raised by the Class Actions; and

WHEREAS, in order to avoid the expense and burdens of further litigation, the Parties desire to resolve any and all suits, actions, causes of action, claims, or demands based on alleged violations of the FLSA as well as alleged violations of any state or local law relating to or arising out of the MyInfo Conversion, including without limitation all state, local, and federal claims for unpaid wages (whether minimum wage or overtime), failure to timely pay wages, failure to record hours worked, paystub requirements, reimbursements, incorrect deductions from wages, failure to provide pay at termination, and all related and/or derivative claims for statutory damages, penalties, liquidated damages, interest, attorneys' fees, costs, expenses, and all other such amounts, and including without limitation all claims that have been asserted in the Class Actions or that could have been asserted in the Class Actions nationwide, excluding only claims in the states of Washington and Oregon;

NOW, THEREFORE, in consideration of the foregoing promises and the mutual promises hereinafter set forth, the Parties agree as follows:

## **DEFINITIONS**

As used in this Settlement Agreement, the following terms shall have the following meanings:

1. <u>Second Amended Complaint</u> means the Second Amended Complaint in the *Wilder* Action in the form set forth in Exhibit A to this Agreement.

2. <u>Claims Administrator</u> means Rust Consulting, Inc.

3.      <u>Notice Period</u> means the time period commencing on the date when the Class Notices are mailed to the Settlement Class and ending sixty calendar days later.

4.      <u>Notice Deadline</u> means the last day of the Notice Period.

5.      <u>Class A</u> means individuals employed by Kroger as non-exempt employees from September 1, 2022 to May 31, 2023, in Arizona, California, Colorado, Illinois, Maine, Maryland, Massachusetts, New Jersey, and Virginia who experienced an instance of underpayment within a given pay period for the hours they worked (or that they took as PTO) in that pay period (a "Negative Variance") or experienced an over-deduction from their wages relating to benefits (an "Over Deduction")  as identified in the Deloitte Analysis.

6.      <u>Class B</u> means all individuals employed by Kroger as non-exempt employees from September 1, 2022 to May 31, 2023, in every other state where Kroger does business, excluding Oregon and Washington, who experienced an instance of underpayment within a given pay period for the hours they worked (or that they took as PTO) in that pay period (a "Negative Variance") or experienced an over-deduction from their wages relating to benefits (an "Over Deduction")  as identified in the Deloitte Analysis.

7.      <u>Class Actions</u> means, collectively, the *Wilder* Action, the *Austin* Action, and the *Ebersole* Action.

8.      <u>Class Counsel</u> means Anderson Alexander, PLLC and Barkan Meizlish DeRose Cox, LLP.

9.      <u>Class Notice</u> means the notice to be sent to the Settlement Class pursuant to the terms of the Preliminary Approval Order.  The Class Notice shall be substantially in the form attached as Exhibit B to this Settlement Agreement.

10.     <u>Class Period</u> means from September 1, 2022 to May 31, 2023.

11.     <u>Costs of Claims Administration</u> means the costs payable from the Funds Available for Settlement to the Claims Administrator for administering this Agreement, including but not limited to:  printing, distributing, mailing, and tracking notices and forms for this Agreement; tax reporting; distributing all payments from the Funds Available for Settlement; and providing necessary reports and declarations as requested by the Parties or the Court.

12.     <u>Defendant</u> means The Kroger Co. together with all of its affiliates, subsidiaries, divisions, predecessors, and successors.

13.     <u>Deloitte</u> means the international accounting and professional services firm.

14.     <u>Deloitte Analysis</u> means the audit that Kroger has retained Deloitte to assist in performing to determine the amount of unpaid or delayed wages, benefits, paid time off, and improper deductions arising from Kroger's transition to a cloud based payroll system called MyInfo/MyTime in September 2022.

15.     <u>Effective Date</u> means the later of (a) if no appeal of the Court's Final Approval Order is filed, the day after the deadline for filing any such appeal, or (b) if an appeal is filed, the day after the final resolution of the appeal (including any requests for rehearing and/or petitions for writ of certiorari) and/or the expiration of any time period for any further appeal or judicial review, resulting in the final judicial approval of the Agreement.

16.     <u>Eligible Class Members</u> means all persons who are members of the Settlement Class, except for those persons who have requested exclusion from this settlement as provided in this Agreement and the Class Notices.

17.     <u>Enhancement Payment Recipients</u> means Plaintiffs and Deborah Winston, Sharon Simpson and Lori Dalton.

18.     <u>Final Judgment</u> means the judgment entered by the Court entering final judgment in substantially the same form as that shown in Exhibit D

19.     <u>Settlement Fund</u> shall mean the Net Funds Available for Settlement that will be paid in settlement of Settled Claims.

20.     <u>Settlement Sum</u> means the individual settlement amount allocated to each Settlement Class Member in settlement of Settled Claims, which will be included in the Class Notice.

21.     <u>Funds Available for Settlement</u> means the amount that Defendant has made available to the Settlement Class in exchange for this Agreement and the obligations set forth herein, which amount is $10,152,297.77 plus Costs of Claims Administration.  In no event shall the Funds Available for Settlement, or the amount Defendant is required to pay pursuant to this Agreement, exceed the sum of $10,152,297.77 plus Costs of Claims Administration.  The parties acknowledge and agree that the Funds Available for Settlement are intended to resolve a bona fide dispute.

22.     <u>Net Funds Available for Settlement</u> means the Funds Available for Settlement minus:  (i) the amount of attorneys' fees and costs awarded to Class Counsel by the Court; (ii) the amount to be paid to the California Labor and Workforce Development Agency ("LWDA") as funds owed under the California Private Attorneys General Act ("PAGA"); (iii) Enhancement Payment to Enhancement Payment Recipients; and (iv) the Costs of Claims Administration associated with this Settlement Agreement.  The Settlement Awards to Eligible Class Members shall be paid out of the Net Funds Available for Settlement.

23.     <u>Parties</u> means Plaintiffs and Defendant.

24.     <u>Preliminary Approval Order</u> means the order entered by the Court granting preliminary approval to this Settlement Agreement in substantially the same form as that shown in Exhibit C.

25.     <u>Released Parties</u> means (i) Defendant; (ii) Defendant's past or present subsidiaries, divisions, affiliates, parents, successors, and assigns; and (iii) past or present officers, directors, shareholders, members, partners, agents, employees, advisors, insurers, attorneys, representatives, trustees, heirs, executors, administrators, predecessors, successors, and assigns of any of the foregoing.

26.     <u>Plaintiffs</u> means Brandon Wilder, Donald Austin, Kacey Ebersole, and Otis Woods.

8

27.    <u>Settled Claims of Enhancement Payment Recipients'</u> means any and all claims, obligations, demands, actions, rights, causes of action, and liabilities against the Released Parties, of whatever kind and nature, character, and description, whether in law or equity, whether sounding in tort, contract, federal, state, and/or local law, constitution, statute, ordinance, regulation, common law, public policy, or other source of law, whether known or unknown, and whether anticipated or unanticipated, by the Plaintiffs, arising during the period from the beginning of Plaintiffs' dates of employment with Kroger to the date on which the Court enters the Preliminary Approval Order, for any type of relief, including, without limitation, claims for wages, overtime, damages, unpaid costs, penalties, liquidated damages, punitive damages, restitution, interest, attorneys' fees, litigation costs, restitution, or equitable relief.  The Settled Claims of Enhancement Payment Recipients include, but are not limited to those alleged in the Second Amended Complaint, as well as any other claims under any provision of the Fair Labor Standards Act, any claims under the law of any state, and their related rules, regulations, and interpretative guidelines, claims under local, state, or federal discrimination statutes, including without limitation all of their implementing rules, regulations, and interpretive guidelines, and all penalties or restitution relating to or derivative of any or all of those laws. Specifically excluded from this definition are any claims unrelated to the MyInfo Conversion that relate to underpayment of Enhancement Payment Recipients' overtime compensation based on a miscalculation of Enhancement Payment Recipients' regular rate for purposes of calculating their overtime compensation pursuant to the FLSA or any state law.

28.    <u>Settled Claims</u> means any and all claims, obligations, demands, actions, rights, causes of action, and liabilities against the Released Parties, of any form whatsoever, arising under federal, state, or local law before the entry of the Preliminary Approval Order, whether known or unknown, unforeseen, unanticipated, unsuspected, or latent, which have been pled in the Second Amended Complaint or could have been pled in the Second Amended Complaint, relating to claims for wages, overtime, damages, penalties, liquidated damages, unpaid costs, restitution, penalties, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief

9

under the wage and hour laws of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*., and all of its implementing rules and regulations and interpretive guidelines, and under the laws of any state or subdivision thereof in which Kroger does business, including but not limited to the states of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Delaware, Florida, Georgia, Idaho, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Mexico, North Carolina, Ohio, South Carolina, Tennessee, Texas, Utah, Virginia, West Virginia, Wisconsin, and Wyoming, whether based upon state, local, constitutional, statutory, or common law, or any other law, rule, or regulation, including but not limited to, claims under the Alaska Wage and Hour Act, Alaska Stat. § 23.10.050 *et seq*.; Alaska Stat. §§ 23.05.140(a), 23.10.040(a), 23.10.043; Arizona Fair Wages and Healthy Families Act, Ariz. Rev. Stat. §§ 23-350 *et seq., 23-362 et seq*.; Arkansas Minimum Wage Act, Ark. Code §§ 11-4-201 *et seq*., 11-4-401 *et seq*., 11-4-612; Cal. Lab. Code §§ 98 – 98.2, 201-203, 204, 210, 216, 218, 218.5, 218.6, 226, 226.7, 510, 558, 1182.12, 1174, 1194, 1194.2, 1197, 1197.1, 1198, 2802; Private Attorneys General Act of 2004, Cal. Lab. Code §§ 2698 *et seq*.; California Business and Professions Code §§ 17200 *et seq*.; IWC California Wage Orders and California Code of Regulations, Title 7, section 11000 *et seq*.; Colorado Minimum Wages of Workers Act, Colo. Rev. Stat. § 8-6-101 *et seq*.; Colorado Wage Claim Act, Colo. Rev. Stat. § 8-4-101 *et seq*.; Colorado Overtime and Minimum Pay Standards Order, 7 CCR § 1103-1; Colo. Const. art. XVIII, § 15; Delaware Minimum Wage Act, 19 Del. Code §§ 901-914; Delaware Wage Payment and Collection Act 19 Del. Code §§ 1101-1115; Art. X, Section 24 Florida Constitution; Florida Minimum Wage Act, Fl. Stat. § 448.110 *et seq*.; Fla. Stat. § § 532.01, 532.02; O.C.G.A. § 34-4-1 *et seq*.; O.C.G.A § 34-7-1 *et seq*.; Idaho Minimum Wage Law, Idaho Code § 44-1501 *et seq.;* Idaho Hours Worked Act, Idaho Code § 44-1201 *et seq*.; Idaho Code § 45-601 *et seq*.; Illinois Minimum Wage Law, 820 Ill. Comp. Stat. § 105 *et seq*.; Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. § 115 *et seq*.; Indiana Minimum Wage Law, Ind. Code § 22-2-2 *et seq*.; Ind. Code § 22-2-5-1 *et seq*.; Kansas Minimum Wage and Maximum Hours Law, Kan. Stat. Ann. § 44-1201 *et seq*.; Kansas Wage Payment Law, Kan. Stat. Ann. § 44-313 *et seq*.; the Kentucky

Wage Hour Act, Ky. Rev. Stat., Ch. 337 *et seq.*; La. Rev. Stat. § 23:631 *et seq.*; Maryland Wage and Hour Law, Md. Lab. and Emp. Code Ann. § 3-400 *et seq.*; Maryland Wage Payment and Collection Law, Md. Lab. and Emp. Code Ann. §§ 3-500 *et seq.* 3-305, 3-424; Michigan Workforce Opportunity Wage Act, Mich. Comp. Laws § 408.411 *et seq.*; Michigan, Minimum Wage Law, Mich. Comp. Laws § 408.381 *et seq.*; Michigan Payment of Wages and Fringe Benefits Act, Mich. Comp. Laws § 408.471 *et seq.*; Minnesota Fair Labor Standards Act, Minn. Stat. § 177.21, *et seq.*; Minn. Stat. § 177.41, *et seq.*; Minn. Stat. § 181.01, *et seq.*; Minn. Stat. § 609.52, *et. seq.*; Miss. Code Ann. §§ 71-1-1 *et seq.*; Mo. Rev. Stat. § 290.010 *et seq.,* Mo. Rev. Stat. § 290.500 *et seq.*; Montana Minimum Wage and Overtime Act, Mont. Code Ann. § 39-3-401 *et seq.*; Mont. Code Ann. § 39-3-201 *et seq.*; Mont. Code Ann. § 39-3-101 *et seq.*; Nebraska Wage and Hour Act, Neb. Rev. Stat. § 48-1201 *et seq*; Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. § 48-1228 *et seq.*; Nev. Rev. Stat. Ann. § 608.250 *et seq.*; Nev. Rev. Stat. Ann § 608.016 *et seq.*;, Nev. Const. Art. 15, § 16; New Mexico Minimum Wage Act, N.M. Stat. Ann. § 50-4-1 *et seq.*; North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.1 *et seq.*; the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code Chapter 4111; Section 34a, Article II Ohio Constitution; Ohio Rev. Code § 4113.15; Tennessee Wage Regulations Act, Tenn. Code § 50-2-103; Texas Minimum Wage Act, Tex. Lab. Code § 62.001 *et seq.*; Tex. Lab. Code § 61.001 *et seq.*; Tex. Lab. Code § 63.001 *et seq.*; Utah Minimum Wage Act, Utah Code Ann. § 34-40-101 *et seq.*, Utah Code Ann. § 34-40-201 *et seq.*; Utah Code Ann. § 34-28-1 *et seq.*; Virginia Minimum Wage Act, Code of Va. § 40.1-28.8 *et seq.*; Virginia Wage Payment Law, Code of Va. § 40.1-29 *et seq.*; West Virginia Minimum Wage and Maximum Standard Hours, W. Va. Code § 21-5C-1 *et seq.*; West Virginia Wage Payment and Collection Act, W. Va. Code § 21-5-1 *et seq.*; Wis. Stat. § 104.001 *et seq.*; Wis. Stat. § 109.01 *et seq.*; Wis. Stat. § 103.001 *et seq.*; Wyo. Stat. § 27-4-101 *et seq.*; Wyo. Stat. § 27-4-201 *et seq.*; Wyo. Stat. § 27-4-401 *et seq.*; Wyo. Stat. § 27-4-501 *et seq.*; and all of their implementing rules and regulations and interpretive guidelines, and all claims for penalties, liquidated damages, interest, or restitution relating to or derivative of any or all of those laws. Specifically excluded from this definition are any claims unrelated to the MyInfo Conversion that

relate to underpayment of Eligible Class Members' overtime compensation based on a miscalculation of Eligible Class Members' regular rate for purposes of calculating their overtime compensation pursuant to the FLSA or any state law.

29.  <u>Settlement Agreement</u> means this Agreement and all Exhibits attached to it.

30.  <u>Settlement Award</u> means the gross payment that each Eligible Class Member shall be entitled to receive pursuant to the terms of the Settlement Agreement.

31.  <u>Settlement Class(es)</u> means the following:  all individuals employed by Kroger as non-exempt employees from September 1, 2022 to May 31, 2023 in any state, excluding employment in Washington and Oregon, who experienced an instance of underpayment within a given pay period for the hours they worked (or that they took as PTO) in that pay period (a "Negative Variance") or experienced an over-deduction from their wages relating to benefits (an "Over Deduction")  as identified in the Deloitte Analysis.  The Parties acknowledge and agree that Defendant has provided a list of all members of the Settlement Classes to Class Counsel and the Claims Administrator.  Any persons not on this list are not Settlement Class Members and are not subject to the Releases described in this Agreement.  The Settlement Class Members will be divided between Class A and Class B, as defined herein.

32.  <u>Settlement Fairness Hearing</u> means the hearing to be requested by the Parties and conducted by the Court, following appropriate notice to the Settlement Class and an opportunity for members of the Settlement Class to exclude themselves from participation in the Settlement Class and the proposed settlement, at which the Parties will request the Court to approve the fairness, reasonableness, and adequacy of the terms and conditions of the proposed settlement and this Settlement Agreement, and to enter the Final Judgment.

33.  <u>Total Value of Settlement</u> means the total of (1) the total amount of the Negative Variances and Over Deductions that were the result of the MyInfo Conversion and were identified in the Deloitte Analysis, which is $10,547,841.84., and which has already been repaid to the Settlement Class Members; (2) 50% of the total amount of the Negative Variances and Over Deductions that were the result of the MyInfo Conversation and were identified in the Deloitte

Analysis, which is $5,273,920.92; (3) attorneys' fees and costs of $4,878,376.85; and (4) Costs of Claims Administration.

34.     <u>Opt-Ins</u> means all current and former employees of Kroger who submitted a valid Consent to Join the Class Actions.

## NO ADMISSION OF LIABILITY

35.     The Parties enter into this Agreement to resolve the dispute that has arisen between them and to avoid the burden, expense, and risk of continued litigation. In entering into this Agreement, Kroger does not admit, and specifically denies, that it has breached any contract, violated or breached any duty, engaged in any misrepresentation or deception, or violated any federal, state, or local law, constitution, or common law, any rules, regulations, or guidelines promulgated pursuant to any statute, or any other applicable laws, regulations or legal requirements. Neither this Agreement, nor any of its terms or provisions, nor any of the negotiations connected with it, shall be construed as an admission or concession by Kroger of any such violations or failures to comply with any applicable law. Except as necessary in a proceeding to enforce the terms of this Agreement, this Agreement and its terms and provisions shall not be offered or received as evidence in any action or proceeding for any reason whatsoever, including but not limited to establish any liability or admission on the part of Kroger or to establish the existence of any condition constituting a violation of, or a non-compliance with, federal, state, local or other applicable law.

## BASIC SETTLEMENT TERMS

36.     Upon execution of this Agreement, Class Counsel shall file in the *Wilder* Action the Second Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(2) and with Kroger's written

consent. The Parties acknowledge that the Second Amended Complaint will seek certification of a collective action and two classes, Class A and Class B, as defined herein, to resolve any wage and hour liability against Kroger and Released Parties that could have been alleged under any federal, state, or local law.

37.     The Parties hereby stipulate and agree that Kroger shall not be required to serve or file a responsive pleading in response to the Second Amended Complaint. If, for any reason, (i) the Court denies the Parties' request for Preliminary Approval; (ii) the Court does not enter the Final Judgment; or (iii) the Effective Date cannot occur, Class Counsel shall withdraw the Second Amended Complaint without prejudice. In the event that Class Counsel withdraws the Second Amended Complaint pursuant to this paragraph, no Party shall argue that Kroger's consent to the filing of the Second Amended Complaint or Class Counsel's withdrawal of the Second Amended Complaint has any bearing on the merits of any subsequent motion or effort to amend or dismiss the operative complaint in the *Wilder* Action.

38.     Upon or before execution of this Agreement, Class Counsel shall cause an order to be entered forthwith in the *Austin* Action, which order shall consolidate the *Austin* Action with the *Wilder* Action for purposes of effectuating this settlement. Upon or before execution of this Agreement, Class Counsel shall cause an order to be entered forthwith in the *Ebersole* Action, which order shall transfer the *Ebersole* Action to the Court and which shall consolidate the *Ebersole* Action with the *Wilder* Action for purposes of effectuating this settlement. In the event that Class Counsel are unable to effectuate the consolidations and transfers set forth above, then Class Counsel shall cause the *Austin* Action and the *Ebersole* Action to be stayed and, within seven days of entry of the Final Judgment in the *Wilder* Action, Class Counsel will enter a dismissal with prejudice promptly in the *Austin* action and *Ebersole* action.

39.     For settlement purposes only, the Parties agree that the classes may be certified in the *Wilder* Action, pursuant to Rule 23 of the Federal Rules of Civil Procedure. If this Settlement Agreement and the settlement it memorializes are not finally approved by the Court, or if any appeal results in a reversal of the Final Judgment that affects the amount to be paid by

14

Defendant under this settlement, the releases given by Eligible Class Members, or any other material aspect of the settlement, then this agreement for certification shall become null and void, and any court order certifying the class based on this Settlement Agreement shall be vacated without prejudice to the right of the Parties to seek or oppose certification.

40.     It is hereby agreed, by and between Plaintiffs and Defendant, through their respective counsel of record, and subject to the approval of the Court, in consideration of the benefits inuring to the Parties hereto, and without admission of any liability or wrongdoing whatsoever by Defendant, that upon entry of Final Judgment:  (a) Enhancement Payment Recipients shall be deemed to have released and forever discharged the Released Parties from any and all Settled Claims and Settled Claims of Enhancement Payment Recipients; and (b) each Eligible Class Member shall be deemed to have released and forever discharged the Released Parties from any and all Settled Claims.

41.     In exchange for good and valuable consideration set forth herein, with respect to the Settled Claims, Plaintiffs stipulate and agree that, upon the Effective Date, Enhancement Payment Recipients and the Eligible Class Members shall be deemed to have, and by operation of the Final Judgment shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits of Section 1542 of the California Civil Code, or any other similar provision under federal or state law, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASING PARTY.

Enhancement Payment Recipients and the Eligible Class Members may hereafter discover facts in addition to or different from those he/she/they now know or believe to be true with respect to the subject matter of the Settled Claims, but Plaintiffs and the Eligible Class Members, upon

the Effective Date, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever settled and released any and all of the claims released pursuant to the release of Settled Claims, whether known or unknown, suspected or unsuspected, contingent or non-contingent, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.

42.     Subject to Court approval and the conditions specified in this Settlement Agreement and in exchange for the release of all Settled Claims by the Eligible Class Members, Defendant shall make Funds Available for Settlement in the gross amount of $10,152,297.77 plus Costs of Claims Administration.

43.     Because the payment of any Settlement Award is expressly contingent upon a Settlement Class Member not opting out of the settlement, no final obligation to pay a Settlement Award to any member of the Settlement Class is created under this Settlement Agreement.  The Parties agree that this Settlement Agreement does not create or establish a settlement "fund," to which claims can be made and that all claims for payment shall be submitted directly to and paid by the Claims Administrator.  All payments that Defendant are required to make with respect to this Settlement Agreement shall be from the Funds Available for Settlement.  Defendant shall have no obligation under this Settlement Agreement to pay any amounts to Eligible Class Members in excess of approved claims for Settlement Awards as calculated in accordance with this Settlement Agreement.  No Released Party shall have any further obligation or liability under this Settlement Agreement to Plaintiffs or to the Eligible Class Members.

44.     Before any Settlement Awards are paid to Eligible Class Members, payments from the Funds Available for Settlement shall be made for (a) the amount of attorneys' fees and costs awarded to Class Counsel by the Court; (b) the payment to the California LWDA allocated as PAGA penalties, (c) the Costs of Claims Administration associated with this Settlement Agreement, and (d) Enhancement Payments to Enhancement Payment Recipients.

16

45.     Subject to Court approval and for purposes of effectuating this Settlement Agreement, the following amounts shall be paid from the Funds Available for Settlement:

a.     Attorneys' Fees to Class Counsel.  Class Counsel shall be paid no more than $4,878,376.85 for attorney fees and reasonable costs expended in litigating the Class Actions. Defendant agrees not to oppose any application or motion by Class Counsel for attorneys' fees and costs up to this amount, and Class Counsel agrees not to petition the Court for any additional payments for fees, costs, or interest.  The payment approved by the Court pursuant to this subparagraph, whether in the amount sought by Class Counsel or less as determined by the Court, shall constitute full satisfaction of Defendant's and/or any of the Released Parties' obligations to pay amounts to any person, attorney, or law firm for attorneys' fees, expenses, or costs incurred on behalf of the Plaintiffs and/or the Settlement Class, and shall relieve the Released Parties from any other claims or liability to any other attorney or law firm for any attorneys' fees, expenses, and/or costs to which any of them may claim to be entitled on behalf of Plaintiffs and/or the Settlement Class.  If the Court approves a lesser amount of fees and expenses than that which is sought by Class Counsel, the Parties may not void this Settlement Agreement on that basis.  Class Counsel shall be solely and legally responsible to pay any and all applicable taxes on the payment made pursuant to this subparagraph and agrees to indemnify and hold harmless Defendant from any claim or liability for taxes, penalties, or interest for which Class Counsel is responsible as a result of the payment or any allocation of the payment made pursuant to this subparagraph.  Class Counsel further agrees that any allocation of fees between or among Class Counsel and any other attorney representing or purporting to represent Plaintiffs and/or the Settlement Class, including but not limited to plaintiff's counsel in the *Austin* Action and the *Ebersole* Action,  shall be the sole responsibility of Class Counsel.  The Claims Administrator shall wire the court-approved attorneys' fees to Class Counsel from the Qualified Settlement Fund within ten (10) business days of the Effective Date. An IRS Form 1099 shall be provided by the Claims Administrator to each Class Counsel for the total payment made to each pursuant to this subparagraph.

17

      b.     <u>Claims Administrator Costs</u>.  The Claims Administrator shall be paid for the costs of administration of the Settlement Agreement and for distribution of all payments from the Funds Available for Settlement.  The estimate of such costs of administration and for the disbursement of the Funds Available for Settlement is approximately $220,000.00.  This estimate includes the required tax reporting on the individual Settlement Amounts, including the issuing of IRS 1099 Forms.  No fewer than thirty (30) days before the Final Approval Hearing, the Claims Administrator shall provide the Court and all counsel for the Parties with a statement detailing the costs of administration of the Funds Available for Settlement.  The Parties and their Counsel agree to cooperate in the settlement administration process and to make all reasonable efforts to control and minimize the costs and expenses incurred in the administration of the Settlement.  Defendant shall pay the Claims Administrator the approved administration expenses within seven (7) business days of the Effective Date. An IRS Form 1099 – MISC, Box 7 shall be issued to the Claims Administrator.  The Parties each represent they do not have any financial interest in the Claims Administrator or otherwise have a relationship with the Claims Administrator that could create a conflict of interest.

      c.     <u>A total of Ten Thousand Dollars ($10,000) shall be allocated to the California Labor Code PAGA claim for civil penalties</u>.  75% of said amount ($7,500) shall be paid by the Claims Administrator, within ten (10) business days of the Effective Date, by check payable to the LWDA for penalties under PAGA, and 25% of said amount ($2,500) shall remain a part of the Net Funds Available for Setttlement for pro rata distribution to Eligible Class Members who were employed in California.

      d.     Enhancement Payment Recipeients shall each receive a check in the amount of Five Thousand United States dollars ($5,000.00) ("Enhancement Payments").  These Enhancement Payments shall be the total compensation and consideration for their efforts in the Litigation and are contingent upon their signatures to this Settlement Agreement, where necessary, agreement to the terms of a General Release, such as the one contained herein, their not opting out of this settlement, and the settlement becoming final pursuant to the Effective Date.  The above-

described Enhancement Payments will be in addition to the separate payment of the Settlement Sums to which they may be entitled as a regular Settlement Class Member and will be paid to the Plaintiffs by the Claims Administrator within ten (10) business days of the Effective date, by mail or wire transfer, according to Plaintiff's election.

46.  <u>Tax Liability</u>.  Defendant makes no representations as to the tax treatment or legal effect of the payments called for under this Settlement Agreement, and Settlement Class Members are not relying on any statement or representation by Defendant in this regard.  Settlement Class Members understand and agree that Settlement Class Members will be solely responsible for the payment of any taxes and penalties assessed on the payments described in this Settlement. Settlement Class Members understand and agree that the Claims Administrator will be responsible for issuing all tax forms and any necessary tax withholding.  Plaintiffs agree to cooperate with Defendant and provide such documentation as Defendant may reasonably request should any taxing authority challenge the allocations of payments called for under this Settlement Agreement.

47.  <u>CIRCULAR 230 DISCLAIMER</u>.  EACH PARTY TO THIS SETTLEMENT AGREEMENT (FOR PURPOSES OF THIS SECTION, THE "ACKNOWLEDGING PARTY," AND EACH PARTY TO THIS SETTLEMENT AGREEMENT OTHER THAN THE ACKNOWLEDGING PARTY, AN "OTHER PARTY") ACKNOWLEDGES AND AGREES THAT (1) NO PROVISION OF THIS SETTLEMENT AGREEMENT, AND NO WRITTEN COMMUNICATION OR DISCLOSURE BETWEEN OR AMONG THE PARTIES OR THEIR ATTORNEYS AND OTHER ADVISERS, IS OR WAS INTENDED TO BE, NOR SHALL ANY SUCH COMMUNICATION OR DISCLOSURE CONSTITUTE OR BE CONSTRUED OR BE RELIED UPON AS, TAX ADVICE WITHIN THE MEANING OF UNITED STATES TREASURY DEPARTMENT CIRCULAR 230 (31 CFR PART 10, AS AMENDED); (2) THE ACKNOWLEDGING PARTY (A) HAS RELIED EXCLUSIVELY UPON HIS, HER OR ITS OWN, INDEPENDENT LEGAL AND TAX COUNSEL FOR ADVICE (INCLUDING TAX ADVICE) IN CONNECTION WITH THIS SETTLEMENT AGREEMENT, (B) HAS NOT ENTERED INTO THIS SETTLEMENT AGREEMENT BASED UPON THE

RECOMMENDATION OF ANY OTHER PARTY OR ANY ATTORNEY OR ADVISER TO ANY OTHER PARTY, AND (C) IS NOT ENTITLED TO RELY UPON ANY COMMUNICATION OR DISCLOSURE BY ANY ATTORNEY OR ADVISER TO ANY OTHER PARTY TO AVOID ANY TAX PENALTY THAT MAY BE IMPOSED ON THE ACKNOWLEDGING PARTY; AND (3) NO ATTORNEY OR ADVISER TO ANY OTHER PARTY HAS IMPOSED ANY LIMITATION THAT PROTECTS THE CONFIDENTIALITY OF ANY SUCH ATTORNEY'S OR ADVISER'S TAX STRATEGIES (REGARDLESS OF WHETHER SUCH LIMITATION IS LEGALLY BINDING) UPON DISCLOSURE BY THE ACKNOWLEDGING PARTY OF THE TAX TREATMENT OR TAX STRUCTURE OF ANY TRANSACTION, INCLUDING ANY TRANSACTION CONTEMPLATED BY THIS SETTLEMENT AGREEMENT.

48.    Once the payments designated in Paragraph 45 of this Settlement Agreement have been made or awarded, the balance remaining shall constitute the Net Funds Available for Settlement from which Settlement Awards shall be made to Eligible Class Members.

49.    Solely for purposes of effectuating this Settlement Agreement and in exchange for the release of Settled Claims by the Eligible Class Members, each Eligible Class Member shall be paid a Settlement Award from the Net Funds Available for Settlement as follows:

a.    The Parties agree that the Deloitte Analysis identifies the members of the Settlement Class and the amount of any Negative Variance or any Over Deduction that was the result of the MyInfo Conversion.  Defendant represents that it has paid, or will pay, all members of the Settlement Class for all Negative Variances and Over Deductions identified by the Deloitte Analysis.  Such payments have been made, or shall be made, separately by Kroger and not through the Claims Administrator.

b.    Defendant shall provide to the Claims Administrator the Deloitte Analysis reflecting the amount of any Negative Variance or any Over Deduction that occurred for each member of the Settlement Class as a result of the MyInfo Conversion.

c.     The Claims Administrator will divide the Settlement Fund so that Class A Members will receive approximately 62% of their Negative Variances and Overpayments as identified in the Deloitte Analysis and Class B Members will receive approximately 42% of their Negative Variances and Overpayments as identified in the Deloitte Analysis.[1]  The Claims Administrator will then calculate the amount of the Settlement Sums by ensuring that each Eligible Class Member receives his or her *pro rata* percentage of the Settlement Fund.

d.     The Parties agree that the Settlement Awards represent a negotiated amount for liquidated damages available under the FLSA and liquidated damages and other penalties available under all applicable state laws.  Accordingly, each Eligible Class Member who receives a Settlement Sum shall receive an IRS 1099 form in connection with the payment made pursuant to this paragraph.

e.     In no event shall the Settlement Sums attributable to all Eligible Class Members exceed the Net Funds Available for Settlement.

50.     The Claims Administrator shall be responsible, subject to Court approval, for determining eligibility for, and the amount of, the Settlement Awards to be paid to Eligible Class Members.  All eligibility and Settlement Award determinations shall be based on the Deloitte Analysis and personnel and payroll data maintained and provided by Kroger.  In the event of any disputes from Class Members regarding their Settlement Awards, the Parties agree to confer in good faith and attempt to resolve any such dispute within five days of receiving notice of a dispute. If the Parties are unable to resolve the dispute among themselves, the Claims Administrator shall make a determination to resolve the dispute.

51.     In no event shall there be any distribution from the Funds Available for Settlement until after the Effective Date.

---

[1] The exact percentages are as follows: Settlement Class Members in Class A will receive 41.4954066319339% of their Negative Variances and Overpayments according to the Deloitte Analysis; Settlement Class Members in Class B will receive 62.2431099479009% of their Negative Variances and Overpayments according to the Deloitte Analysis.

52.    No person shall have any claim against Defendant or any of the Released Parties, Plaintiffs, the Settlement Class, or Class Counsel based on distributions or payments made in accordance with this Settlement Agreement.

53.    Defendant shall not be required to enter into any consent decree, nor shall Defendant be required to agree to any provision for injunctive or prospective relief as part of this Settlement Agreement.

54.    The Parties agree that some Opt Ins in the Wilder Action and the Austin Action are not Settlement Class Members because there is no record of their employment with Kroger and no Negative Variance identified in the Deloitte Analysis.  Class Counsel agree to dismiss the claims of such individuals without prejudice within seven (7) days after entry of the Preliminary Approval Order.

55.    Defendant, at its sole and independent discretion, shall have the right, but not the obligation, to revoke this Settlement Agreement if requests for exclusions from the proposed settlement are validly filed by at least five percent (5%) of the Settlement Class.  If Defendant exercises this option, all of Defendant's obligations under this Settlement Agreement shall cease to be of any force or effect; this Settlement Agreement and any orders entered in connection with the settlement shall be vacated, rescinded, canceled, and annulled; and the Parties shall return to the status quo as if the Parties had not entered into this Settlement Agreement.  In addition, in such event, the Settlement Agreement and all negotiations, court orders, and proceedings relating thereto shall be without prejudice to the rights of any and all Parties, and all evidence relating to the Settlement Agreement and all negotiations shall not be admissible or discoverable in the Class Action or otherwise.  Defendant shall exercise its rights under this paragraph, if at all, in writing no later than twenty-one (21) days after receiving the information to be provided by the Claims Administrator pursuant to Paragraph 56 below by giving notice of such exercise to Class Counsel.

## CLASS NOTICES AND SETTLEMENT FAIRNESS HEARING

56.     As part of this Settlement Agreement, the Parties agree to the following procedures for obtaining the Court's preliminary approval of the Settlement Agreement, certifying the Settlement Class, notifying the Settlement Class, obtaining final Court approval of the Settlement Agreement and processing the Settlement Awards:

a.     Plaintiffs shall move the Court for an Order preliminarily approving the Settlement Agreement, certifying the Settlement Class for settlement purposes only, approving the Class Notices and scheduling a Final Approval Hearing.  In conjunction with this request, the Parties will jointly submit this Settlement Agreement and supporting papers, which shall set forth the terms of this Settlement Agreement and will include proposed forms of all notices and other documents as attached hereto necessary to implement the Settlement Agreement.  Within ten (10) days after that submission, Defendant shall serve notices on the United States Attorney General and the states' Attorneys General or other appropriate official where class members reside in accordance with the Class Action Fairness Act, 28 U.S.C. § 1715.  At the same time that the Settlement Agreement is submitted to the Court, the Parties will submit the Settlement Agreement to the LWDA.

b.     Solely for purposes of this Settlement Agreement, the Parties will request the Court to enter a Preliminary Approval Order substantially in the form attached as Exhibit C, preliminarily approving the proposed settlement, certifying the Settlement Classes for settlement purposes only, and setting a date for the Settlement Fairness Hearing.  The Preliminary Approval Order shall provide for notice of the Settlement Agreement and related matters to be sent to the Settlement Class as specified herein.

c.     Objections to the settlement and/or requests for exclusion from the Settlement Class, if any, shall be made using the procedures set forth below.  The Parties believe and agree that the proposed procedures for Class Notice provide the best practicable notice to the Settlement Class.

      i.      The Claims Administrator shall be responsible for preparing, printing, and mailing to all members of the Settlement Class the Class Notice attached as Exhibit B to this Settlement Agreement. Defendant will provide the Claims Administrator with the most current addresses available for the Class Members within five (5) days after the Court enters the Preliminary Approval Order. The Claims Administrator shall mail the Notice to the Class Members within fifteen (15) days after the Court enters the Preliminary Approval Order.

      ii.      The Class Administrator shall send a copy of the Class Notice in the forms attached as Exhibit B via First Class regular U.S. mail, postage prepaid, using the most current mailing address information available to Defendant as of the date of mailing. Prior to mailing, the Claims Administrator will perform a search based on the National Change of Address Database information to update and correct for any known or identifiable address changes. Any Class Notices returned to the Claims Administrator as undelivered within thirty (30) days before the deadline shall be sent to any forwarding address affixed thereto. If no forwarding address is provided for a Class Notice that is returned as undelivered, then such Class Notices will be re-sent by the Claims Administrator after the address is updated through a computer search. The undelivered Class Notices will be re-sent within five days after the Claims Administrator receives notice that the Class Notice was undeliverable. In the event the procedures in this paragraph are followed, the Claims Administrator shall be deemed to have satisfied its obligation to provide Class Notice to a member of the Settlement Class, and if an intended recipient does not receive a Class Notice, the intended recipient shall nevertheless be bound by all terms of the Settlement Agreement and the Final Judgment. The objection and opt-out deadlines shall not be extended for members of the Settlement Class whose original notices are re-sent pursuant to this paragraph.

      iii.      The Class Notice shall provide that those members of the Settlement Class who wish to object to the settlement must file with the Court a written statement of objection ("Notice of Objection"), on or before the Notice Deadline, and provide a copy to the Claims Administrator at the address set forth in the Class Notice, and simultaneously serve on counsel for the Parties a copy of that objection. The filing date of any such objection shall be deemed the

exclusive means for determining if a Notice of Objection is timely, unless otherwise determined by the Court. The Notice of Objection must state (a) the full name, address, and telephone number of the person objecting and (b) the basis for the objection. Members of the Settlement Class who fail to make objections in the manner specified in this subparagraph shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement Agreement.

        iv.     The Class Notices shall provide that members of the Settlement Class who wish to exclude themselves from this settlement must submit a written statement requesting exclusion from the class postmarked on or before the Notice Deadline. Such written request for exclusion must contain the name, address, telephone number, and social security number of the person requesting exclusion and the dates of his or her employment by Defendant. It must also include a statement clearly stating that the person wishes to be excluded from the class. Members of the Settlement Class may consult Class Counsel regarding the opt-out option. However, the opt-out request must be signed by the member of the Settlement Class who seeks to opt-out. No opt-out request may be made on behalf of a group of members of the Settlement Class. Each member of the Settlement Class who does not submit an opt-out request in compliance with this paragraph shall be an Eligible Class Member, unless otherwise determined by the Court. The opt-out request must be sent by mail to the Claims Administrator (at the address set forth in the preceding paragraph) and must be postmarked on or before the Notice Deadline. Any member of the Settlement Class who requests exclusion (opts-out) from the Class Action will not be entitled to any Settlement Award and will not be bound by the Settlement Agreement or have any right to object, appeal, or comment thereon. Members of the Settlement Class who fail to submit a valid and timely request for exclusion on or before the Notice Deadline shall be bound by all terms of the Settlement Agreement and the Final Judgment, unless otherwise determined by the Court.

        v.     No later than ten (10) days after the Notice Deadline, the Claims Administrator shall provide to the Court and Counsel for the Parties a declaration that includes, but is not limited to, the following information: (i) the total number of members of the Settlement

Class who were sent the Class Notice; (ii) the names and total number of members of the Settlement Class who filed complete, accurate, and timely requests for opt-out or exclusion from the Class Action; and (iii) the total number of members of the Settlement Class who objected.

         d.     After the Notice Deadline, a Settlement Fairness Hearing shall be conducted to determine final approval of the settlement along with the amounts properly payable for attorneys' fees and costs.  Upon final approval of the settlement by the Court at or after the Settlement Fairness Hearing, the Parties shall present the Final Judgment to the Court for its approval and entry substantially in the form attached hereto as Exhibit D (which approval shall be no earlier than ninety (90) days after the Class Action Fairness Act notices have been mailed).  After entry of Final Judgment, the Court shall have continuing jurisdiction solely for purposes of addressing (i) settlement administration matters and (ii) such post final judgment matters as may be appropriate under court rules.

         e.     Within five (5) business days of the Effective Date, Defendant shall transfer the Funds Available for Settlement to the Qualified Settlement Fund set up by the Claims Administrator.

         f.     The Claims Administrator shall determine the eligibility for, and the amounts of, any Settlement Awards under the terms of this Settlement Agreement.  The determination shall be conclusive, final, and binding on all Parties, including all members of the Settlement Class.

         g.     Within thirty (30) calendar days of the Effective Date, the Claims Adminnistrator shall begin distribution of the Settlement Awards by mailing checks to each Eligible Class Member.  Each  check will include the following endorsement language:

> **By negotiating or endorsing this check, I confirm my desire to release all Settled Claims, including claims under the Fair Labor Standards Act, as defined in the Notice in *Wilder, et al. v. The Kroger Company.*, No. 1:22-cv-681-JPH. My release of claims is detailed further in the Notice which I have received, read, and understand.**
>
> **Endorsed:** _____

**[Payee's name printed by Claims Administrator]**

h.     The Parties hereby agree that any issued Settlement Awards represent settlement payments for matters disputed in good faith, not uncontested wage payments, and they shall not be subject to escheat rules or other distribution not provided for in this Settlement Agreement.

i.     Checks issued pursuant to this settlement shall expire ninety (90) days after they are issued, but a failure by any Eligible Class Member to deposit or cash a check within the time period allotted shall have no effect on that individual's release of Settled Claims. Any uncashed checks may be automatically canceled if not cashed by an Eligible Class Member within 90 days after they are issued, and the money attributed to such checks shall revert to Kroger. Under no circumstances shall the Claims Administrator be obligated to reissue a check that was properly issued.

j.     Upon completion of administration of the settlement, the Claims Administrator shall provide written certification of such completion to Defendant and Class Counsel. Such written certification shall include a list of all Eligible Class Members who negotiated settlement checks.

k.     If (i) the Court does not enter the Preliminary Approval Order of the proposed settlement following the Motion for Preliminary Approval; (ii) the Court does not finally approve the proposed settlement; (iii) the Court does not enter the Final Judgment in a form the same as, or substantially similar to, the one submitted by the Parties; (iv) any appeal results in an outcome unsatisfactory to Defendant; or (v) the settlement does not become final for any other reason, this Settlement Agreement shall be null and void and any order or judgment entered by the Court in furtherance of this settlement shall be treated as void *ab initio*. In such a case, the Parties shall proceed in all respects as if this Settlement Agreement had not been executed.

**MISCELLANEOUS**

57.     Defendant's own attorneys' fees and legal costs and expenses incurred in the Class Action shall be borne by Defendant from Defendant's separate funds and not from the Funds Available for Settlement.

58.     Plaintiffs and Class Counsel agree that all of the documents provided to them by Kroger, including but not limited to the Deloitte Analysis, shall be maintained as confidential and shall only be used by Class Counsel to discharge their obligations as class counsel, i.e., for purposes directly related to this Settlement Agreement.  Within 120 days of the Effective Date, Class Counsel will destroy their copy of the Deloitte Analysis, and any copies made thereof. Furthermore, should Plaintiffs or Class Counsel have any other documents of Defendant's, Plaintiffs and/or Class Counsel agree to promptly destroy or return such original documents via Class Counsel following the Effective Date.

59.     Neither the terms of this Settlement Agreement nor any Settlement Award paid to Eligible Class Members shall have any effect on the eligibility or calculation of employee benefits of the respective Plaintiffs or Eligible Class Members.  The Parties agree that any Settlement Awards paid to Eligible Class Members under the terms of this Settlement Agreement do not represent any modification of any Eligible Class Member's previously credited hours of service or other eligibility criteria under any employee pension benefit plan, employee welfare benefit plan, or other program or policy sponsored by Defendant.  Further, the Settlement Awards shall not be considered "compensation" or "annual earnings for benefits" in any year for purposes of determining eligibility for, or benefit accrual within an employee pension benefit plan, employee welfare benefit plan, or other program or policy sponsored by any of the Released Parties.

60.     Prior to the Parties' joint submission of this Settlement Agreement for approval by the Court, neither Plaintiffs nor Class Counsel shall communicate any terms of this settlement to any third parties. Plaintiffs and Class Counsel agree that they shall not, at any time, publicize the settlement in this action or the terms thereof via (a) press releases; (b) internet postings except for

posting publicly filed court documents on the court's docketing system; or (c) any form of communications with the media. This shall not prohibit Class Counsel from discussing this case or any aspect of this settlement with Plaintiffs, any Class Members, the Court in this Litigation, or opposing counsel in this Litigation, and this shall not prohibit Class Counsel from in any way disclosing their mere status as counsel in the case.

61.     Class Counsel acknowledge that, other than Plaintiffs and Opt-In Plaintiffs, they have no other current clients who have claims asserted against the Released Parties and they have no current plan or intention to file, join in, assist with, or solicit others to file, join in or assist with any sort of legal action against the Released Parties, excepting future action under the FLSA for the underpayment of overtime as a result of alleged miscalculation of the regular rate of pay. The Parties agree that nothing in this Agreement shall be construed as or act as a restriction of Class Counsel to practice law in accordance with Rule 5.06(b) of the Texas Rules of Professional Conduct and any other applicable equivalent.

62.     Defendant and the Released Parties deny any and all claims asserted or that could have been asserted on behalf of the Settlement Class and deny all wrongdoing whatsoever.  This Settlement Agreement is not a concession or admission, and shall not be used against Defendant or any of the Released Parties as an admission or indication with respect to any claim of any fault, concession, or omission by Defendant or any of the Released Parties.  Whether or not the Settlement Agreement is finally approved, neither the Settlement Agreement, nor any document, statement, proceeding, or conduct related to this Settlement Agreement, nor any reports or accounts thereof, shall in any event be:

a.     Construed as, offered or admitted into evidence as, received as, or deemed to be, evidence of a presumption, concession, indication, or admission by Defendant, or any of the Released Parties of any liability, fault, wrongdoing, omission, concession, or damage; or

b.     Disclosed or referred to, or offered or received into evidence, in any further proceeding in the Class Actions, or any other civil, criminal, or administrative action or proceeding against Defendant, or any of the Released Parties except for purposes of settling these Class

29

Actions pursuant to this Settlement Agreement or establishing that the settlement herein has occurred. The limitations set forth in this paragraph do not apply to use and/or disclosure in order for a Party to enforce this Settlement Agreement or any of its terms or to establish that such a settlement has occurred.

63. The terms of this Settlement Agreement include the terms set forth in the attached exhibits, which are incorporated by this reference as though fully set forth herein. The exhibits to this Settlement Agreement are an integral part of this Settlement Agreement. Unless specifically provided otherwise in the exhibits to this Settlement Agreement, in the event of any conflict between the Settlement Agreement and the exhibits, the terms of the Settlement Agreement shall control.

64. The Parties agree to hold all proceedings in the Class Actions except such proceedings set forth herein and as may be necessary to implement and complete the Settlement Agreement, in abeyance pending the Settlement Fairness Hearing to be conducted by the Court.

65. This Settlement Agreement may be amended or modified only by a written instrument signed by counsel for all Parties or their successors-in-interest.

66. This Settlement Agreement and any attached exhibits constitute the entire agreement between the Parties, and no oral or written representations, warranties, or inducements have been made to any Party concerning this Settlement Agreement or its exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.

67. Counsel for the Parties warrant and represent that they are expressly authorized by the Party whom they represent to negotiate this Settlement Agreement and to take all appropriate action required or permitted to be taken by such Parties pursuant to this Settlement Agreement to effectuate its terms, and to execute any other documents required to effectuate the terms of this Settlement Agreement. The Parties and their respective counsel will cooperate with each other and use their best efforts to effect the implementation of the Settlement Agreement. The person signing this Settlement Agreement on behalf of Defendant represents and warrants that he/she is authorized to sign this Settlement Agreement on behalf of Defendant. Class Counsel who sign

30

this Settlement Agreement represent and warrant that they are authorized to sign this Settlement Agreement on behalf of all counsel representing Plaintiffs in the *Wilder* Action, *Austin* Action, and *Ebersole* Action.

68.     This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors or assigns of the Released Parties and the Parties, as previously defined.

69.     All terms of this Settlement Agreement and the exhibits to the Settlement Agreement shall be governed by and interpreted according to the laws of the State of Ohio.

70.     This Settlement Agreement may be executed in one or more counterparts and by facsimile.  All executed copies of this Settlement Agreement, and photocopies thereof (including facsimile copies of the signature pages), shall have the same force and effect and shall be legally binding and enforceable as the original.

71.     The Parties believe that the terms of the settlement as set forth in this Settlement Agreement are fair, adequate, and reasonable and have arrived at this Settlement Agreement after extensive arm's-length negotiations and with the assistance of an experienced mediator, taking into account all relevant factors, present and potential.

72.     The Court shall retain jurisdiction with respect to the interpretation, implementation, and enforcement of the terms of this Settlement Agreement and all orders and judgments entered in connection therewith, and the Parties and their counsel submit to the jurisdiction of the Court for purposes of interpreting, implementing, and enforcing the settlement embodied in this Agreement and all orders and judgments entered in connection therewith.

73.     Each of the Parties has cooperated in the drafting and preparation of this Settlement Agreement.  Hence, in any construction or interpretation of this Settlement Agreement, the Settlement Agreement shall not be construed for or against any of the Parties.

74.     The Plaintiffs agree to sign this Settlement Agreement and by signing this Settlement Agreement are bound by the terms stated in the Settlement Agreement, and further

agree not to request to be excluded from the Settlement Class and agree not to object to any of the terms of this Settlement Agreement.

IN WITNESS WHEREOF, the Parties hereby enter this Agreement as indicated by their signatures below.

PLAINTIFFS:

Dated: 9/3/24 13:20 CDT      By: _____*Brandon Wilder*_____

Brandon Wilder, individually and as a representative of the Settlement Class Members

Dated: _____ By: _____

Donald Austin, individually and as a representative of the Settlement Class Members

Dated: _____ By: _____

Kacey Ebersole, individually and as a representative of the Settlement Class Members

Dated: 9/4/24 19:15 CDT By: _____

Otis Woods, individually and as a representative of the Settlement Class Members

DEFENDANT

Dated: _____ By: _____

The Kroger Co.

Position:_____

Docusign Envelope ID: 07A0F604-3871-436C-9D71-0F0F512A7274

PLAINTIFFS:

Dated: _____          By: _____
                                    Brandon Wilder, individually and as a
                                    representative of the Settlement Class
                                    Members


Dated: _9/3/2024_____   By: _Donald Austin_____
                                    Signed by: Donald Austin
                                    F130E736E33146D...
                                    Donald Austin, individually and as a
                                    representative of the Settlement Class
                                    Members


Dated: _____    By: _____
                                    Kacey Ebersole, individually and as a
                                    representative of the Settlement Class
                                    Members


Dated: _____    By: _____
                                    Otis Woods, individually and as a
                                    representative of the Settlement Class
                                    Members

DEFENDANT

Dated: _____    By: _____
                                    The Kroger Co.


                                    Position:_____

Docusign Envelope ID: 1D6B8E5C-CF60-4787-9E67-B38375450369

PLAINTIFFS:

Dated: _____

By: _____
Brandon Wilder, individually and as a representative of the Settlement Class Members

Dated: _____

By: _____
Donald Austin, individually and as a representative of the Settlement Class Members

Dated: _*Kacey Ebersole*_____
Signed by:
40A46DE2B0E34BC...

By: ___9/6/2024_____
Kacey Ebersole, individually and as a representative of the Settlement Class Members

Dated: _____

By: _____
Otis Woods, individually and as a representative of the Settlement Class Members

DEFENDANT

Dated: _____

By: _____
The Kroger Co.

Position:_____

PLAINTIFFS:

Dated: _____          By: _____
                                  Brandon Wilder, individually and as a
                                  representative of the Settlement Class
                                  Members


Dated: _____          By: _____
                                  Donald Austin, individually and as a
                                  representative of the Settlement Class
                                  Members


Dated: _____          By: _____
                                  Kacey Ebersole, individually and as a
                                  representative of the Settlement Class
                                  Members


Dated: _____          By: _____
                                  Otis Woods, individually and as a
                                  representative of the Settlement Class
                                  Members

DEFENDANT

Dated: September 16, 2024          By: _____
                                  Ted Schaefer
                                  The Kroger Co.

                                  Position: Vice President Associate Relations

33

Docusign Envelope ID: 85C9D796-EEF3-41E1-8DA2-9D6C269DCEE2

## ACKNOWLEDGEMENT

The below Enhancement Payment Recipients hereby acknowledge and agree that they have had an opportunity to read this agreement and are subject to the General Release contained in the Settled Claims of Enhancement Payment Recipients. Failure for an Enhancement Payment Recipient to execute the below acknowledgement does not affect the Effective Date of this Agreement and the only effect of an Enhancement Payment Recipient's failure to execute this Acknowledgment will be their inability to collect the Enhancement Payment identified in Paragraph 45 of this Agreement.

Dated: 9/3/2024

By: _____
Deborah Winston, Enhancement
Payment Recipient

Dated: _____

By: _____
Sharon Simpson, Enhancement
Payment Recipient

Dated: _____

By: _____
Lori Dalton, Enhancement Payment
Recipient

34

Docusign Envelope ID: C9D3FE4C-573F-4AAF-B809-DF94FF25E2D6

## **ACKNOWLEDGEMENT**

The below Enhancement Payment Recipients hereby acknowledge and agree that they have had

an opportunity to read this agreement and are subject to the General Release contained in the

Settled Claims of Enhancement Payment Recipients. Failure for an Enhancement Payment

Recipient to execute the below acknowledgement does not affect the Effective Date of this

Agreement and the only effect of an Enhancement Payment Recipient's failure to execute this

Acknowledgment will be their inability to collect the Enhancement Payment identified in

Paragraph 45 of this Agreement.

Dated: _____         By: _____
                                               Deborah Winston, Enhancement
                                               Payment Recipient


Dated:  9/3/2024                          By: _____
       _____               Sharon Simpson, Enhancement
                                               Payment Recipient


Dated: _____         By: _____
                                               Lori Dalton, Enhancement Payment
                                               Recipient

34

Docusign Envelope ID: 14B523CC-B9DC-4475-8CA2-3F67AD0F11A3

## **ACKNOWLEDGEMENT**

The below Enhancement Payment Recipients hereby acknowledge and agree that they have had an opportunity to read this agreement and are subject to the General Release contained in the Settled Claims of Enhancement Payment Recipients. Failure for an Enhancement Payment Recipient to execute the below acknowledgement does not affect the Effective Date of this Agreement and the only effect of an Enhancement Payment Recipient's failure to execute this Acknowledgment will be their inability to collect the Enhancement Payment identified in Paragraph 45 of this Agreement.

Dated: _____     By: _____
                                          Deborah Winston, Enhancement
                                          Payment Recipient

Dated: _____     By: _____
                                          Sharon Simpson, Enhancement
                                          Payment Recipient

Dated: _9/3/2024_____     By: _____
                                          Lori Dalton, Enhancement Payment
                                          Recipient

34

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **BRANDON WILDER**, *et al. individually* | : | |
| *and on behalf of all others similarly situated,* | : | **Case No. 1:22-cv-681** |
| | : | |
| *Plaintiffs,* | : | |
| | : | **Judge Jeffrey P. Hopkins** |
| v. | : | |
| | : | |
| **THE KROGER CO.,** | : | |
| | : | |
| *Defendant.* | : | |

**SECOND AMENDED COLLECTIVE, CLASS, AND**
**REPRESENTATIVE ACTION COMPLAINT**

Plaintiffs, Brandon Wilder, Donald Austin, Otis Woods, and Kacey Ebersole (hereinafter "Plaintiffs"), individually and behalf of others similarly situated, by and through counsel, file this Second Amended Collective, Class, and Representative Action Complaint against Defendant, The Kroger Co. (hereinafter "Kroger") and allege the following:

**INTRODUCTION**

1.      In or around September 2022, Kroger and its U.S. subsidiaries[1] transitioned to a cloud based timekeeping and payroll system called MyInfo/MyTime ("MyInfo Conversion").   From September 1, 2022 to at least May 31, 2023, the MyInfo Conversion caused outages and glitches that affected the recorded hours of work and pay of Plaintiffs and other similarly situated employees.  As a result of the outages and glitches, Plaintiff and other similarly situated employees (1) were not paid for all hours worked, (2) were not properly paid minimum wage, (3) were not properly paid for all overtime compensation, (4) received payment outside the time frames required under state law, (5) were paid at the incorrect rate of pay, (6) suffered improper deductions in violation of state law,

---

[1] A list of Kroger's U.S. subsidiaries is attached as Exhibit A.  Kroger and its U.S. subsidiaries are collectively referred to as "Kroger."

including over-deductions relating to benefits, (7) were not provided their final pay as required under state law, (8) were provided inaccurate wage statements, (9) were not reimbursed necessary expenses, (10) were not properly paid all forms of compensation, including but not limited to non-discretionary bonuses, in overtime calculations, and (11) were not paid all wages owed at the time of separation, including vacation pay.

2.    Plaintiffs bring this action individually and on behalf of all similarly situated, non-exempt, hourly current and former employees, who worked for Kroger at any time from September 1, 2022 to May 31, 2023 (the "Relevant Time Period"), to recover unpaid wages, overtime, damages, civil penalties, liquidated damages, unpaid costs, punitive damages, interest, attorneys' fees, litigation costs, restitution, and/or equitable relief pursuant to the provisions of Sections 207 and 216(b) of the Fair Labor Standards Act of 1938, as amended 29 U.S.C. §§ 201–19 ("FLSA Claim"), and as a class action pursuant to Federal Rule of Civil Procedure 23 for their state-law, local and common law claims related to wage and hour matters, including, but not limited to, claims for unpaid straight and overtime wages, failure to pay the minimum wage, failure to provide accurate wage statements, wage theft, improper wage payments, improper wage deductions, and failure to maintain accurate records. the wage and hour laws of the Private Attorneys' General Act of 2004, Cal. Lab. Code section 2698 et seq. ("PAGA Claim"), and the California Unfair Competition Law CAL. BUS. & PROF. CODE § 17200, et seq. ("UCL Claim") and state wage and hour laws.

3.    Plaintiff Otis Woods asserts his PAGA Claim individually, and as a representative action on behalf of all similarly situated, non-exempt, hourly current and former employees who worked for directly or indirectly for Kroger in the State of California[2] from one year prior to the

---

[2] A list of Kroger's subsidiaries in the State of California is attached as Exhibit B.

filing of the PAGA notice to the conclusion of this action, and suffered at least one of the violations alleged herein as a result of the MyInfo Conversion (the "Aggrieved Employees").

4.      Plaintiff Otis Woods asserts his UCL Claim individually and as a class action, pursuant to Federal Rule of Civil Procedure 23, on behalf of all similarly situated, non-exempt, hourly current and former employees who worked for directly or indirectly for Kroger in the State of California (the "UCL Class Members")

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over Plaintiff's FLSA Action pursuant to 28 U.S.C. § 1331 because it is brought pursuant to 29 U.S.C. § 216(b).

6.      This Court has original jurisdiction over Plaintiffs' State Class Claims under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), given that it is pled as a class action, the proposed class contains at least 100 members, there is diversity between at least one putative class member and one defendant, and the amount in controversy exceeds $5,000,000.

7.      This court also has supplemental jurisdiction over Plaintiffs' State Class Claims, including Plaintiff Woods' PAGA Claim, pursuant to 28 U.S.C. § 1367.

8.      This Court has supplemental jurisdiction over Plaintiff Otis Woods's PAGA Claim, pursuant to 28 U.S.C. § 1367.

9.      The PAGA Claim is timely because Plaintiff Otis Woods suffered from a violation or numerous violations of the California Labor Code within one year of the date on which a PAGA notice was sent to the LWDA via online submission.  More than 65 days have passed, and no response has been received by the LWDA.  A copy of the letter sent to the LWDA with enclosure is attached hereto as Exhibit C, thereby satisfying the notice requirement under the statute and permitting Plaintiff Otis Woods to proceed with this action in a representative capacity.

10.     This Court has supplemental jurisdiction over Plaintiff Otis Woods's UCL Claim, pursuant to 28 U.S.C. § 1367.

11.     Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to these claims occurred in the Southern District of Ohio.  Additionally, Kroger's corporate headquarters are in Cincinnati, Ohio, which is located within this District and Division.

## THE PARTIES

12.     Plaintiff Brandon Wilder ("Wilder") was employed by Kroger in Union, Kentucky, in the position of delivery driver and warehouse worker during the Relevant Time Period.[3]  Due to the MyInfo Conversion outages and glitches, Plaintiff Wilder was not paid during his employment with Kroger and only received some of his pay after he was forced to quit due to lack of pay, in violation of the FLSA and state law.

13.     Plaintiff Donald Austin ("Austin") was employed by Kroger in Appomattox, Virginia in the position of Drug General Manager Backup during the Relevant Time Period.[4]  Due to the MyInfo Conversion outages and glitches, Plaintiff Austin was not timely paid the correct amount he was owed during his employment with in violation of the FLSA and state law.

14.     Plaintiff, Kacey Ebersole ("Ebersole") was employed by Kroger in Colorado during the Relevant Time Period.[5]  Due to the MyInfo Conversion outages and glitches, Plaintiff Ebersole was not timely paid the correct amount during her employment with Kroger in violation of the FLSA and state law.

---

[3] The written consent of Wilder is on file with this Court. ECF No. 1–1.
[4] The written consent of Wilder is on file with this Court. ECF No. 1–1.
[5] The written consent of Austin is attached as Exhibit __..

15.    Plaintiff Otis Woods was employed by Kroger in California during the Relevant Time Period.[6] Due to the MyInfo Conversion outages and glitches, Plaintiff Otis Woods (1) was not paid for all hours worked, (2) was not properly paid minimum wage, (3) was not properly paid for all overtime compensation, (4) received payment outside the time frames required under state law, (5) was paid at the incorrect rate of pay, (6) suffered improper deductions in violation of state law, including over-deductions relating to benefits, (7) was not provided their final pay as required under state law, (8) was provided inaccurate wage statements, (9) was not reimbursed necessary expenses, (10) was not properly paid all forms of compensation, including but not limited to non-discretionary bonuses, in overtime calculations, and (11) was not paid all wages owed at the time of separation, including vacation pay, as required under the FLSA and California state law.

16.    Pursuant to *Huff v. Securitas Services*, 23 Cal. App. 5th 745, 751 (2018), an employee who brings a representative action and was affected by at least one of the violations alleged in the complaint has standing to pursue penalties on behalf of the state and not only for that violation, but for violations affecting other employees as well. Accordingly, Plaintiff Otis Woods has standing to pursue penalties on behalf of the state of violations affecting all the Aggrieved Employees working for Kroger, regardless of their classification, job title, or locations in California.

17.    Kroger is a domestic for-profit corporation, organized under the laws of the State of Kentucky, whose corporate headquarters is located in Cincinnati, Ohio.

18.    Kroger is an employer within the meaning of Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

19.    Kroger is an enterprise within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

---

[6] The written consent of Otis Woods is on file with this Court. ECF No. 75-3

20.     Kroger is an enterprise engaged in commerce or the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, because its employees engage in commerce or in the production of goods for commerce, or its employees handle, sell, or otherwise work on goods or materials that are moved in or are produced for commerce by any person, 29 U.S.C. § 203(s)(1).  Further, Kroger has a gross volume of sales made or business done of not less than $500,000.

21.     Kroger operates its business in Alabama, Alaska, Arizona, Arkansas, California, Colorado, Delaware, Florida, Georgia, Idaho, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Mexico, North Carolina, Ohio, Oregon, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, West Virginia, Wisconsin, and Wyoming.

22.     At all times relevant herein, Plaintiffs and the FLSA Collective Members were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

23.     Kroger issued paychecks to Plaintiffs and all similarly situated employees during their employment.

24.     Kroger directed the work of Plaintiffs and all similarly situated employees, and benefited from work performed it suffered or permitted from them.

25.     Pursuant to Kroger's policy and pattern or practice, Plaintiffs and all similarly situated employees were not paid for all hours worked, nor the correct amount of overtime, as required by the FLSA and/or by the wage and hour laws of the states in which Kroger or its subsidiaries operate.

## FACTUAL ALLEGATIONS

26.     Kroger is one of the largest grocery retail chain stores in the United States.

27.     To provide its services, Kroger employed (and continues to employ) numerous workers—including Plaintiffs and other non-exempt, hourly employees.

28.     Plaintiffs, and all other non-exempt, hourly current and former employees who worked for Kroger or its subsidiaries during the Relevant Time Period, are similarly situated with respect to their pay structure and the pay plan of Kroger which resulted in the numerous FLSA and state law violations alleged herein.  While exact job titles may differ, these employees were all subjected to the same or similar illegal pay practices for similar work throughout Kroger's facilities in the United States.

29.     In or around September 2022, Kroger and its U.S. subsidiaries transitioned to a cloud-based timekeeping and payroll system called MyInfo/MyTime ("MyInfo Conversion").

30.     Kroger knowingly and deliberately implemented the MyTime/MyInfo payroll software system as its official payroll system for all of its employees.

31.     From September 1, 2022 to at least May 31, 2023, the MyInfo Conversion caused outages and glitches that affected the recorded hours of work and pay of Plaintiffs and other similarly situated employees.  Due to these outages and glitches, Plaintiffs and other similarly situated employees suffered a multitude of compensation issues, which affected all of Kroger's non-exempt, hourly employees, nationwide.

32.     Specifically, Kroger's employees throughout the U.S.: (1) were not paid for all hours worked, (2) were not properly paid minimum wage, (3) were not properly paid for all overtime compensation, (4) received payment outside the time frames required under state law, (5) were paid at the incorrect rate of pay, (6) suffered improper deductions in violation of state law, including over-deductions relating to benefits, (7) were not provided their final pay as required under state law, (8) were provided inaccurate wage statements, (9) were not reimbursed necessary expenses, (10) were not properly paid all forms of compensation, including but not limited to non-discretionary bonuses, in overtime calculations, and (11) were not paid all wages owed at the time of separation, including vacation pay.

33. Because Kroger was (and is) able to affect Plaintiffs' and other similarly situated employees' pay and conditions of employment through its decision to implement the MyTime/MyInfo payroll system, which resulted in numerous federal and state wage violations, Kroger qualifies as an employer of every worker in its various subsidiaries who were affected (and continue to be affected) by the MyInfo Conversion. *See Branning v. Romeo's Pizza, Inc.*, No. 1:19 CV 2092, 2020 WL 3275716, at *3 (N.D. Ohio Apr. 6, 2020).

34. Kroger is obligated under the FLSA to pay all earned compensation for work performed on its behalf in a timely manner.

35. Kroger is also obligated under the relevant state, local, and common laws to pay earned compensation for work performed on its behalf in a timely manner.

36. The failure to pay wages on their regularly occurring pay date violates the FLSA and state laws in which Kroger or its subsidiaries operate.

37. Prior to the Relevant Time Period, Kroger paid Plaintiffs and other similarly situated employees all earned compensation for work performed on Kroger's behalf, on a weekly basis.

38. Due to the MyInfo Conversion outages and glitches, Kroger ceased paying Plaintiffs and other similarly situated employees all earned compensation on a weekly basis.

39. Kroger violated the FLSA and state laws by not paying Plaintiffs and other similarly situated employees all earned compensation on their regularly scheduled payday.

40. As a result of Kroger's failure to timely pay all earned compensation, Plaintiffs and other similarly situated employees are entitled to liquidated damages for all unpaid wages and for wages that were not paid within the time frames required under federal law.

41. Kroger knew or should have known that its failure to timely pay Plaintiffs and other similarly situated employees all earned compensation violated the FLSA and relevant state laws.

42.     Kroger knew or should have known that its failure to comply with federal and state wage laws would cause, did cause, and continues to cause financial injury to Plaintiffs and other similarly situated employees.

43.     Kroger knew or should have known that its failure to pay Plaintiffs and other similarly situated employees for the time they expended working on its behalf would also violate state common law, and would cause, did cause, and continues to cause financial injury to Plaintiffs and other similarly situated employees.

44.     Because Kroger did not pay Plaintiffs and other similarly situated employees all owed compensation within the time frames required under the FLSA and relevant state laws, Kroger's pay policies and practices willfully violated (and continue to violate) the FLSA and relevant state laws.

45.     As a result of the MyInfo Conversion outages and glitches, and the resulting federal and state law violations, Plaintiffs and other similarly situated employees seek to recover unpaid wages, overtime, damages, civil penalties, liquidated damages, unpaid costs, punitive damages, interest, attorneys' fees, litigation costs, restitution, and/or equitable relief pursuant to federal, state, local, and/or common law.

## **COLLECTIVE ACTION ALLEGATIONS**

46.     Pursuant to 29 U.S.C. § 207, Plaintiffs seek to prosecute their FLSA Action individually and on behalf of all other similarly situated, non-exempt current and former employees who worked for Kroger or its subsidiaries anywhere in the United States during the Relevant Time Period, and were adversely affected by the MyInfo Conversion (the "FLSA Collective Members").

47.     The Plaintiffs and the FLSA Collective Members are "similarly situated" with respect to Kroger's FLSA violations in that they were all non-exempt employees of Kroger who were unlawfully impacted by the MyInfo Conversion, and all have the same claims against Kroger for, *inter alia*, failing to appropriately and timely compensate Plaintiffs and the FLSA Collective Members for

all hours worked per workweek, failing to pay overtime, failing to provide accurate wage statements, failing to record hours worked, failing to make reimbursements, failing to provide pay at termination, and for making improper deductions from employees' wages.

48.     There are many FLSA Collective Members who have not been properly paid in violation of the FLSA, and who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.  Thus, notice should be sent to the FLSA Collective Members pursuant to 29 U.S.C. 216(b).

49.     The FLSA Collective Members are known to Kroger, are readily identifiable, and can be located through Kroger's records.

## STATE CLASS ALLEGATIONS

47.     Plaintiffs allege Kroger violated state and local wage and hour.

48.     At all times hereinafter mentioned, Kroger has been an "employer" within the meaning of the state, local, and common law wage and hour laws.

49.     At all times hereinafter mentioned, the Rule 23 Class Members who worked for Kroger have been "employees" within the meaning of the state, local, and common law wage and hour laws.

50.     Kroger owes the Rule 23 Class Members who worked for Kroger compensation for unpaid straight time and overtime wages, minimum wages, failure to provide accurate wage statements, wage theft, improper wage payments, failure to provide meal and rest breaks, improper wage deductions, and failure to maintain accurate records.

51.     The Rule 23 Class Members who worked for Kroger were not (and currently are not) exempt from the state, local, and common law wage and hour laws.

52.     The Rule 23 Class Members who worked for Kroger have suffered damages and continue to suffer damages as a result of Kroger's acts or omissions as described herein; though

Kroger is in possession and control of necessary documents and information from which they would

be able to precisely calculate damages

53.  The Rule 23 Classes are defined as follows:

**Class A** includes individuals employed by Kroger as non-exempt employees from September 1, 2022 to May 31, 2023, in Arizona, California, Colorado, Illinois, Maine, Maryland, Massachusetts, New Jersey, and Virginia experienced an instance of underpayment within a given pay period for the hours they worked (or that they took as PTO) in that pay period (a "Negative Variance") or experienced an over-deduction from their wages relating to benefits (an "Over Deduction")  as identified in the Deloitte Analysis.

**Class B** includes individuals employed by Kroger as non-exempt employees from September 1, 2022 to May 31, 2023, in every other state where Kroger does business, excluding Oregon and Washing, who experienced an instance of underpayment within a given pay period for the hours they worked (or that they took as PTO) in that pay period (a "Negative Variance") or experienced an over-deduction from their wages relating to benefits (an "Over Deduction") as identified in the Deloitte Analysis.

54.  The State Law claims are brought as a class action pursuant to Federal Rule of Civil

Procedure 23 on behalf of all similarly situated individuals employed by Kroger.

55.  Class action treatment of the Rule 23 Class Members' claims is appropriate because,

as alleged below, all of Rule 23's class action requisites are satisfied.

56.  There are questions of law and fact common to State Class Members, including, but

not limited to:

    a.  Whether Kroger employed Plaintiffs and the State Class Members within the meaning of the wage and hour laws of the states in which Kroger or its subsidiaries operate.

    b.  Whether Kroger failed to appropriately and timely compensate employees for all hours worked per workweek, failed to pay overtime, failed to provide accurate wage statements, failed to record hours worked, failed to make reimbursements, failed to provide pay at termination, and made improper deductions from employees' wages

c. Whether Kroger is liable for all damages claimed by Plaintiffs and the State Class Members, including, without limitation, compensatory, punitive and statutory damages, interest, costs, disbursements, and attorneys' fees.

57. Plaintiffs' claims are typical of the claims of the State Class Members as they arise out of the same course of conduct by Kroger and are based on the same legal theories.

58. Plaintiffs will fairly and adequately protect the interests of the State Class Members. The interests of the Plaintiffs are not antagonistic to, but rather are in unison with, the interests of the State Class Members. Plaintiffs' attorneys have broad experience in handling class action litigation, including wage-and-hour litigation, and are fully qualified to prosecute the claims of the State Class Members.

59. The questions of law or fact that are common to the State Class Members predominate over any questions affecting only individual members. The common questions described above will determine Kroger's liability to Plaintiffs and State Class Members, and the amount of damages and penalties they are owed, and will predominate over any questions affecting only individual State Class Members.

60. Certifying the Class is superior to other available methods for the fair and efficient adjudication of the claims of all the State Class Members. Requiring State Class Members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many State Class Members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually.

61. Certification of this Class pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all State Class Members with the efficiencies of class litigation

62.     Plaintiffs know of no difficulty that would be encountered in the management of this litigation that would preclude its maintenance as a class action.

63.     Accordingly, the Rule 23 Classes should be certified as defined above.

## COUNT I
## (FLSA Claim)

64.     Plaintiffs bring this claim for violation of the FLSA's requirements for the timely payment of hourly and overtime compensation on behalf of themselves and the FLSA Collective Members who may join this case pursuant to 29 U.S.C. § 216(b).

65.     Kroger has engaged in a widespread pattern and practice of violating the FLSA, as detailed in this Second Amended Complaint.

66.     Kroger has failed to pay Plaintiffs and other similarly situated employees the hourly and overtime compensation to which they were entitled under the FLSA.

67.     Kroger's violations of the FLSA, as described in this Second Amended Complaint, have been intentional and willful.  Kroger has not made a good faith effort to comply with the FLSA with respect to the compensation of the Plaintiffs and other similarly situated employees.

68.     Because Kroger's violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

69.     As a result of the Kroger's violations of the FLSA, Plaintiffs and all other similarly situated employees have suffered damages by being denied due hourly and overtime compensation in accordance with 29 U.S.C. §§ 201, *et seq*.

70.     As a result of the unlawful acts of Kroger, Plaintiffs and other similarly situated current and former employees have been deprived of hourly and overtime compensation, and other wages in amounts to be determined at trial, and are entitled to recover such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs and other compensation pursuant to 29 U.S.C. § 216(b).

## COUNT TWO
### (State Class Claim)

71.     The State Law claims are brought as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all similarly situated individuals employed by Chase.

72.     As a result of Kroger's pattern and practice of failing to timely pay Plaintiffs and the State Class Members all earned hourly and overtime compensation for all hours worked, Kroger knew and/or showed reckless disregard whether their conduct was prohibited by the respective state's wage-hour laws and rules and regulations promulgated under those laws.

73.     As a result of Kroger's willful violations of state wage and hour laws Plaintiffs and the State Class Members are entitled to recover from Kroger their unpaid hourly and overtime wages for all hours worked by them, actual and liquidated damages, including the employer's share of FICA, FUTA, state unemployment insurance, and any other required employment taxes, reasonable attorneys' fees and costs and disbursements of this action, and prejudgment and post-judgment interest.

## COUNT THREE
### (PAGA Claim)

74.     Plaintiff Otis Woods and the Aggrieved Employees are "aggrieved employees" within the meaning of California Labor Code Section 2699.

75.     As an aggrieved employee, Plaintiff Otis Woods, as representative of the California Labor and Workforce Development Agency (LWDA), and on behalf of the Aggrieved Employees, seeks to recover civil penalties against Kroger pursuant to the Private Attorneys General Act of 2004 (PAGA), CAL. LAB. CODE §§ 2698 et seq.

76.     Plaintiff Otis Woods provided timely notice to Kroger of its California Labor Code and IWC Wage Orders violations.

77.     On the same date, notice of these California Labor Code and IWC Wage Orders violations was provided to the LWDA, as required by PAGA.

78.     The notice to Kroger and the LWDA advised each of them of the intent to prosecute a private enforcement action to assess and recover civil penalties under PAGA.

79.     More than 65 days have passed, and no response has been received by the LWDA. A copy of the letter sent to the LWDA with enclosure is attached hereto as Exhibit C, thereby satisfying the notice requirement under the statute and permitting Plaintiff Otis Woods to proceed with this action in a representative capacity.

80.     Due to the MyInfo Conversion outages and glitches, Plaintiff Otis Woods and other aggrieved employees (1) were not paid for all hours worked, (2) were not properly paid minimum wage, (3) were not properly paid for all overtime compensation, (4) received payment outside the time frames required under state law, (5) were paid at the incorrect rate of pay, (6) suffered improper deductions in violation of state law, including over-deductions relating to benefits, (7) were not provided their final pay as required under state law, (8) were provided inaccurate wage statements, (9) were not reimbursed necessary expenses, (10) were not properly paid all forms of compensation, including but not limited to non-discretionary bonuses, in overtime calculations, and (11) were not paid all wages owed at the time of separation, including vacation pay.

81.     Kroger knowingly and intentionally violated the California Labor Code and IWC Wage Orders, including by:

    a.  Failing to fully and timely pay non-exempt hourly employees all wages earned, and at the minimum wage for each hour worked (CAL. LAB. CODE §§ 204, 1197, 1198)

    b.  Failing to pay and incorrectly calculating overtime (CAL. LAB. CODE §§ 1194, 1197, 510, 1198)

c.   Failing to provide accurate, lawful itemized wage statements (CAL. LAB. CODE § 226)

d.   Failing to pay wages (CAL. LAB. CODE §§ 510, 1194.5; IWC Wage Orders #1-2001 through #17-2001);

e.   Failing to keep accurate records (CAL. LAB. CODE §§ 1174, 1198);

f.   Unlawfully collecting, receiving, or withholding wages (CAL. LAB. CODE §§ 221, 225.5);

g.   Failing to pay wages promptly following termination of employment, or when due and payable (CAL. LAB. CODE § 201-203).

82.   Plaintiff Otis Woods, on behalf of himself and the Aggrieved Employees, seeks the full amounts sufficient to recover unpaid wages, other damages, and necessary expenditures or losses incurred by Plaintiff Otis Woods and the Aggrieved Employees pursuant to California Labor Code sections identified above.

83.   The civil penalties sought by the Plaintiff Otis Woods on behalf of himself and the Aggrieved Employees, include the recovery of amounts specified in the respective sections of the California Labor Code, and if not specifically provided, those penalties under section 2699(f).

84.   Plaintiff Otis Woods, on behalf of the LWDA, has incurred attorneys' fees and costs in prosecuting this action to recover under PAGA for himself and the Aggrieved Employees.

**COUNT FOUR**
**(UCL Claim)**

85.   Kroger has engaged, and continues to engage, in unfair and unlawful business practices in California by practicing, employing, and utilizing the employment practices outlined above, by knowingly violating the California Labor Code sections identified above.

86.     As a result of Kroger's failure to comply with California law, Kroger has also violated the California Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE § 17200, et seq., which prohibits unfair competition by prohibiting any unlawful or unfair business actions or practices.

87.     The relevant acts by Kroger occurred within the four years preceding the filing of this action.

88.     On information and belief, Kroger has engaged in unlawful, deceptive, and unfair business practices, pursuant to California's Business and Professions Code section 17200, et seq., including those set forth above, depriving the Plaintiff Otis Woods and the Aggrieved Employees of minimum working condition standards and conditions under California law and IWC Wage Orders as set forth above.

89.     The Plaintiff Otis Woods and the Aggrieved Employees are entitled to restitution.

90.     Kroger is also liable for fees and costs pursuant to California Code of Civil Procedure 1021.5 and other applicable law.

## **RELIEF SOUGHT**

91.     Plaintiffs respectfully pray for judgment against Kroger as follows:

a.  For an Order directing court-supervised notice to the FLSA Collective Members and requiring Kroger to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all FLSA Collective Members;

b.  For an Order approving the form and content of a notice to be sent to all FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

c.  For an Order certifying the State Class Claim pursuant to Fed. R. Civ. P. 23 on behalf of Plaintiffs and the State Class Members;

d.  For an Order designating Plaintiffs as State Class Claim Representatives;

e. For an Order pursuant to Section 16(b) of the FLSA finding Kroger liable for unpaid back wages due to Plaintiffs (and those FLSA Collective Members who have joined in the suit), and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiffs (and those FLSA Collective Members who have joined in the suit);

f. For an Order awarding Plaintiffs, the FLSA Collective Members, State Class Members, and Aggrieved Employees compensatory damages, prejudgment interest, costs, and attorneys' fees incurred in prosecuting this action.

g. For an Order awarding Plaintiff Otis Woods and the Aggrieved Employees the damages and penalties available under California law;

h. For an Order awarding Plaintiffs a service award as permitted by law;

i. For an Order compelling the accounting of the books and records of Kroger, at Kroger's own expense; and

j. For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

/s/_____
**Robert E. DeRose** (OH Bar No. 005214)
bderose@barkanmeizlish.com
**BARKAN MEIZLISH DEROSE COX, LLP**
4200 Regent Street, Suite 210
Columbus, Ohio 43219
Telephone: (614) 221-4221
Facsimile: (614) 744-2300

/s/_____
**Clif Alexander** (admitted *pro hac vice*)
Texas Bar No. 24064805
clif@a2xlaw.com
**Austin W. Anderson** (admitted *pro hac vice*)
Texas Bar No. 24045189
austin@a2xlaw.com
**ANDERSON ALEXANDER, PLLC**
101 N. Shoreline Blvd., Ste. 610
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284

***Counsel for Plaintiffs and the Putative
Class Members***

# Exhibit B

**Notice of Proposed Class Action Settlement**

Wilder, et al. v. The Kroger Co.
United States District Court for the Southern District of Ohio, Civil Action No.: 1:22-cv-681

**If you are or were employed by The Kroger Co. from September 1, 2022 to May 31, 2023, a class action lawsuit may affect your rights.**

- Brandon Wilder and other former employees have sued The Kroger Co. and its subsidiary and affiliated companies (referred to as "Kroger") alleging that Kroger failed to appropriately and timely compensate individuals who were employed by Kroger in the United States for all hours worked per workweek due to a conversion to a cloud based payroll system entitled MyInfo (the "MyInfo Conversion"). Kroger denies all these claims.

- The parties have reached a proposed Settlement to resolve the Litigation.

- The Court has preliminarily concluded that the Settlement appears to be fair, reasonable, and adequate and to have been the product of serious, informed, and extensive arm's-length negotiations between the parties and has authorized the dissemination of this notice to all class members.

- This Court has preliminarily certified two classes of employees, as follows:

    o Class A includes individuals employed by Kroger as non-exempt employees from September 1, 2022 to May 31, 2023, in Arizona, California, Colorado, Illinois, Maine, Maryland, Massachusetts, New Jersey, and Virginia who experienced an instance of underpayment within a given pay period for the hours they worked (or that they took as PTO) in that pay period (a "Negative Variance") or experienced an over-deduction from their wages relating to benefits (an "Over Deduction")  as identified in the Deloitte Analysis.

    o Class B includes individuals employed by Kroger as non-exempt employees from September 1, 2022 to May 31, 2023, in every other state where Kroger does business, excluding Oregon and Washington, who experienced an instance of underpayment within a given pay period for the hours they worked (or that they took as PTO) in that pay period (a "Negative Variance") or experienced an over-deduction from their wages relating to benefits (an "Over Deduction")  as identified in the Deloitte Analysis.

- The Court has not found that Kroger did anything wrong and the Court has not yet decided whether it will approve the proposed Settlement. Rather, the Court has conditionally approved the Settlement, and the records of Kroger and the Deloitte Analysis show that you may be entitled to receive an award under the settlement.

- Your legal rights are affected, and you have a choice to make now:

## YOUR LEGAL RIGHTS AND OPTIONS IN THIS LAWSUIT

(1) **DO NOTHING AND RECEIVE MONEY** – If you do nothing, you will receive money as part of this settlement.  You will also release any and all claims relating to the Litigation and this settlement.

(3) **ASK TO BE EXCLUDED --**  If you ask to be excluded (that is, to "opt-out") by [60 days from mailing], you will not receive any money or benefits.  However, you keep any rights to sue Kroger separately about the same legal claims in this lawsuit, assuming the time period to sue has not expired. You will have to hire your own lawyer to pursue your claims in a new lawsuit.

(4) **OBJECT** – If you do not ask to be excluded, you may object to the terms of settlement by following the instructions set forth below and submitting any objection by [60 days from mailing].

● Your options are further explained in this notice.

**Read On to Answer any Questions.**

## BASIC INFORMATION

**1. Why did I get this notice?**

According to Kroger's records and an analysis performed by international accounting firm Deloitte, you worked during the time period applicable to this settlement and experienced a Negative Variance or Over Deduction as a result of the MyInfo Conversion.

This notice explains that the Court has conditionally approved a class action settlement that may affect you.  You have a legal right and options you may exercise.  This lawsuit is known as *Wilder, et al. v. The Kroger Co.,* Civil Action No. 1:22-CV-00681 (the "Litigation").

**2. What is the Litigation about?**

In September 2022, Kroger converted to a new payroll software system entitled MyInfo.  Plaintiffs allege that they and other employees experienced problems, or negative variances, in their wages (including delayed payments, benefits, deductions and PTO) as a result of problems with the MyInfo Conversion, and that these negative variances violated federal and state law.

Kroger denies that it engaged in any wrongful conduct or that it violated the law in any way. Kroger contends that the claims asserted in the Litigation have no merit and that it would prevail in the Litigation.  The parties have agreed to resolve this matter in order to avoid the uncertainty and high cost of litigation.

**3. What is a class action and who is involved?**

In a class action lawsuit, one or more people called "Plaintiffs" (in this case Brandon Wilder, Donald Austin, Otis Woods, and Kacy Ebersole) sue on behalf of other people whom they believe have similar claims. The people together are a "Class" or "Class Members." The employees who sued are called the Plaintiffs. The companies they sued (in this case Kroger) are called the Defendant. One court resolves the issues for everyone in the Class – except for those people who choose to exclude themselves from the Class.

In connection with the settlement described in this notice, the Court has certified a Settlement Class consisting of all individuals employed by Kroger as non-exempt employees from September 1, 2022 to May 31, 2023 in any state, excluding employment in Washington and Oregon, who experienced an instance of underpayment within a given pay period for the hours they worked (or that they took as PTO) in that pay period (a "Negative Variance") or experienced an over-deduction from their wages relating to benefits (an "Over Deduction") as identified in the Deloitte Analysis.

## THE SETTLEMENT

**4.      What has Kroger agreed to pay?**

Kroger retained Deloitte, an international accounting and professional services firm, to assist in performing an audit to determine the amount of unpaid or delayed wages, benefits, PTO and improper deductions arising from Kroger's transition to a cloud based payroll system called MyInfo/MyTime in September 2022. Kroger has agreed that it has already paid, or will pay, 100% of all the amounts that are identified by the Deloitte Analysis, and, as part of this settlement, will also pay an additional 50% of the amount identified by the Deloitte Analysis. Kroger will also pay an additional amount for Plaintiffs' attorneys' fees, the Claims Administrator, and $7,500 to the California Labor and Workforce Development Agency ("LWDA").

The money that Kroger has offered to pay is called the "Settlement Funds." If you participate in the settlement, you will receive a share of the Settlement Funds based upon the Deloitte Analysis and the formula developed by Class Counsel and Kroger to account for dispersion of the Settlement Funds between the classes.

**5.      What can I receive?**

If the Judge approves the settlement, and you do not opt-out or exclude yourself from the Litigation, you will receive a check containing your Settlement Award. The final amount you would be entitled to receive as your Settlement Award will not be calculated until after [date].

**6.      How is my settlement amount calculated?**

Class Member's settlement amounts are calculated such that the proportional payment identified in the Deloitte Analysis is weighted between the members of Class A and Class B, with Class A members weighted to receive approximately 60% of the class members' proportional amounts and Class B members to receive approximately 40% of the class members proportional amounts. The weighted difference between class members accounts for the additional protections provided by

the states included in Class A.

## CLAIMING SETTLEMENT FUNDS

**8.     How and when will I receive my portion of the Settlement Funds?**

You do not need to do anything to receive your portion of the Settlement Funds.  If you do not exclude yourself from the settlement, you will receive a check containing your Settlement Award as soon as possible after the Settlement is approved by the Court and that approval becomes final.

**9.     Can I contact the Claims Administrator by telephone?**

For more complete details about the Litigation and the proposed settlement, you may **TELEPHONE** the Claims Administrator, toll free, at _____. You may also email the Claims Administrtor at [_____].

**10.    What if my address changes before the Settlement Funds are distributed?**

If you change your address, or if this Notice was not mailed to your correct address, you should immediately provide your current address to the Claims Administrator by letter or telephone to ensure that you receive future communications about the Litigation.  If the Claims Administrator does not have your correct address, you might not receive notice of important developments in the Litigation and you might not receive your share of the Settlement Funds.

## YOUR RELEASE OF CLAIMS

Your legal rights may be affected if the Court confirms its preliminary certification of the Settlement Class.

**11.    Are my legal rights affected if I do nothing?**

Yes, if you do nothing: (1) you will receive a Settlement Award and (2) you also will release any Settled Claims that you may have.  This includes any claims you may have under the Fair Labor Standards Act.

**12.    What claims are included in the term Settled Claims?**

All following claims are included in the term Settled Claims:

> any and all claims, obligations, demands, actions, rights, causes of action, and liabilities against the Released Parties, of any form whatsoever, arising under federal, state, or local law before the entry of the Preliminary Approval Order, whether known or unknown, unforeseen, unanticipated, unsuspected, or latent, which have been pled in the Second Amended Complaint or could have been pled in the Second Amended Complaint, relating to claims for wages, overtime, damages, penalties, liquidated damages, unpaid costs, restitution, penalties, punitive damages, interest, attorneys' fees, litigation costs,

4

restitution, or equitable relief under the wage and hour laws of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, and all of its implementing rules and regulations and interpretive guidelines, and under the laws of any state or subdivision thereof in which Kroger does business, including but not limited to the states of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Delaware, Florida, Georgia, Idaho, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Mexico, North Carolina, Ohio, South Carolina, Tennessee, Texas, Utah, Virginia, West Virginia, Wisconsin, and Wyoming, whether based upon state, local, constitutional, statutory, or common law, or any other law, rule, or regulation, including but not limited to, claims under the Alaska Wage and Hour Act, Alaska Stat. § 23.10.050 *et seq.*; Alaska Stat. §§ 23.05.140(a), 23.10.040(a), 23.10.043; Arizona Fair Wages and Healthy Families Act, Ariz. Rev. Stat. §§ 23-350 *et seq.,* 23-362 *et seq.*; Arkansas Minimum Wage Act, Ark. Code §§ 11-4-201 *et seq.*, 11-4-401 *et seq.*, 11-4-612; Cal. Lab. Code §§ 98 – 98.2, 201-203, 204, 210, 216, 218, 218.5, 218.6, 226, 226.7, 510, 558, 1182.12, 1174, 1194, 1194.2, 1197, 1197.1, 1198, 2802; Private Attorneys General Act of 2004, Cal. Lab. Code §§ 2698 *et seq.*; California Business and Professions Code §§ 17200 *et seq.*; IWC California Wage Orders and California Code of Regulations, Title 7, section 11000 *et seq.*; Colorado Minimum Wages of Workers Act, Colo. Rev. Stat. § 8-6-101 *et seq.*; Colorado Wage Claim Act, Colo. Rev. Stat. § 8-4-101 *et seq.*; Colorado Overtime and Minimum Pay Standards Order, 7 CCR § 1103-1; Colo. Const. art. XVIII, § 15; Delaware Minimum Wage Act, 19 Del. Code §§ 901-914; Delaware Wage Payment and Collection Act 19 Del. Code §§ 1101-1115; Art. X, Section 24 Florida Constitution; Florida Minimum Wage Act, Fl. Stat. § 448.110 *et seq.*; Fla. Stat. §§ 532.01, 532.02; O.C.G.A. § 34-4-1 *et seq.*; O.C.G.A § 34-7-1 *et seq.*; Idaho Minimum Wage Law, Idaho Code § 44-1501 *et seq.;* Idaho Hours Worked Act, Idaho Code § 44-1201 *et seq.*; Idaho Code § 45-601 *et seq.*; Illinois Minimum Wage Law, 820 Ill. Comp. Stat. § 105 *et seq.*; Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. § 115 *et seq.*; Indiana Minimum Wage Law, Ind. Code § 22-2-2 *et seq.*; Ind. Code § 22-2-5-1 *et seq.*; Kansas Minimum Wage and Maximum Hours Law, Kan. Stat. Ann. § 44-1201 *et seq.*; Kansas Wage Payment Law, Kan. Stat. Ann. § 44-313 *et seq.*; the Kentucky Wage Hour Act, Ky. Rev. Stat., Ch. 337 *et seq.*; La. Rev. Stat. § 23:631 *et seq.*; Maryland Wage and Hour Law, Md. Lab. and Emp. Code Ann. § 3-400 *et seq.*; Maryland Wage Payment and Collection Law, Md. Lab. and Emp. Code Ann. §§ 3-500 *et seq.* 3-305, 3-424; Michigan Workforce Opportunity Wage Act, Mich. Comp. Laws § 408.411 *et seq.*; Michigan, Minimum Wage Law, Mich. Comp. Laws § 408.381 *et seq.*; Michigan Payment of Wages and Fringe Benefits Act, Mich. Comp. Laws § 408.471 *et seq.*; Minnesota Fair Labor Standards Act, Minn. Stat. § 177.21, *et seq.*; Minn. Stat. § 177.41, *et seq.*; Minn. Stat. § 181.01, *et seq.*; Minn. Stat. § 609.52, *et seq.*; Miss. Code Ann. §§ 71-1-1 *et seq.*; Mo. Rev. Stat. § 290.010 *et seq.,* Mo. Rev. Stat. § 290.500 *et seq.*; Montana Minimum Wage and Overtime Act, Mont. Code Ann. § 39-3-401 *et seq.*; Mont. Code Ann. § 39-3-201 *et seq.*; Mont. Code Ann. § 39-3-101 *et seq.*; Nebraska Wage and Hour Act, Neb. Rev. Stat. § 48-1201 *et seq*; Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. § 48-1228 *et seq.*; Nev. Rev. Stat. Ann. § 608.250 *et seq.*; Nev. Rev. Stat. Ann § 608.016 *et seq.*;, Nev. Const. Art. 15, § 16; New Mexico Minimum Wage Act, N.M. Stat. Ann. § 50-4-1 *et seq.*; North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.1 *et seq.*; the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code Chapter 4111; Section 34a, Article II Ohio Constitution;

5

Ohio Rev. Code § 4113.15; Tennessee Wage Regulations Act, Tenn. Code § 50-2-103; Texas Minimum Wage Act, Tex. Lab. Code § 62.001 *et seq.*; Tex. Lab. Code § 61.001 *et seq.*; Tex. Lab. Code § 63.001 *et seq.*; Utah Minimum Wage Act, Utah Code Ann. § 34-40-101 *et seq.*, Utah Code Ann. § 34-40-201 *et seq.*; Utah Code Ann. § 34-28-1 *et seq.*; Virginia Minimum Wage Act, Code of Va. § 40.1-28.8 *et seq.*; Virginia Wage Payment Law, Code of Va. § 40.1-29 *et seq.*; West Virginia Minimum Wage and Maximum Standard Hours, W. Va. Code § 21-5C-1 *et seq.*; West Virginia Wage Payment and Collection Act, W. Va. Code § 21-5-1 *et seq.*; Wis. Stat. § 104.001 *et seq.*; Wis. Stat. § 109.01 *et seq.*; Wis. Stat. § 103.001 *et seq.*; Wyo. Stat. § 27-4-101 *et seq.*; Wyo. Stat. § 27-4-201 *et seq.*; Wyo. Stat. § 27-4-401 *et seq.*; Wyo. Stat. § 27-4-501 *et seq.*; and all of their implementing rules and regulations and interpretive guidelines, and all claims for penalties, liquidated damages, interest, or restitution relating to or derivative of any or all of those laws.

The Court has, until the Settlement Fairness Hearing, enjoined any other action a Settlement Class Member may be pursuing against any Defendant to the extent that it is asserting any of the Settled Claims described above unless the Settlement Class Member opts out of the Litigation.

**THE LAWYERS REPRESENTING YOU**

**13.     Do I have a lawyer in this case?**

The Court decided that the following law firms represent the Settlement Class and are qualified to do so as Class Counsel:

| | |
|---|---|
| **Clif Alexander** | **Robert E. DeRose** (OH Bar No. 005214) |
| Texas Bar No. 24064805 | bderose@barkanmeizlish.com |
| clif@a2xlaw.com | **BARKAN MEIZLISH DEROSE COX, LLP** |
| **Austin W. Anderson** | 4200 Regent Street, Suite 210 |
| Texas Bar No. 24045189 | Columbus, Ohio 43219 |
| austin@a2xlaw.com | Telephone: (614) 221-4221 |
| **ANDERSON ALEXANDER, PLLC** | Facsimile: (614) 744-2300 |
| 101 N. Shoreline Blvd. | |
| Corpus Christi, Texas 78401 | |
| Telephone: (361) 452-1279 | |
| Facsimile: (361) 452-1284 | |

These law firms are experienced in handling similar cases and believe this settlement represents an excellent result for you and the other Settlement Class Members.

**14.     Do I need to get my own lawyer?**

You do not need to hire your own lawyer because Class Counsel are working on your behalf.  If you want your own lawyer, you will have to pay that lawyer.  For example, you can ask him or her to appear in Court for you if you want someone other than Class Counsel to speak for you.

**15.    How will Class Counsel and the Claims Administrator be paid?**

At the Final Approval Hearing, or at such other time as the Court may direct, Class Counsel intends to apply to the Court for an award of attorneys' fees plus costs in the amount of $4,878,376.85. Kroger has agreed to pay up to this amount subject to Court approval.

The parties also have agreed that [identify claims administrator] will serve as the Claims Administrator of the settlement. The fees and costs of the Claims Administrator will be paid by Kroger. The Claims Administrator's fees and costs in connection with the settlement are estimated to be approximately $220,000.00.

**ALTERNATIVES**

You have alternatives to accepting the Settlement Funds.

**16.    May I choose not to participate in the settlement?**

Yes, you may **CHOOSE NOT TO BE A MEMBER** of the Settlement Class. To do so, you must follow the procedure below to exclude yourself from the Settlement Class, that is "opt-out," if you do not wish to be a member of the Settlement Class. If you opt-out, you will not receive any of the benefits under the settlement, but your rights, if any, to sue the Released Persons will not be barred by the settlement. If you decide to opt-out, you must send a letter saying so to [claims administrator], [insert address], to Kroger's counsel [identify] and to Class Counsel [identify].

**17.    What must the opt-out letter include?**

The opt-out letter must (a) contain a reference to *Wilder, et al. v. The Kroger Co.*, United States District Court for the Southern District of Ohio, Civil Action No. 1:22-CV-00681; (b) include the name, address, telephone number, and social security number of the person seeking to be excluded; (c) include a statement that the person wishes to be excluded from the class; (d) be signed personally by the person who seeks to be excluded from the class or their authorized representative; and (e) be postmarked by _____ ___, 202_.

**18.    May I oppose the settlement without opting-out?**

Yes, you may **OPPOSE OR OBJECT** to the proposed settlement of the Litigation or any aspect of it that you think is unfair. **The Court will hold a hearing on _____ ___ at United States District Court for the Southern District of Ohio, [insert address], to determine whether the proposed settlement of the Litigation should be approved**. Each Class Member who wishes to object to the fairness, reasonableness or adequacy of the Settlement Agreement or any term of the proposed settlementshall provide to Class Counsel and Defendant's Counsel, postmarked no later than _____ ___, 202_, a written statement of the objection, as well as the specific reasons, if any, for each objection, including any legal support you wish to bring to the Court's attention and any evidence you wish the Court to consider in support of any objections. You must also file the objection with the Court by _____ ___, 202_. If you also intend

7

to appear at the hearing, you must also include notice of your intent to appear with your objection.

If you request to opt-out of the Litigation, you may not object to the proposed settlement or any part thereof.

**19.     What does my objection need to include?**

All written objections must be signed by the Settlement Class Member and must include: (1)  the Settlement Class Member's name, address, and telephone number;  (2)  a statement of the objection(s) and any supporting evidence and/or legal support the Class Member wishes the Court to consider; and (3)  the case name and number of the Litigation.

## GETTING MORE INFORMATION

**20     Are more details available?**

Yes, if you believe that you need more details in order to make a decision, you can call the Claims Administrator, [name of claims administrator] toll-free at [_____] or email the claims administrator at [email address].

**21.     Can I examine the Court's file?**

Yes, you may **EXAMINE THE COURT'S FILE** in the clerk's office at the United States District Court for the Southern District of Ohio, [insert address].

**22.     Can I speak to Class Counsel?**

Yes, for more complete details about the Litigation and the proposed settlement, or if you want to review the Settlement Agreement, you may **WRITE** to, **EMAIL** or **TELEPHONE** the Class Counsel at their contact information in paragraph 13, above.

## PLEASE DO NOT CONTACT THE JUDGE

8

# Exhibit C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **BRANDON WILDER,** *individually and* | : | |
| *on behalf of all others similarly situated,* | : | **Case No. 1:22-cv-681** |
| | : | |
| *Plaintiffs,* | : | |
| | : | **Judge Jeffrey P. Hopkins** |
| v. | : | |
| | : | |
| **THE KROGER CO.,** | : | |
| | : | |
| *Defendant.* | : | |

**[PROPOSED] PRELIMINARY APPROVAL ORDER**

Plaintiffs Brandon Wilder, Donald Austin, Kacy Ebersole, and Otis Woods (together "Plaintiffs") having made an application pursuant to Rule 23(e) of the Federal Rules of Civil Procedure for entry of an order (a) preliminarily approving the settlement of the litigation pursuant to the Settlement Agreement filed November 26, 2024, (b) conditionally certifying a settlement class under Federal Rule of Civil Procedure 23 and a collective action under Section 216(b) of the Fair Labor Standards Act ("FLSA") for purposes of proceedings in connection with the final approval of the Settlement Agreement, (c) approving the form of the Class Notices and directing the manner of delivery thereof, (d) approving Anderson Alexander, PLLC and Barkan Meizlish DeRose Cox, LLP as Class Counsel; (e) approving Plaintiffs as representatives of the settlement class, (f) approving [claims administrator] as the Claims Administrator, and (g) scheduling a hearing to consider the fairness of the Settlement Agreement pursuant to Federal Rule of Civil Procedure 23 and *Lynn's Food Stores, Inc. v. United States*, 679 F. 2d 1350 (11th Cir. 1982), and upon consideration of the Settlement Agreement,

IT IS HEREBY ORDERED THAT:

1

1.      This Order incorporates by reference the definitions in the Settlement Agreement, and all terms defined herein shall have the same meaning as set forth in the Settlement Agreement.

2.      The Settlement Agreement is hereby PRELIMINARILY APPROVED for notice purposes as appearing on its face to be fair, reasonable, and adequate and to have been the product of serious, informed, and extensive arm's-length negotiations between the Plaintiffs and Defendant The Kroger Co. ("Defendant") (collectively with the Plaintiffs, the "Parties").  In making this preliminary finding, the Court considered the nature of the claims, the relative strength of the Plaintiffs' claims, the amounts and kinds of benefits to be paid if the settlement is approved after notice to the Settlement Class, the allocation of settlement proceeds among the Class Members, and the fact that a settlement represents a compromise of the Parties' respective positions rather than the result of a finding of liability at trial.  Accordingly, the Court preliminarily finds that the Settlement Agreement was entered into in good faith.

3.      The Court finds preliminarily, and for purposes of proceeding pursuant to Federal Rule of Civil Procedure 23, for settlement purposes only and on approval of the Settlement Agreement only, that the number of Class Members is sufficiently numerous, the Class Members are ascertainable based on the Defendant's records and the Deloitte Analysis, the Plaintiffs' claims are typical of those in the class and that there is adequate and fair representation by the Plaintiffs and Class Counsel.

4.      Accordingly, for purposes of this Settlement only, the Court hereby certifies the following settlement classes pursuant to Federal Rule of Procedure 23:

**Class A** includes individuals employed by Kroger as non-exempt employees from September 1, 2022 to May 31, 2023, in Arizona, California, Colorado, Illinois, Maine, Maryland, Massachusetts, New Jersey, and Virginia who experienced an instance of underpayment within a given pay period for the hours they worked (or that they took as

2

PTO) in that pay period (a "Negative Variance") or experienced an over-deduction from their wages relating to benefits (an "Over Deduction")  as identified in the Deloitte Analysis.

**Class B** includes all individuals employed by Kroger as non-exempt employees from September 1, 2022 to May 31, 2023, in every other state where Kroger does business, excluding Oregon and Washington, who experienced an instance of underpayment within a given pay period for the hours they worked (or that they took as PTO) in that pay period (a "Negative Variance") or experienced an over-deduction from their wages relating to benefits (an "Over Deduction")  as identified in the Deloitte Analysis.

5.      The Court hereby APPOINTS Anderson Alexander, PLLC and Barkan Meizlish DeRose Cox, LLP as Class Counsel for purposes of this Settlement.

6.      The Court hereby APPROVES Plaintiffs as representative plaintiffs of the Settlement Class for settlement purposes only.

7.      The Court hereby APPROVES Rust Consulting, Inc., as Claims Administrator for the purpose of this Settlement.

8.      A hearing (the "Settlement Fairness Hearing") is hereby SCHEDULED to be held before the Court on _____ at __:__ am/pm in the United States District Court for the Southern District of Ohio – Western Division, Potter Stewart U.S. Courthouse, Room ___, 100 East Fifth Street, Cincinnati, Ohio 45202. The Settlement Fairness Hearing is scheduled at least 100 days from the date of this Order in accordance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(d).  In accordance with Fed.R.Civ.P. 23(e), the Settlement Fairness Hearing is scheduled for the following purposes:

a.      to determine finally whether this litigation satisfies the applicable prerequisites for class action treatment of a settlement class;

b.      to determine whether the proposed Settlement Agreement is fair, reasonable, and adequate and should be granted final approval by the Court;

c.      to determine whether the Final Approval Order as provided under the

3

Settlement Agreement should be entered, and to determine whether the Released Parties should be released of and from the Plaintiffs' Settled Claims and the Settled Claims as provided in the Settlement Agreement;

      d.      to determine whether the proposed plan of allocation of the Net Settlement Amount is fair, reasonable, and adequate and should be approved by the Court;

      e.      to finally determine whether Class Counsel's application for an award of attorneys' fees plus litigation costs is fair, reasonable, and adequate and should be approved by the Court;

      f.      to finally consider Rust Consulting, Inc.'s Claims Administration costs; and

      g.      to rule upon such other matters as the Court may deem appropriate.

9.      The form of the Class Notices appended to the Settlement Agreement in Exhibit B is hereby APPROVED. No later than thirty (30) days after the date of this Order, the Claims Administrator will send via first class mail with address service requested the Class Notice to Class Members. The Claims Administrator shall conduct a National Change of Address ("NCOA") update before mailing the Class Notice.

10.      Defendant shall provide to the Claims Administrator an electronic database containing name and address of each Settlement Class Member, in a format and with sufficient time so that the Claims Administrator can satisfy its duties in preparing the Class Notice. The Claims Administrator shall maintain the data as private and confidential.

11.      The Court finds that the Class Notice constitutes the best notice practicable under the circumstances and is in full compliance with Rule 23 of the Federal Rules of Civil Procedure, Section 216(b) of the FLSA, the laws of the United States Constitution, and the requirements of due process. The Court further finds that the Class Notice fully and accurately informs the

Settlement Class Members of all material elements of the proposed settlement, of the Settlement Class Members' right to be excluded from the Class, and of each Class Member's right and opportunity to object to the settlement.

12.     The Court hereby APPROVES the proposed procedure for opting out of the Class. The Opt-Out Request must (a) be in writing, (b) request exclusion from the Settlement Class, and (c) be post-marked no later than sixty (60) days following the date the Claims Administrator mailed the Class Notices to the Settlement Class Members. The date of the postmark on the return-mailing envelope shall be the exclusive means used to determine whether a request for exclusion has been timely submitted.  The Opt-Out Request must contain the name, address, social security number, and telephone number of the person requesting exclusion, and must be personally signed by the Class Member who seeks to opt out.  No Class Member may opt out by a request signed by an actual or purported agent or attorney acting on behalf of a group of Settlement Class Members. No Opt-Out Request may be made on behalf of a group of Class Members.  Any member of the Class who requests exclusion from the settlement will not be entitled to any share of the settlement and will not be bound by the Settlement Agreement or have any right to object, appeal, or comment thereon.  Members of the Settlement Class who fail to submit a valid and timely request for exclusion shall be bound by all terms of the Settlement Agreement and the Final Judgment, including the release of all Settled Claims, regardless of whether they otherwise have requested exclusion from the settlement.

13.     All reasonable costs of settlement and claims administration, including the mailing of Class Notice, shall be paid for as provided in the Settlement Agreement.

14.     To object, a Settlement Class Member must timely file with the Court a written objection and must simultaneously serve copies of the written objection and notice of intent to

appear on the Parties' Counsel.  To be considered timely, the written objection must be filed with the Court and served upon Defendant's Counsel and Class Counsel no later than sixty (60) days following the date the Claims Administrator mailed a Class Notice to the Settlement Class Member, unless otherwise Ordered by the Court.  If the Settlement Class Member intends to appear at the Final Approval Hearing, the Settlement Class Member must also file a notice of intent to appear at the Final Approval Hearing.  The filing date of any written objection shall be deemed the exclusive means of determining if an objection is timely, unless otherwise determined by the Court.  The written objection must state: (a) the full name, address, and telephone number of the person objecting and (b) the basis for the objection, including any legal support and any evidence the Settlement Class Member wishes the Court to consider in support of his or her objection.  Any person or entity who fails to make an objection in the manner specified in this paragraph shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement Agreement.

15.     Plaintiffs shall file motions for final approval of the settlement agreement and requests for fees, costs, and awards no later than 14 days before the Settlement Fairness Hearing.

16.     Injunction.  Until the Settlement Fairness Hearing, the Settlement Class Members, unless they request exclusion from this Class Action, are barred and enjoined from (i) filing, commencing, prosecuting, maintaining, intervening in, participating in (as class members or otherwise), or receiving any benefits or other relief from, any other claim, lawsuit, arbitration, or administrative, regulatory, or other proceeding or order in any jurisdiction to the extent it is based on the Settled Claims; and (ii) organizing or soliciting the participation of any Class Members into a separate class for purposes of pursuing as a purported class action (including by seeking to amend a pending complaint to include class allegations, or by seeking class certification in a pending

6

action) any claim, lawsuit, or other proceeding based on the Settled Claims.  The Court finds that issuance of this injunction is necessary and appropriate in aid of the Court's jurisdiction over the Action and to protect and effectuate this Order.

17.     It is further ordered that pending further order of this Court, all proceedings in this matter except those contemplated herein and as part of the settlement are stayed.

18.     Jurisdiction is hereby retained over this Class Action and the Parties to the Class Action, and each of the Settlement Class Members, for all matters relating to this Class Action, the Settlement Agreement, including (without limitation) all matters relating to the administration, interpretation, effectuation, and/or enforcement of the Settlement Agreement and this Order.


Dated: _____          _____
                                                            Judge

# Exhibit D

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **BRANDON WILDER,** *individually and* | : | |
| *on behalf of all others similarly situated,* | : | **Case No. 1:22-cv-681** |
| | : | |
| *Plaintiffs,* | : | |
| | : | **Judge Jeffrey P. Hopkins** |
| v. | : | |
| | : | |
| **THE KROGER CO.,** | : | |
| | : | |
| *Defendant.* | : | |

**[PROPOSED] FINAL JUDGMENT**

WHEREAS Plaintiffs and Defendant entered into a Settlement Agreement (the "Settlement Agreement"), on November 26, 2024, to settle this class action and collective action lawsuit (the "Class Action"); and,

WHEREAS the Court entered an Order dated _____ (the "Preliminary Approval Order"), preliminarily approving the settlement consistent with the requirements of the Fair Labor Standards Act and Rule 23 of the Federal Rules of Civil Procedure, certifying two classes for settlement purposes (the "Settlement Class") and ordering notice be sent to Settlement Class Members, scheduling a Settlement Fairness Hearing for _____, and providing Settlement Class Members with an opportunity either to participate in the settlement, exclude themselves from the Settlement Class, or object to the proposed settlement; and,

WHEREAS the Court held a Settlement Fairness Hearing on _____, to determine whether to give final approval to the proposed settlement; and

WHEREAS the Court makes the following combined Findings of Fact and Conclusions of Law in support of approval of the proposed settlement;

1

NOW, THEREFORE, based on the submissions of the Parties, upon reviewing all prior proceedings, and on the evidence adduced at the Settlement Fairness Hearing, it is hereby ORDERED, ADJUDGED AND DECREED as follows:

1.  Incorporation of Other Documents. This Final Order Approving Class Settlement (the "Final Approval Order") incorporates herein the Settlement Agreement. Unless otherwise provided herein, all capitalized terms in this Final Approval Order shall have the same meaning as set forth in the Settlement Agreement.

2.  Jurisdiction. Because adequate notice has been disseminated and all Settlement Class Members have been given the opportunity to opt-out of the Class Action, the Court has personal jurisdiction with respect to the claims of all Settlement Class Members, except for those who have properly requested exclusion from this Class Action, who are identified on Exhibit A hereto. The Court has subject-matter jurisdiction over the Class Action, including jurisdiction to approve the proposed settlement, grant final certification of the Settlement Class, and dismiss the Class Action.

3.  Final Class Certification. The Settlement Classes are certified for settlement purposes only, the Court finding that the Settlement Class satisfies all applicable requirements of Rule 23 of the Federal Rules of Civil Procedure and due process. The Settlement Classes are defined as follows:

> Class A includes individuals employed by Kroger as non-exempt employees from September 1, 2022 to May 31, 2023, in Arizona, California, Colorado, Illinois, Maine, Maryland, Massachusetts, New Jersey, and Virginia who experienced an instance of underpayment within a given pay period for the hours they worked (or that they took as PTO) in that pay period (a "Negative Variance") or experienced an over-deduction from their wages relating to benefits (an "Over Deduction") as identified in the Deloitte Analysis.

> Class B includes individuals employed by Kroger as non-exempt employees from September 1, 2022 to May 31, 2023, in every other state where Kroger does business, excluding Oregon and Washington, who experienced an instance of underpayment within a given pay period for the hours they worked (or that they took as PTO) in that pay period (a "Negative Variance")

or experienced an over-deduction from their wages relating to benefits (an "Over Deduction")  as identified in the Deloitte Analysis.

4.      Adequacy of Representation.  Anderson Alexander, PLLC and Barkan Meizlish DeRose Cox, LLP as Class Counsel have fully and adequately represented the Settlement Class for purposes of entering into and implementing the settlement and have satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure.  The Plaintiffs are likewise adequate representatives of their respective classes.

5.      Class Notice.  The Court finds that the Class Notice and distribution to Settlement Class Members have been implemented pursuant to the Settlement Agreement and this Court's Preliminary Approval Order and that the Class Notice:

a)      constitutes the best practicable notice to Settlement Class Members under the circumstances of the Class Action;

b)      constitutes notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of (i) the pendency of the Class Action; (ii) the terms and conditions of the settlement and their rights under the settlement, (iii) their right to exclude themselves from the Settlement Class and the proposed settlement; (iv) their right to object to any aspect of the proposed settlement (including final certification of the Settlement Class, the fairness, reasonableness and adequacy of the proposed settlement, the adequacy of the Settlement Class's representation by the Plaintiffs and Class Counsel, and/or the award of attorneys' fees and costs), (v) their right to appear at the Settlement Fairness Hearing, either on their own behalf or through counsel hired at their own expense, if they did not exclude themselves from the Settlement Class, and (vi) the binding effect of the Orders and Judgment in the Class Action, whether favorable or unfavorable, on all persons who do not request exclusion from the Settlement Class;

c)      constitutes notice that was reasonable, adequate, and sufficient notice to all persons entitled to be provided with notice;

d)      constitutes notice that fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process; and

e) this settlement will have no binding effect upon, and provide no res judicata preclusion to, those individuals who opted-out.

6. **Final Settlement Approval.** The terms and provisions of the Settlement Agreement have been entered into in good faith, and are the product of arms-length negotiations by experienced counsel who have done a meaningful investigation of the claims in the dispute. No person objected to the Settlement Agreement. The Settlement Agreement and all of its terms are fully and finally approved as fair, reasonable, and adequate, and in the best interests of each of the Parties and the Settlement Class. The Parties are hereby directed to implement and consummate the Settlement Agreement according to its terms and provisions.

7. **Class Action Fairness Act.** All notice requirements of the Class Action Fairness Act, 28 U.S.C. § 1715 *et seq*., have been complied with and there have been no objections from any state or federal officials regarding the Settlement Agreement.

8. **Binding Effect.** The terms of the Settlement Agreement, and the Final Judgment are binding on the Eligible Class Members, as well as their heirs, executors and administrators, successors and assigns, and those terms shall have *res judicata* and other preclusive effect in all pending and future claims, lawsuits or other proceedings maintained by or on behalf of any such persons, to the extent those claims, lawsuits or other proceedings involve matters that were or could have been raised in the Class Actions and are encompassed by the Releases set forth in the Settlement Agreement.

9. **Releases.** The Eligible Class Members shall be bound by the Release of Settled Claims which is incorporated herein in all respects. The Release of Settled Claims is effective as of the date of this Final Judgment. The Court expressly adopts all defined terms in the Settlement Agreement and the Release of Settled Claims,

10. **Permanent Injunction.** The Eligible Class Members are barred and enjoined from (i) filing, commencing, prosecuting, maintaining, intervening in, participating in (as class members or otherwise), or receiving any benefits or other relief from, any other claim, lawsuit, arbitration, or administrative, regulatory or other proceeding or order in any jurisdiction based on the Settled

4

Claims; and (ii) organizing or soliciting the participation of any Class Members into a separate class for purposes of pursuing as a purported class action (including by seeking to amend a pending complaint to include class allegations, or by seeking class certification in a pending action) any claim, lawsuit, or other proceeding based on the Settled Claims.  The Court finds that issuance of this permanent injunction is necessary and appropriate in aid of the Court's jurisdiction over the Action and to protect and effectuate the Court's Final Judgment.

11.     Enforcement of Settlement.  Nothing in this Judgment shall preclude any action to enforce the terms of the Settlement Agreement.

12.     Attorneys' Fees and Expenses.  Class Counsel are hereby awarded attorneys' fees and expenses in the total amount of $4,878,376.85. Such fees and expenses are to be paid pursuant to the conditions set forth in the Settlement Agreement.  Defendant shall not be required to pay for any other attorneys' fees and expenses, costs, or disbursements incurred by Class Counsel or any other counsel representing the Plaintiffs or Settlement Class Members, or incurred by the Plaintiffs or Class Members, or any of them, in connection with or related in any manner to the Class Action, the settlement of the Class Action, the administration of such settlement, and/or the Settled Claims.

13.     Settlement Administration Costs.  The Court finds that Settlement Administration Costs estimated not to exceed $220,000.00, to be paid by Defendant to the Claims Administrator, is reasonable and appropriate.  Settlement Administration Costs are to be paid pursuant to the conditions set forth in the Settlement Agreement.

14.     Modification of Settlement Agreement.  The Parties are hereby authorized, upon approval of the Court, to agree to and adopt such amendments to, and modifications and expansions of, the Settlement Agreement, as are in writing and signed by the Parties' counsel and are consistent with this Judgment and do not limit the rights of Eligible Class Members under the Settlement Agreement.

15.     Retention of Jurisdiction.  The Court has jurisdiction to enter this Final Judgment. This Court expressly retains jurisdiction as to all matters relating to the administration,

consummation, enforcement and interpretation of the Settlement Agreement and of this Final Judgment, and for any other necessary purpose, including, without limitation:

        a)    enforcing the terms and conditions of the Settlement Agreement and resolving any disputes, claims or causes of action in the Class Action that, in whole or in part, are related to or arise out of the Settlement Agreement or this Final Judgment;

        b)    entering such additional Orders as may be necessary or appropriate to protect or effectuate the Court's Final Judgment approving the Settlement Agreement, and permanently enjoining Eligible Class Members and Participating Class Members from initiating or pursuing related proceedings, or to ensure the fair and orderly administration of this settlement; and

        c)    entering any other necessary or appropriate Orders to protect and effectuate this Court's retention of continuing jurisdiction.

16.     **No Admissions.** Neither this Final Judgment nor the Settlement Agreement (nor any other document referred to here, nor any action taken to carry out this Final Judgment) is, may be construed as, or may be used as, an admission or concession by or against Defendant of the validity of any claim or any actual or potential fault, wrongdoing or liability. Entering into or carrying out the Settlement Agreement, and any negotiations or proceedings related to it, shall not be construed as, or deemed to be evidence of, an admission or concession as to Defendant's denials or defenses and shall not be offered or received in evidence in any action or proceeding against any party hereto in any court, administrative agency, or other tribunal for any purpose whatsoever, except as evidence of the settlement or to enforce the provisions of this Final Judgment and the Settlement Agreement; provided, however, that this Final Judgment, and the Settlement Agreement may be filed in any action against or by Defendant to support a defense of res judicata, collateral estoppel, release, waiver, good-faith settlement, judgment bar or reduction, full faith and credit, or any other theory of claim preclusion, issue preclusion or similar defense or counterclaim.

17.     This Court hereby enters final judgment, dismissing this action with prejudice according to the terms set forth herein

IT IS SO ORDERED this _____ day of _____, 202_.


_____
Judge Jeffrey P. Hopkins

9/26/2023 46115516