**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **BRANDON WILDER,** *et al. individually* | : | |
| *and on behalf of all others similarly situated,* | : | **Case Nos. 1:22-cv-681,** |
| | : | **1:23-cv-287,** |
| *Plaintiffs,* | : | **1:24-cv-521.** |
| | : | |
| v. | : | **Judge Jefferey P. Hopkins** |
| | : | |
| **THE KROGER CO.,** | : | |
| | : | |
| *Defendant.* | : | |

---

**PLAINTIFFS' UNOPPOSED MOTION AND MEMORANDUM IN
SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

---

Plaintiffs Brandon Wilder, Donald Austin, Otis Wood, and Kasey Ebersole ("Plaintiffs" or "Representative Plaintiffs"), respectfully move this Court to finally approve the Class Action Settlement Agreement ("Agreement") entered into between Representative Plaintiffs and Defendant The Kroger Co. ("Kroger"), and to certify, for settlement purposes only, the proposed classes pursuant to Federal Rule of Civil Procedure ("Rule") 23. Kroger does not oppose the filing of this Motion.

## I.    PROCEDURAL SUMMARY

On November 17, 2022, Plaintiff Brandon Wilder filed this action against Kroger alleging violations of the FLSA and Kentucky state law ("*Wilder* Action"). Though Wilder was the first to file, four additional class action lawsuits were filed against Kroger seeking relief from damages relating to the glitch.[1] Three of the five actions (the *Wilder, Austin,* and *Ebersole* Actions) are now consolidated

---

[1] Those actions include: *Woody, et al. v. Fred Meyer Stores, Inc.*, No. 3:22-cv-1800 (D. Ore.) ("Oregon Action"); *Sapphire v. Fred Meyer Stores, Inc.*, No. 2:22-cv-01795-JCC (W.D. Wash.) ("Washington Action"); *Austin, et al., v. Kroger Limited Partnership I Mid Atlantic Marketing Area*, Case

before this Court for resolution on a class-wide basis ("Consolidated Actions"). The Oregon and Washington Actions are not affected by the Agreement and individuals who worked for the Kroger family of companies in Oregon and Washington have been excluded from the defined classes.

Counsel for Plaintiffs in the Consolidated Actions conferred and agreed to attempt to settle the Consolidated Actions on a global basis. To that end, they obtained stays of their respective actions and retained nationally known wage and hour mediator, Michael Russell, to serve as the third-party neutral. After the provision of data and other information from Kroger and upon further investigation by Plaintiffs, on June 14, 2023, the Parties participated in a full-day in-person mediation session facilitated by Mr. Russell. The Parties were able to reach a settlement in principle of the claims in the Class Actions, which is reflected in the Agreement before the Court.

Though the Parties agreed to the terms of the Agreement at mediation, they waited for Deloitte to complete its audit related to the glitch. Once Deloitte finalized its audit, Class Counsel were provided an opportunity to review the audit and question its findings. Kroger diligently worked with counsel to respond to each query until all parties were satisfied with the findings in the Deloitte audit and were able to move forward and formalize the Agreement before the Court.

Upon execution of the Agreement on September 16, 2024, the Parties implemented the action plan in the Agreement and 1) transferred the *Ebersole* Action to the Southern District of Ohio;[2] 2) moved to consolidate the *Wilder, Austin,* and *Ebersole* Actions; and 3) filed an amended complaint to align the pleadings with the terms of the settlement.

On November 26, 2024, Plaintiffs moved this Court for an Order certifying, for settlement purposes only, a settlement class pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3). ECF

---

No. 1:23-cv-00287 (E.D. Va.) ("*Austin* Action"). *Ebersole v. Dillon Companies, LLC*, No. 1:23-cv-00845 (D. Colo.) ("*Ebersole* Action").

[2] The *Austin* Action had previously been transferred to the Southern District of Ohio.

No. 139. On February 20, 2025, this Court granted the motion for preliminary approval (ECF No. 142) as follows:

1. Finding the class action settlement memorialized in the Agreement fell within the range of reasonableness and preliminarily approving the same;

2. Conditionally certifying, for settlement purposes only, two (2) Rule 23 Classes consisting of "all individuals employed by Kroger as non-exempt employees from September 1, 2022 to May 31, 2023, who experienced an instance of underpayment within a given pay period for the hours they worked (or that they took as PTO) in that pay period (a "Negative Variance") or experienced an over-deduction from their wages relating to benefits (an "Over Deduction") as identified in the Deloitte Analysis.[3]

4. Finding, for settlement purposes only, that the requirements of Federal Rule of Civil Procedure 23(a), and Federal Rule of Civil Procedure 23(b)(3) are satisfied, with the exception of the manageability requirement of Rule 23(b)(3), which the need not be addressed for purposes of settlement;

5. Appointing, for settlement purposes only, Brandon Wilder, Donald Austin, Otis Wood, and Kasey Ebersole as Representative Plaintiffs

6. Appointing, for settlement purposes only Austin Anderson and Clif Alexander of ANDERSON ALEXANDER, PLLC and Robert E. DeRose of BARKAN MEIZLISH DEROSE COX, LLP as Class Counsel;

7. Appointing Rust Consulting, Inc. as Claims Administrator;

8. Approving as to form and content, the Notice of Class Action Settlement ("Notice");

9. Authorizing the timeline and dissemination of the approved Notice by mail to the members of the Class as provided in the Agreement and setting deadlines to respond; and

10. Scheduling the Final Approval Hearing and setting briefing deadlines.

*See* ECF No. 142.

Class Representatives now request that, pursuant to the schedule set by the court in its February 20, 2025, Order (ECF No. 142), and in light of the facts and legal arguments articulated in

---

[3] Class A includes Class Members who worked for Kroger in Arizona, California, Colorado, Illinois, Maine, Maryland, Massachusetts, New Jersey, and Virginia. Class B includes the remaining Class Members who worked for Kroger within the United States, specifically excluding those individuals who worked for the Kroger family of companies in Oregon and/or Washington.

this Motion, the Court issue an Order finally certifying the requested settlement Class and approving the agreement.

## II. ISSUES PRESENTED

By this Unopposed Motion, the Representative Plaintiffs ask the Court to: (1) approve the Agreement as fair, reasonable, adequate, and in the best interests of the Class Members; (2) determine the Class Members received adequate notice of this settlement and the Notice and notice process comported with the Due Process Clause of the United States Constitution; (3) determine for settlement purposes only, that the requirements for class certification under Rule 23(a) and (b)(3) are satisfied; (4) approve the requested Enhancement Payments for Representative Plaintiffs and Enhancement Payment Recipients; (5) approve Rust Consulting, Inc.'s expenses for administering the settlement, including the distribution of Notice and the settlement funds, as reasonable; and (6) dismiss this lawsuit with prejudice and enter final judgment.

## III. SUMMARY OF SETTLEMENT ADMINISTRATION

### A. Notice Distribution to Class Members

Upon preliminary approval, Class Counsel provided Rust the Court's preliminary approval order, the Agreement, and the text for the Notice Packet. *See* Declaration of Abigail Schwartz for Rust, attached as Exhibit 1, ¶ 7. Rust prepared a draft of the formatted Notice Packet, which was approved by the Parties' Counsel prior to mailing. *Id.* On February 25, 2025, Rust received the Class data file from Counsel for Kroger, which contained the name, social security number, last known mailing address, last known e-mail address, last known phone number, date of birth, and the number of weeks worked per state for each Class Member during the respective periods ("Class List"). *Id.* at ¶ 8. The Class List contained data for 47,018 individuals. *Id.* at ¶ *Id.*

Rust processed all 47,018 names and addresses contained in the Class List against the National Change of Address ("NCOA") database maintained by the United States Postal Service ("USPS") for

purposes of updating and confirming the mailing addresses of the Class Members before mailing of the Notice Packet. *Id.* at ¶ 9. On March 24, 2025, Rust distributed the Notice Packet via U.S First Class Mail, to all 47,018 individuals contained in the Class List.

After the initial distribution, Rust received 2,575 Class Notices that were returned as undeliverable and 405 Class Notices were returned with a forwarding address. *Id.* at ¶¶ 11–12. For the Class Notices returned with forwarding addresses, Rust promptly remailed them to the designated address. *Id.* at ¶12. For the Class Notices initially returned as undeliverable, Rust performed address traces for those Class Members utilizing their previous address, name, and social security number. *Id.* at ¶ 11. Through tracing, Rust obtained 1,945 more current addresses and promptly remailed the Notice Packet to those Class Members. *Id.* Of the remailed notices, fourteen (14) were returned as undeliverable a second time. *Id.* As of the date of this filing, 644 Class notices remain undeliverable.

**B.     Class Member Response to Notice**

The Class Members had a strong positive response to the Notice Packet. Of the 47,046 Class Members[4], only eleven (11) Class Members exercised their right to opt-out of the settlement. With thirty-one (31) self-identifying Class Members, a total of 47,035 Eligible Class Members will participate in the settlement. *Id.* at ¶ 13. The participate rate is over 99.9%. Most importantly, however, no Class Member objected to the Settlement. *Id.* at 14. The below chart contains the relevant figures pertaining to the notice process:

---

[4] Thirty-One (31) self-identifying individuals requested inclusion into the Class. Class Counsel and Counsel for Kroger agreed to include them as Class Members. Because the self-identifying individuals did not appear in the Deloitte Analysis, Kroger increased the amount of funds available for settlement by $8,474.16 to pay each self-identifying Class Member the average negative variance experienced by Class Members.

| Total Class Members | 47,046 | 100% |
|---|---|---|
| Class Members on Class List | 47,018 | 99.94% |
| Self-Identifying Class Members | 31 | 0.07% |
| Notice Packets Successfully Mailed to Class Members on Class List | 46,374 | 98.60% |
| Opt-Out Requests Received | 11 | 0.02% |
| Objections Received | 0 | 0% |
| Total Settlement Class Members | 47,035 | |

## C.  Settlement Distribution

Upon Final Approval of the Agreement, Rust will be responsible for calculating the Settlement Awards and distributing the Settlement Checks to the Eligible Class Members. Based on the Agreement, and subject to Court approval, the distributions from the Gross Settlement Amount are as follows:

| | |
|---|---|
| Total Amount of Negative Variances and Over Deductions Paid by Kroger | $10,547,841.84 |
| Additional Payments to Class Members/ Funds Available for Settlement | $10,335,768.80 |
| **Total Settlement Value** | **$20,883,610.64** |
| Attorneys' Fees and Costs | ($4,878,376.85) |
| Costs of Claim Administration | ($175,000.00) |
| Enhancement Payments | ($35,000.00) |
| California LWDA (PAGA Expenses) | ($2,500.00) |
| **Net Funds Available for Disbursement** | **$5,244,891.95** |

*See* ECF No. 143, ¶¶ 21–22, 33. In addition to the initially unpaid/underpaid wages owed (and now paid) to the Class Members (the Total Amount of Negative Variances and Over Deductions Paid by Kroger), the Additional Payments to Class Members/Funds Available for Settlement are $10,335,768.80.  After payment of the requested attorneys' fees and costs, payments to PAGA, Enhancement Payments, and the costs of claims administration, $5,244,891.95 remains for distribution between the Eligible Class Members.

The Claims Administrator will divide the Settlement Fund so that Class A Members will receive approximately 62% of their Negative Variances and Overpayments as identified in the Deloitte Analysis and Class B Members will receive approximately 42% of their Negative Variances and Overpayments as identified in the Deloitte Analysis. *See* ECF No. 143, ¶ 49(c). The Claims Administrator will then calculate the amount of the Settlement Sums by ensuring that each Eligible Class Member receives his or her *pro rata* percentage of the Settlement Fund based on their individual Negative Variances. *See* ECF No. 143, ¶ 49(c).

Rust will be responsible for mailing the Settlement Check(s) to the Eligible Class Members within thirty (30) days of the Effective Date. *See* ECF No. 143, ¶ 56(g). The Settlement Class Members shall have ninety (90) days to negotiate their Settlement Checks. *See id.* at ¶ 56(i). Any unclaimed settlement amounts remaining after the expiration of the 90-day period will revert to Kroger. *Id.*

## D.    Enhancement Payment

"Service awards are 'efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class.'" *In re Wasserstrom Holdings, Inc. Data Breach Litig.*, No. 2:23-CV-2070, 2025 WL 1563548, at *9 (S.D. Ohio Apr. 11, 2025) (quoting *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)). "[C]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010).

In return for the risk they incurred and the services they rendered to the Class Members, and as compensation for their separate general releases, subject to court approval, the Enhancement Payment Recipients (including Representative Plaintiffs, Deborah Winston, Sharon Simpson, and Lori

Dalton)[5] will be paid Enhancement Payments of $5,000.00 each, in addition to their proportionate shares of the Settlement Fund. *See id.*, ¶¶ 17, 45(d). Service payments such as these "are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff." *Quow v. Accurate Mech. Inc.*, No. 1:15-CV-09852 (KHP), 2018 WL 3368673, at *4 (S.D.N.Y. July 10, 2018). These payments are "particularly appropriate in the employment context." *Id.*

E.     **Administration Expenses**

Rust has undertaken the administration of this settlement and seeks approval of administration expenses not to exceed $175,000.00. *See* Exhibit 1, ¶ 16. Rust has extensive experience in class action matters, having provided services in over 8,500 cases, of which 4,000 involved Labor & Employment claims. *See id.* at ¶ 2. Rust's duties as the Claims Administrator in this action include: a) preparing, printing and mailing the Class Notice; b) tracking exclusions and objections; c) drafting and mailing Settlement Award Checks; d) any other tasks requested by the Parties or the Court relating to the administration of this settlement. *Id.* at ¶ 3.

F.     **Attorneys' Fees**

Pursuant to Federal Rule of Civil Procedure 23(h), Class Counsel will file a motion for an award of attorneys' fees and litigation expenses. By that motion, Class Counsel will request a Cost and Fee Award of $4,878,376.85 (or 23%) of the Total Settlement Value.

---

[5]Deborah Winston, Sharon Simpson, and Lori Dalton were previously identified as Named Plaintiffs in the *Austin* Action.

## V.  ARGUMENT & AUTHORITIES

**A.  The Standards and Procedures for Final Approval of Class Action Settlements Under Rule 23 Have Been Satisfied.**

"The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." FED. R. CIV. P. 23(e)*; Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 617 (1997). Rule 23(e) requires approval to ensure that the settlement is fair, reasonable, and adequate. FED. R. CIV. P. 23(e)(2). The law favors compromise and settlement of class actions. *Salinas v. U.S. Xpress Enters., Inc.*, No. 113CV00245TRMSKL, 2018 WL 1477127, at *2 (E.D. Tenn. Mar. 8, 2018), report and recommendation adopted, No. 1:13-CV-245, 2018 WL 1475610 (E.D. Tenn. Mar. 26, 2018) (citing *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982); *Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*, 921 F.2d 1371, 1388 (8th Cir. 1990) (in a class action context, providing that "[a] strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor"); *Ortega v. Uponor, Inc. (In re Oponor, Inc.)*, 716 F.3d 1057, 1063 (8th Cir. 2013) (in a class action context, providing that "[a] settlement agreement is presumptively valid."); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged"); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotations omitted); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation."); NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.")).

When deciding whether to approve a proposed settlement, the Court must consider whether the settlement settlements the threshold requirements of Rule 23(a) and (b) and decide it is "fair, reasonable, and adequate" according to Rule 23(e)(2).[6]

In analyzing whether the Agreement is "fair, reasonable, and adequate" district courts in the Sixth Circuit look to the following factors:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*In re Wasserstrom Holdings,* 2025 WL 1563548, at *5 (quoting *Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC*, 636 F.3d 235, 244 (6th Cir. 2011) (citations and internal quotation marks omitted)). District courts "enjoy[ ] wide discretion in assessing the weight and applicability of these factors." *Id.* (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205–06 (6th Cir. 1992)).

### 1. Risk of Fraud or Collusion

There is no evidence—or even a suggestion—that the Agreement before this Court was the product of fraud or collusion. *In re Wasserstrom Holdings, Inc.*, 2025 WL 1563548, at *6 (citing *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006) ("Courts presume the absence of fraud or collusion unless there is evidence to the contrary.")). Instead, the Agreement is the result of extensive arm's-length negotiations over several months with the assistance of nationally known mediator, Michael Russell. *See* Declaration of Clif Alexander, attached as Exhibit 2; Declaration of Robert DeRose, attached as Exhibit 3. This litigation allowed the parties to assess the strength of their claims and defenses and reach a settlement based on well-informed arm's length negotiations. Such

---

[6] This Court previously analyzed the Classes and claims at issue and found that they satisfied Rule 23(a) and (b)(3)'s requirements. *See* ECF No. 142. Based on the previous briefing, Class Counsel requests that this Court reach a final determination that the proposed Classes are appropriate pursuant to Rule 23(a) and (b)(3). *See* ECF No. 139, PageID 946–51.

negotiations raise a presumption that the settlement satisfies the requirements of due process. *See IUE-CWA*, 238 F.R.D. at 598.

2. **Complexity, Expense and Likely Duration of the Litigation.**

Generally, "'[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them.'" *In re Wasserstrom Holdings, Inc.*, 2025 WL 1563548, at *6 (quoting *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001)). Here, the difficulty Plaintiffs would encounter in proving their claims, the substantial litigation expenses, and the possibility of further delay in recovery due to the appellate process weigh in favor of approving the Agreement. Continued litigation would require substantial time, effort, and expense, both to retain qualified experts and to formally conduct discovery, record review, depositions, and engage in motion practice. "Settling the case now saves time and money for the Parties and time for the Court." *Id.*

Accordingly, this factor favors approving the Settlement. It secures a substantial benefit for the Class Members, undiminished by further expenses and without the delay, cost, and uncertainty of protracted litigation. If the settlement is not approved, significant additional time, effort, and expense would be incurred to resolve remaining discovery disputes, conduct class discovery, obtain class certification pursuant to Rule 23, prepare for trial, make pre-trial submissions and motions, complete a complicated class action trial, make post-trial submissions, and pursue possible appeals. *See* Exhibits 2 and 3. Risk, expense, and delay are inherent in this process. Courts have recognized that this factor favors settlement under similar circumstances. *See Ayers v. SGS Control Servs., Inc.*, No. 03 Civ. 9078, 2008 WL 4185813, at *4 (S.D.N.Y. Sept. 9, 2008) ("The first *Grinnell* factor . . . supports the Settlement because, among other reasons, significant additional time, effort, and expense would be incurred to complete the trial, make post-trial submissions, and pursue likely appeals.").

### 3. Discovery Engaged in by the Parties.

"To confirm that Plaintiffs 'have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed Settlement,' the Court must consider the amount of discovery engaged in by the Parties." *Id.* (quoting *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 374 (S.D. Ohio 2006)). "[W]hether there has been sufficient discovery to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement," courts "should take account not only of court-refereed discovery but also informal discovery in which parties engaged both before and after litigation commenced." *Id.* (quoting *UAW v. Gen'l Motors Corp.*, No. 05-CV-73991-DT, 2006 WL 891151, at *19 (E.D. Mich. Mar. 31, 2006)). "In this consideration, "the absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties." *Id.* (citing cases).

In this case, the Parties engaged in significant informal discovery and engaged in extensive settlement negotiations, such that both sides have been able to analyze the strengths and weaknesses of their positions and determine that the Agreement is fair and reasonable under the circumstances. Kroger retained Deloitte, a third-party accounting firm, to assist it in determining the amount of unpaid or delayed wages, benefits, paid time off, and improper deductions arising from Kroger's transition to a cloud-based payroll system in September 2022 ("Deloitte Analysis"). *See* ECF No. 143, ¶¶ 13–14. Kroger provided Class Counsel the Deloitte Analysis containing all information relevant to the claims at issue before this Court. Class Counsel was able to thoroughly review the Deloitte Analysis, ask questions about the underlying data and processes, and seek further clarification where necessary. *See* Exhibit 2. This comprehensive third-party analysis allowed all Parties to fully understand the scope of the claims and damages at issue and enabled Class Counsel to meaningfully negotiate on behalf of the Class. This factor weighs in favor of approving the Settlement.

4.      **Likelihood of Success on the Merits**

One of the most important of the factors to be considered in reviewing a settlement is the probability of success on the merits as the likelihood of success provides a gauge from which the benefits of the settlement must be measured. *In re Wasserstrom Holdings, Inc.*, 2025 WL 1563548, at *7 (citing *Poplar Creek*, 636 F.3d at 245).

> In considering the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 177 (S.D.N.Y. 2000) (internal quotation marks omitted). Even in actions where establishing liability appears to be a near certainty, courts recognize the inherent risks of submitting any claim to a jury. *See, e.g., McBean v. City of New York*, 233 F.R.D. 377, 387 (S.D.N.Y. 2006) ("[T]here are no guarantees in life, and while it appears likely that plaintiffs would be able to establish liability at trial, things change.").

*Id.*

Here, Representative Plaintiffs maintain the viability of their claims but recognize that they faced real litigation and appellate risks if this case did not settle, as these cases are not easily litigated. "Courts have recognized that wage and hour cases involve complex legal issues." *Sewell v. Bovis Lend Lease LMB, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *11 (S.D.N.Y. Apr. 16, 2012). Representative Plaintiffs also recognize the risks posed by continued litigation, including the challenges associated with obtaining Rule 23 certification of the state law classes and the substantial risks in obtaining further damages. Kroger, though it admittedly suffered a technical glitch that wreaked havoc on its payroll system for a short time in September of 2022, engaged a third-party auditor to identify any underpayments or other payroll issues caused by the glitch. Kroger has now repaid and/or corrected the problems caused by the glitch. The damages that Class Counsel negotiated through the Agreement are for *additional* damages over and above the initial underpayment. Without resolution, there is meaningful risk that the class members would receive less than the negotiated settlement amount— or nothing further at all.

5.      Opinion of Class Counsel and Class Representative

"The recommendation of Class Counsel . . . that the Court should approve the Settlement is entitled to deference." *In re Wasserstrom Holdings, Inc.*, 2025 WL 1563548, at *7 (citing *Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs. . . . [T]he deference afforded counsel should correspond to the amount of discovery completed and the character of the evidence uncovered."); *see also Kritzer v. Safelite Solutions, LLC*, No. 2:10-cv-0729, 2012 U.S. Dist. LEXIS 74994, at *7 (S.D. Ohio May 30, 2012) ("The Court gives weight to the belief of experienced counsel that a settlement is in the best interests of the class."). Here, Class Counsel maintain that the Agreement provides an exceptional result for the Eligible Class Members and is in their best interest. *See* Exhibits 2 and 3. In addition to the initially unpaid/underpaid wages that resulted from the glitch, Eligible Class Members will receive an additional percentage of their actual unpaid/underpaid wages with Class A receiving approximately 62% of their unpaid/underpaid wages and Class B receiving approximately 42% of their unpaid/underpaid wages.

The fairness of the settlement was shaped by the experience and reputation of counsel. *See Visa*, 396 F.3d at 119 (recognizing importance of district court's finding that "experienced and able counsel fought this litigation 'aggressively' and 'negotiated feverishly.'") (quotation omitted). Here, both Parties are represented by counsel experienced in litigating complex wage and hour cases under the FLSA and state wage and hour laws. *See* Exhibits 2 and 3.

The Court also considers the approval of the Class Representatives, particularly where they are significantly involved in the discovery and settlement negotiation process. *See e.g., Gascho v. Glob. Fitness Holdings, LLC*, Case No. 2:11-cv-436, 2014 WL 1350509, at *18 (S.D. Ohio Apr. 4, 2014), R&R adopted, 2014 WL 3543819 (S.D. Ohio July 16, 2014), aff'd, 822 F.3d 269 (6th Cir. 2016). Here, Representative Plaintiffs were pleased with the results obtained and executed the Agreement promptly.

### 6. Reaction of Absent Class Members

There is greater than a 99.9% participation in the Settlement Class with only eleven (11) Class Members—out of over 47,000—requesting to opt-out. *See* Exhibit 1, ¶ 13. In fact, more individuals contacted Rust requesting to be *included* in the Class than requested to be *excluded* from the Class. And no Class Member objected to the settlement. *Id.* at ¶ 14. With such strong support, this factor favors approval of the settlement. *See, e.g., Moore v. Medical Fin. Services, Inc.*, No. 2:20-cv-02443, 2021 WL 6333304, at *4 (W.D. Tenn. Nov. 30, 2021) (granting final approval when "no objections were filed and only five members requested to be excluded); *BleachTech LLC v. United Parcel Service, Inc.*, No. 14-12719, 2022 WL 2835830, at *3 (E.D. Mich. July 20, 2022) (noting that no objections to the class action settlement "was a clear indication that the Settlement Class Members support the Settlement").

### 7. Public Interest

"Public policy generally favors settlement of class action lawsuits." *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007) (citation omitted). In this case, the Settlement confers immediate benefits on the Class Members, avoids the risks and expenses of further litigation, and conserves judicial resources.

Plaintiffs have shown that the Agreement before this Court is fair, reasonable, and adequate, and should be approved.

### B. Notice Comported with Due Process and Was Best Notice Practicable

Rule 23(c)(2)(B) requires all members of a class certified under Rule 23(b)(3), who can be identified through reasonable effort, to receive "the best notice that is practicable under the circumstances." FED. R. CIV. P. 23(c)(2)(B). Further, the notice "must clearly and concisely state in plain, easily understood language" all the information specified in Rule 23(c)(2)(B)(i)–(vii). *Id.* Finally, the notice must comply with due process. *See Barnes v. Winking Lizard, Inc.*, No. 1:18-cv-952, 2019 WL 1614822, at *4 (N.D. Ohio Mar. 26, 2019); Harsh, 2021 WL 4145720, at *4.

In granting preliminary approval, the Court approved the class notice form and the protocol for distribution as consistent with Rule 23(c)(2)(B) and due process. *See* ECF No. 142, PageID # 1193–94. Therefore, the question becomes "whether the results of the notice process uncovered inadequacies." *McKnight v. Erico Int'l Corp.*, 655 F. Supp. 3d 645, 660–61 (N.D. Ohio 2023) (citing *Arp v. Hohla & Wyss Enters., LLC*, No. 3:18-cv-119, 2020 WL 6498956, at *4 (S.D. Ohio Nov. 5, 2020)). The notice process for this settlement administration ran smoothly. Rust sent the initial Notice Packet by first-class mail to 47,018 Class Members. After skip tracing and forwarding, only 644 Notices remained undeliverable by the close of the notice period. Over 98% of the Class Members received notice of this settlement. These results show no fatal deficiencies in notice. *Arp*, 2020 WL 6498956, at *4 (stating that 98% delivery rate showed that there were no deficiencies in the notice process). Accordingly, the Court should find that the notice was the best practicable under the circumstances, as required under Rule 23(c)(2)(B), and consistent with due process. *See McKnight*, 655 F. Supp. 3d at 660–61

## V.    CONCLUSION

For the foregoing reasons, Representative Plaintiffs request that the Court finally approve their Class Action Settlement. Representative Plaintiffs have conferred with Kroger, and Kroger does not oppose this Motion.

Date: June 10, 2025                    Respectfully submitted,

By:  /s/ Robert E. DeRose
**Robert E. DeRose** (OH Bar No. 005214)
bderose@barkanmeizlish.com
**BARKAN MEIZLISH DEROSE COX, LLP**
4200 Regent Street, Suite 210
Columbus, Ohio 43219
Telephone: (614) 221-4221
Facsimile: (614) 744-2300

By:  /s/ Clif Alexander
**Clif Alexander** (admitted *pro hac vice*)
Texas Bar No. 24064805
clif@a2xlaw.com
**Austin W. Anderson** (admitted *pro hac vice*)
Texas Bar No. 24045189
austin@a2xlaw.com
**ANDERSON ALEXANDER, PLLC**
101 N. Shoreline Blvd., Ste. 610
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284

***Counsel for Plaintiff and the Putative Class Members***

## CERTIFICATE OF CONFERENCE

Plaintiffs' Counsel has conferred with Defendant's Counsel. As a result of that conference, this Motion is filed as unopposed.

/s/ Clif Alexander
Clif Alexander

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2025, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Southern District of Ohio using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ Clif Alexander
Clif Alexander