# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

BRANDON WILDER, *et al.*, *individually*
*and on behalf of all others similarly situated*,

        *Plaintiffs*,

v.

THE KROGER CO.,

        *Defendant*.

:
:
:
:
:
:
:
:
:
:
:

Case No. 1:22-cv-681, *consolidated with*
Case Nos. 1:23-cv-287, 1:24-cv-521

Judge Jeffery P. Hopkins

---

## ORDER

---

Before the Court is Plaintiffs' Motion for Approval of Class Action Settlement (Doc. 145) ("Settlement Motion") and Motion for Attorneys' Fees and Costs (Doc. 146) ("Fee Motion"). In these consolidated cases,[1] named Plaintiffs (collectively, "Plaintiffs") bring this lawsuit on behalf of themselves, and other similarly situated employees, against Defendant The Kroger Co. ("Defendant" or "Kroger"). Plaintiffs are employees of Kroger who work at grocery stores in states that implemented a new payroll system called MyTime or MyInfo (collectively, "MyTime"). Plaintiffs claim that Kroger using the new software program, MyTime did not compensate them properly in violation of the federal Fair Labor Standards Act of 1938 ("FLSA") and a variety of related state laws that deal with wage and hour standards. Plaintiffs seek certification for settlement of their proposed class, approval of their settlement with Defendant, and approval of the fee award they negotiated with Defendant as

---

[1] At the request of the parties, the following actions were consolidated for settlement purposes: *Brandon Wilder v. The Kroger Co.*, No. 1:22-cv-681, *Donald Austin, et al. v. Kroger Limited Partnership I Mid Atlantic Marketing Area*, No. 1:23-cv-287, and *Kacey Ebersole v. Dillon Companies, LLC*, 1:24-cv-521. *See* Doc. 135. Unless otherwise noted, record citations refer to filings in *Brandon Wilder v. The Kroger Co.*, No. 1:22-cv-681.

part of the settlement—$4,878,376.85, which they represent is 23% of the total value of the settlement to Class Members. These motions are unopposed.

After holding a fairness hearing, reviewing all of the pleadings, and being fully advised in the premises, the Court finds that the Motion for Approval of Class Action Settlement (Doc. 145) is **GRANTED**, and the Motion for Attorneys' Fees and Costs (Doc. 146) is **GRANTED IN PART**. Attorneys' fees will be awarded as stated herein.

## I.     BACKGROUND

Kroger is a very large company based in Cincinnati, Ohio that sells groceries and a variety of other consumer products in stores across the United States with thousands if not tens of thousands of employees. So when small problems arise in the payroll systems used to compensate Kroger's employees, those small problems can become larger, have widespread effect, and far-reaching impact on innumerable employees across multiple states. That is exactly what occurred here. In September 2022, Kroger moved to a new timekeeping and payroll system called MyTime. Doc. 139, PageID 933. Shortly after the transition to MyTime, there was a glitch in the software, which resulted in a significant number of employees being underpaid (and some overpaid). *See id.* This class action lawsuit was brought by the employees who were underpaid. At the outset of litigation, some of the effected employees sought repayment of the amounts they had been underpaid, and damages on top of that—to compensate for the hardship they had suffered from not receiving the proper wages when due.

After litigation began, two things took place that make this case different from the typical class action—if there is such a thing. First, Kroger hired accounting firm and consultancy, Deloitte, to identify any underpaid employees. *Id.* at PageID 933 n.5. That is to say, Kroger undertook a large and presumably expensive effort to identify the damages to

Class Members caused by its alleged wrongdoing. Second, it paid the employees affected by the payroll glitch the amounts they were owed that Deloitte identified in its review. In total, Kroger paid out $10,547,841.84 to effected employees as part of this initial process. *See* Doc. 143, ¶ 33. This amount was paid prior to any settlement agreement being reached between the parties, or any other formal agreement being crafted. *See* Doc. 149, PageID 1417–20. While Kroger was under no contractual obligation to make these payments, class counsel represents that it "*could* have stopped Kroger from making the payments to Class Members," *id.* at PageID 1419, and that Kroger never would have made the payments if not for this lawsuit.

The parties eventually arrived at the settlement currently before the Court. Under the proposed settlement agreement ("Settlement Agreement"), Kroger will pay two sub-classes. Members of one sub-class will be paid approximately 62% of the amount they were previously underpaid, and members of the other sub-class will be paid 42% of the amount they were previously underpaid, for a total of approximately $5,250,000.00 paid to Class Members. Doc. 143, ¶¶ 33, 49(c).[2] (This is in addition to the amounts Kroger previously paid Class Members to ensure they received the amounts they were already owed). Further, as part of the settlement, Kroger agreed to pay $4,878,376.85 in fees and costs to class counsel. *Id.* In total, Kroger has agreed to pay $10,152,297.77 as a result of the Settlement Agreement under consideration here, plus the cost of claims administration.[3] This amount is referred to in the Settlement Agreement as the Funds Available for Settlement. *Id.* ¶ 21.

---

[2] Excluding Class Members whose notices were undeliverable and those who opted out, and adding those who opted in, there are 46,394 Class Members who will receive a payment under the settlement. *See* Doc. 145-1, ¶¶ 10–15. Based on that number, each Class Member will receive, on average, $113.68.

[3] Kroger has also agreed to pay the cost of claims administration. Doc. 143, ¶ 21.

Plaintiffs now present that settlement to the Court for approval (Doc. 145) and separately request an award of attorneys' fees (Doc. 146). On June 24, 2025, the Court held a fairness hearing regarding this settlement. Following that hearing, Plaintiffs submitted supplemental briefing in support of their request for attorneys' fees. Doc. 149.

## II.    LEGAL STANDARD

It is axiomatic that "[t]he benefits of a settlement can be realized only through the final certification of a settlement class." *Kimber Baldwin Designs, LLC v. Silv Comms., Inc.*, No. 1:16-cv-448, 2017 WL 5247538, at *2 (S.D. Ohio Nov. 13, 2017). To be certified, a proposed settlement class must meet the requirements set out in Rule 23(a)—numerosity, commonality, typicality, and adequate representation—and fit into one of the categories set out in Rule 23(b). Fed. R. Civ. P. 23. The Court "maintains broad discretion in deciding whether to certify a class." *Kimber Baldwin*, 2017 WL 5247538, at *2.

Additionally, under Federal Rule of Civil Procedure 23, the class action settlement itself requires court approval. The Court may approve the settlement only after a hearing, and only if the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In determining whether these requirements are met, the Court is guided by the seven factors set out in *Int'l Union, UAW, et al. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (the *UAW* factors): "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest."

As to awarding fees and costs, the Court "may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P.

4

23(h). In assessing whether a fee request is reasonable, the Court is guided by the factors set out in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974): "1) the value of the benefit rendered to the [plaintiffs], 2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others, 3) whether the services were undertaken on a contingent fee basis, 4) the value of the services on an hourly basis, 5) the complexity of the litigation, and 6) the professional skill and standing of counsel involved on both sides." *See In re Flint Water Cases*, 63 F.4th 486, 495–96 (6th Cir. 2023) (explaining that courts rely on the *Ramey* factors in evaluating the reasonableness of requests for attorney's fees).

The Court may assess the reasonableness of the requested fee award using the percentage method or the lodestar method, or some combination of both. When using the percentage method, the Court evaluates whether the proposed fee is a reasonable percentage of the common fund. When using the lodestar method, the Court evaluates whether the fee award is reasonable in light of the hours that class counsel spent on the case and a reasonable rate for their services. *See Rawlings v. Prudential-Bache Prop., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). In the Southern District of Ohio, the preferred method for awarding attorney's fees is "to award a reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier." *Kimber Baldwin,* 2017 WL 5247538, at *5 (citation omitted).

The Court has an independent obligation to make sure the requirements of Rule 23 are satisfied, even when no class member objects to a proposed settlement. *See In re Cinfed Fed. Credit Union Data Breach Litig.*, No. 1:23-cv-776, 2025 WL 1637686, at *10 (S.D. Ohio June 10, 2025).

### III. ANALYSIS

#### A. The settlement class is appropriate for Rule 23 certification.

Plaintiffs seek to certify for purposes of settlement a class consisting of two sub-classes.

The first sub-class, Class A, is defined as follows:

> Class A: individuals employed by Kroger as non-exempt employees from September 1, 2022 to May 31, 2023 in Arizona, California, Colorado, Illinois, Maine, Maryland, Massachusetts, New Jersey, and Virginia who experienced an instance of underpayment within a given pay period for the hours they worked (or that they took as PTO) in that pay period . . . or experienced an over-deduction from their wages relating to benefits . . . as identified [by Deloitte].

Doc. 143, ¶ 5. The second sub-class, Class B, is defined as:

> Class B: all individuals employed by Kroger as non-exempt employees from September 1, 2022 to May 31, 2023, in every other state where Kroger does business, excluding Oregon and Washington, who experienced an instance of underpayment within a given pay period for the hours they worked (or that they took as PTO) in that pay period . . . or experienced an over-deduction from their wages relating to benefits . . . as identified [by Deloitte].

*Id.*

The class, comprised of sub-classes Class A and Class B, satisfies the Rule 23(a) requirements. As noted, a proposed settlement class must meet all four of the Rule 23(a) requirements to be certified, the first of which is numerosity. *Kimber Baldwin*, 2017 WL 5247538, at *2.

#### i. Rule 23(a)

##### 1. Numerosity

Numerosity under Rule 23(a)(1) requires that the class be sufficiently numerous such that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). The proposed class easily satisfies this requirement. Sub-class A contains 18,964 members, while sub-class B has 28,049 members. Doc. 139, PageID 947. The total class size surpasses by a wide margin the

6

size of classes previously approved in this district. *See Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 183 (S.D. Ohio 2012) (class size of 350 individual plaintiffs "far surpasse[d] the size of classes this Court has found to surpass the numerosity requirement").

## 2. Commonality

The Court turns next to the second requirement under Rule 23—commonality. Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "To satisfy commonality, Plaintiffs' 'claims must depend on a common contention . . . of such a nature that it is capable of classwide resolution.'" *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 458 (6th Cir. 2020). The class satisfies the commonality requirement. Resolution of this litigation turns on the common question of whether Class Members are entitled to damages for underpayment of wages during the relevant time period. To the extent differences in state wage-and-hour laws pose a problem for commonality—because employees may be entitled to different damages depending on their state's laws regarding underpayment—this has been resolved by creating two sub-classes, grouping together Plaintiffs whose states have similar wage-and-hour laws. Importantly, "[i]ndividual class members need not be identically situated to meet the commonality requirement." *Swigart*, 288 F.R.D. at 183 (citation, internal quotation marks, and alteration omitted).

## 3. Typicality

The third Rule 23(a) requirement, typicality, is found in Rule 23(a)(3). "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Sprague v. GMC*, 133 F.3d 388, 399 (6th Cir. 1998). This premise is easily satisfied here because the Named Plaintiffs suffered the same injury as Class Members; they were deprived of correct compensation by the glitch in Kroger's payment system.

Plaintiffs Austin, Ebersole, and Wood satisfy typicality as to sub-class A, as they worked for Kroger in Virgina, Colorado, and California, respectively, and were underpaid because of the glitch. *See* Doc. 139, PageID 932. Plaintiff Wilder satisfies typicality as to sub-class B, as he worked for Kroger in Kentucky and was underpaid because of the glitch. *See id.*

### 4. Adequacy

The adequacy requirement, discovered in Rule 23(a)(4) "calls for a two-pronged inquiry: '(1) the representatives must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Swigart*, 288 F.R.D. at 185–86 (quoting *Senter v. General Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)). The first portion of the requirement is satisfied for the reasons stated above. Plaintiffs Austin, Ebersole, Wood, Wilder and other unnamed Class Members all share a common interest in that they all seek recovery of money damages for their underpayment by Kroger. The second requirement is satisfied because the class representatives retained experienced counsel. *See* Doc. 139-3, Exs. 3, 4. Counsel at the law firms Austin Alexander, PLLC, and Barkan Meizlish DeRose Cox, LLP all have significant experience in labor and employment matters. *Id.*

### ii. Rule 23(b)

Even if all four Rule 23(a) requirements are satisfied, an action can be maintained as a class action only if it meets one of the three conditions for class certification set out in Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Plaintiffs assert that class certification is appropriate under Rule 23(b)(3), which provides that a matter can proceed as a class action where the Court "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class

8

action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

## 1. Predominance

Plaintiffs assert that common issues predominate over differences because all Class Members were non-exempt hourly Kroger employees underpaid because of the glitch. Doc. 139, PageID 950. The Court agrees. *See Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 938 (9th Cir. 2019) ("Predominance in employment cases is rarely defeated on the grounds of differences among employees so long as liability arises from a common practice or policy of an employer.") (alteration and citation omitted).

## 2. Superiority

As to superiority, Plaintiffs contend that a class action is superior to other available methods of resolving the dispute presently before the Court. In support, they note that no lawsuits have been filed by members of the proposed class apart from the lawsuits presently before the Court, so "no class members have expressed any interest in individual litigation." Doc. 139, PageID 951. The Court agrees that a class action is superior to other available methods for resolving the instant dispute. Individual proceedings would be impractical and unwise here because the glitch in Kroger's payment system caused harm of the same type to thousands of Kroger employees. Further, as Plaintiffs note, where a settlement has been reached, it is evident that the class action will not be difficult to manage, which is one of the factors relevant to the superiority analysis. *See* Fed. R. Civ. P. 23(b)(3)(D); *Amchem Prods., Inc.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable

management problems . . . for the proposal is that there be no trial."). Here, not one but all three conditions for class certification set out in Rule 23(b)(3) have been satisfied.

For the foregoing reasons, Plaintiffs' request for final certification of the settlement class (Doc. 145) is **GRANTED**.

## B.  The settlement is fair, reasonable, and adequate.

The Court turns next to the fairness of the agreed settlement, analyzing the settlement terms in light of the *UAW* factors identified above. *See Kimber Baldwin*, 2017 WL 5247538, at *4. Each of these factors weigh in favor of approval.

### i.  Risk of fraud or collusion

There is no evidence that this settlement was the product of fraud or collusion. Kroger was represented by experienced counsel at Vorys, Sater, Seymore and Pease LLP, and the settlement was reached with the assistance of a well-known labor law mediator, Michael Russell. Additionally, the settlement terms were reached with the benefit of input from national audit firm Deloitte, which scrutinized and identified the amounts by which each class Plaintiff was underpaid. Accordingly, the settlement terms were negotiated by experienced counsel, with the benefit of detailed, verifiable information regarding the harm suffered by each Class Member. There is little risk of fraud or collusion.

### ii.  Complexity, expense, and likely duration of litigation

The complexity and likely expense of ongoing litigation, should the settlement be rejected, also weighs in favor of its acceptance. Even though the damages sustained by class Plaintiffs are relatively straightforward, trying this matter to a jury would be time-consuming and expensive. This settlement, by contrast, "confers a tangible and immediate benefit upon

. . . Class Members." *Kimber Baldwin*, 2017 WL 5247538, at *4. The complexity and expense of litigation counsels in favor of accepting this settlement.

### iii. Amount of discovery engaged in by the parties

The discovery engaged in by the parties' counsels strongly in favor of acceptance of this settlement. Aided by the Deloitte audit, the parties have already determined the amount by which each Class Member was underpaid. Class counsel then had the opportunity to review the Deloitte audit and ask questions about it. *See* Doc. 145, PageID 1294. The record here "clearly demonstrates that both sides . . . have been afforded an adequate opportunity to conduct a sufficient discovery to be fully apprised about the legal and factual issues presented as well as the strengths and weaknesses of their cases." *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 374–75 (S.D. Ohio 2006). This factor weighs in favor of approving the Settlement Agreement.

### iv. Likelihood of success on the merits

Plaintiffs' likelihood of success on the merits "provides a gauge from which the benefits of the settlement must be measured." *In re Wasserstrom Holdings, Inc. Data Breach Litig.*, No. 2:23-cv-2070, 2025 WL 1563548, *7 (S.D. Ohio Apr. 11, 2025).

Here, while the amount of Kroger's underpayment to each employee is known, the damages that the class could obtain are uncertain, particularly because state wage-and-hour laws vary in the relief they offer for employees who were underpaid. Under the terms of the settlement, members of sub-class A will receive approximately 62% of their unpaid wages as damages, and members of sub-class B will receive approximately 42%. Doc. 145, PageID 1296.

11

Plaintiffs brought claims under the FLSA and state labor laws. The recovery Plaintiffs could obtain at trial depends on the damages available under those statutes. Accordingly, the Court will analyze that available recovery as a metric against which to measure the benefit to Plaintiffs of the settlement.

As to FLSA, liquidated damages are the default. *Albert v. Honda Dev. & Mfg. of Am., LLC*, 792 F. Supp. 3d 855, 866 (S.D. Ohio 2025). The statute provides for liquidated damages in the amount of the underpayment (*i.e.*, 100% of the underpayment), *see* 29 U.S.C. § 216(b), but a court may, in its discretion, limit or deny those damages. *Id.*

The Court proceeds to sample the recovery available under state wage-and-hour laws, using the named Plaintiffs' states as examples. That analysis reveals that recovery available under state law is similar—typically allowing for the amount of underpayment, and then an equal amount as liquidated damages—although some states allow for higher recovery.

### 1. Sub-Class A

Sub-class A includes individuals employed by Kroger in its stores in Arizona, California, Colorado, Illinois, Maine, Maryland, Massachusetts, New Jersey, and Virginia. Recovery in these states is similar to what is available under FLSA, but in some circumstances plaintiffs may recover more than the amount of the underpayment.

In Named Plaintiff Kasey Ebersole's home state of Colorado, for example, an underpaid employee may be entitled to greater recovery—as much as three times the amount of the unpaid wages, if certain conditions are met. Colo. Rev. Stat. Ann. § 8-4-109(3)(b) (West 2025). In Named Plaintiff Otis Woods's home state of California, various types of recovery are available for wage-and-hour violations, including "liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon." Cal. Lab. Code § 1194.2 (West

2015). *See Troester v. Starbucks Corp.*, CV 12-07677, 2020 WL 553572, at *3 (C.D. Cal. Jan. 27, 2020). Under the law of Named Plaintiff Donald Austin's home state of Virginia, an underpaid employee may recover wages owed, plus an equal amount as liquidated damages, and prejudgment interest at a rate of eight percent. *See Hudson v. Dunn*, 1:23-cv-781, 2024 WL 2870845, *7 (E.D. Va. Mar. 15, 2024) (quoting Va. Code Ann. § 40.1-29(G) (West 2022)).

### 2. Sub-Class B

Sub-class B includes individuals employed by Kroger in every other state, except Oregon and Washington. As a general matter, these states' wage-and-hour laws are not as generous to Plaintiffs as sub-class A states, but some of these states do allow recovery of liquidated damages in the amount of the underpayment. In Named Plaintiff Brandon Wilder's home state of Kentucky, an underpaid employee may recover the amount of the underpayment, plus "an additional equal amount as liquidated damages." Ky. Rev. Stat. Ann. § 337.385 (West 2024). But some wage-and-hour statutes of states in this group aren't so generous and do not permit that level of recovery. Ohio's Prompt Pay Act, for example, only allows for recovery of 6% of the amount of underpayment or $200, whichever is greater. Ohio Rev. Code Ann. § 4113.15 (West 2019). *See Albert*, 792 F. Supp. 3d at 866.

Having analyzed the recovery available to Plaintiffs, the Court concludes that the likelihood of success factor favors approval of the settlement. Here, Plaintiffs will receive either 62% or 42% of their unpaid wages in additional compensation. Under relevant law, they could receive higher damages should they prevail at trial, but given the uncertainties of litigation, they also could receive less. Notably, also, good faith is a defense to liquidated damages under the FLSA. *Id.* Here, it is possible that Kroger could successfully assert the good-faith defense at trial, as there is no allegation that the act that gave rise to the glitch—

the payroll software conversion—was undertaken with knowledge of a risk that employees could be underpaid, or an intent to underpay employees. Additionally, Plaintiffs correctly assert that some of the underpayments identified in the Deloitte audit would not be recoverable at all under either federal or state wage-and-hour laws. Doc. 149, PageID 1418.

The Court notes briefly that the recovery each Class Member will receive—approximately $113—is small in absolute terms. However, in evaluating likelihood of success on the merits, the Court must evaluate this recovery not in absolute terms but instead by comparing it to what Class Members *could* receive under relevant law. Viewing the settlement in this light, the Court concludes that the proposed recovery amount equates to a good result for the class. This factor weighs in favor of approval of the settlement.

### v. Opinion of class counsel and class representative

Class counsel, experienced wage-and-hour litigators, believe this settlement provides an "exceptional result" for Class Members. Doc. 145, PageID 1296. *See also* Doc. 145-2, ¶ 13. This representation weighs in favor of approving the settlement. *See In re Wasserstrom Holdings, Inc.*, 2025 WL 1563548, at *7.

Further, class representatives have attested that they believe the Settlement Agreement is appropriate by signing it. Accordingly, this factor supports approval of the settlement.

### vi. Reaction of absent Class Members

The reaction of absent Class Members also favors approval of the settlement. According to settlement administrator Rust Consulting, it mailed notice of the settlement to 47,018 Class Members. Doc. 145-1, ¶ 10. A high percentage of the notices were delivered, with Rust reporting that only 644 were undeliverable. *Id.* ¶ 11. As of June 9, 2025, only 11

14

Class Members had opted out of the settlement, and no Class Member objected to the settlement. *Id.* ¶¶ 13–14. This very low percentage of opt-outs—less than 0.1%—favors approval of the settlement. *See Kimber Baldwin*, 2017 WL 5247538, at \*5. In fact, 31 individuals self-identified as Class Members, and Kroger agreed they should be included. Doc. 145-1, ¶ 15. So more individuals decided to join the settlement class unprompted than those that chose to opt out. The reaction of absent Class Members to the settlement was overwhelmingly positive, which favors approval of the settlement.

### vii.  Public interest

"Public policy generally favors settlement of class action lawsuits." *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007). Settlement of this matter allows Class Members to recover expeditiously and preserves limited court resources and time as well as the resources of the parties. Accordingly, public policy favors approval of this settlement. For the foregoing reasons, Plaintiffs' Settlement Motion (Doc. 145) is **GRANTED**.

### C.  The requested attorneys' fees are unreasonable and will be reduced.

Plaintiffs' Fee Motion (Doc. 146) presents more challenging issues, namely: (1) does class counsel properly include in the common fund money paid by Kroger to Class Members prior to settlement? And (2) where class counsel represents that attorneys' fees were negotiated separately from recovery for Class Members—and thus attorneys' fees are not coming out of Class Members' pockets—is the Court permitted to award lower attorneys' fees than those proposed by Plaintiffs? The Court answers the first question in the negative and the second in the affirmative; the Court will award attorneys' fees but in a reduced amount from what was requested.

Class counsel requests attorneys' fees and costs of $4,878,376.85.[4] They contend that the Court should calculate attorneys' fees using the percentage method with a lodestar cross-check. Doc. 149, PageID 1415. Applying this method, they argue their requested attorneys' fees are appropriate because those fees represent 23% of the Total Settlement Value ("Total Settlement Value"), Doc. 146, PageID 1336, and Plaintiffs' lodestar is $1,707,980.05 resulting in a lodestar multiplier for the requested fee award of 2.85. Doc. 149, PageID 1425.

As the Court expressed at the June 24, 2025, fairness hearing, class counsel's percentage calculation warrants particular attention. They calculate the 23% figure using a Total Settlement Value of $20,883,610.64, which they represent to be the total amount Kroger is paying to resolve liability arising from the glitch at issue in this litigation. Doc. 145, PageID 1288. The Court reproduces below a chart provided by class counsel showing how the Total Settlement Value was calculated:

| | |
|---|---|
| Total Amount of Negative Variances and Over Deductions Paid by Kroger | $10,547,841.84 |
| Additional Payments to Class Members/ Funds Available for Settlement | $10,335,768.80 |
| **Total Settlement Value** | **$20,883,610.64** |
| Attorneys' Fees and Costs | ($4,878,376.85) |
| Costs of Claim Adminstration | ($175,000.00) |
| Enhancement Payments | ($35,000.00) |
| California LWDA (PAGA Expenses) | ($2,500.00) |
| **Net Funds Available for Disbursement** | **$5,244,891.95** |

*Id.*

---

[4]   Class counsel represents that it incurred litigation costs of $40,756.08. They do not request separate compensation for costs but instead represent that compensation for costs is part of the $4,878,376.85 they are requesting as class counsel compensation. Doc. 146, PageID 1345.

### i. Value of the common fund

Class counsel insist that money paid by Kroger to Plaintiffs voluntarily, prior to settlement of this matter (hereinafter, the "Initial Payments"), should be counted as part of the settlement amount for purposes of calculating attorneys' fees. They claim that this "aligns with long-standing jurisprudence," and properly incentivizes wage-and-hour litigators to permit defendants to make their clients whole prior to settlement. Doc. 149, PageID 1419.

Plaintiffs' attorneys insist that, as a matter of fact, Kroger would never have made the Initial Payments absent their involvement. In support, the attorneys note that many Class Members were not paid wages they were owed until class counsel sued Kroger on their behalf. For example, Carter Hastings, an attorney for Plaintiffs, represents that Named Plaintiff Brandon Wilder did not receive all compensation he was owed until after class counsel filed suit on Wilder's behalf and subsequently followed up by phone with Kroger's counsel regarding Wilder's missing pay. Doc. 150-3, ¶ 12. Class counsel further represent that many Class Members would never have known they were underpaid without the attorney's efforts. Doc. 149, PageID 1418.

The Court is unpersuaded that the Initial Payments Class Members received should be included in the common fund for purposes of calculating attorneys' fees. Fundamentally, the Initial Payments are *not* part of the "common fund" this "successful class action has . . . create[ed] . . . to be distributed among members of the class." *Rawlings*, 9 F.3d at 515. Class counsel argues strenuously that the payments "Constitute a Value Received by Class Members," Doc. 149, PageID 1419, but that does not make those payments part of the "common fund" this successful class action created.

The cases class counsel cites to in support of this amount in the common fund are inapposite. One such case, *Chieftain Royalty Co. v. Marathon Oil Co.*, No. CIV-17-334, 2019 WL 7758915 (E.D. Okla. Mar. 8, 2019), did not involve a defendant who voluntarily made payments to class members prior to settlement. Instead, the *Chieftain Royalty* court dealt with a cash fund as well as alterations that were made to the class defendant corporation's policies, which policy changes were afforded a monetary value by the court. The court in that case held that attorneys' fees should be calculated using not only the cash fund, but also the monetary value attributable to the corporate policy changes that were made. *Id.* at *4. That case concerned "the value of any future relief under the settlement," *id.* (quoting *Feerer v. Amoco Prod. Co.*, No. 95-0012, 1998 U.S. Dist. LEXIS 22248, at *42–43 (D.N.M. May 28, 1998)), not, as here, the value of *past relief* that Kroger voluntarily provided to Plaintiffs.

Alternatively, class counsel also point to the Supreme Court's decision in *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980), for support of the added fee. In *Van Gemert*, the Supreme Court determined that the unclaimed portion of a judgment fund could be counted as part of the fund for purposes of calculating attorney's fees. Unfortunately, *Van Gemert*, is inapposite to the case at bar because it did not involve counting amounts paid separately from settlement as part of the common fund. Rather, the Supreme Court reasoned that the unclaimed portion of the judgment fund should be counted as part of the fund because even non-claimants have an "undisputed and mathematically ascertainable claim to part of a *lump-sum judgment* recovered on [their] behalf." *Boeing Co.,* 444 U.S. at 479 (emphasis added).

Plaintiffs' counsel invocation of the "catalyst theory" in support of the additional fee comes closer to the mark but also fails. That theory "allows the recovery of a common fund fee so long as the claiming parties' litigation played a causal role in achieving the benefits for

18

which they seek fee reimbursement." *Kifafi v. Hilton Hotels Ret. Plan*, 999 F. Supp. 2d 88, 96 (D.D.C. 2013) (quoting *Consol. Edison Co. of New York, Inc. v. Bodman*, 445 F.3d 438, 451 (D.C. Cir. 2006)). As explained in the *Kifafi* case, this theory *does* allow inclusion in a common fund of relief conferred on plaintiffs "voluntarily . . . by [defendants] outside of the court's jurisdiction." *Id.*

There are two significant problems with the arguments Plaintiffs' counsel advances for including the Initial Payments in the common fund. First and foremost, the Sixth Circuit has previously rejected the catalyst theory as a basis for awarding attorneys' fees. In *Chambers v. Ohio Dept. of Hum. Servs.*, 273 F.3d 690, 692–93 (6th Cir. 2001), the Sixth Circuit concluded that the "catalyst theory as a permissible basis for awarding attorneys fees" had not survived the Supreme Court's holding in *Buckhannon Bd. and Care Home, Inc. v. W.V. Dep't of Health and Hum. Res.*, 532 U.S. 598 (2001). Accordingly, the catalyst theory Plaintiffs' counsel so heavily relies upon for recovery of additional fees in this class action is untenable under current Sixth Circuit authority. This Court is obligated to follow Sixth Circuit precedent and cannot, until the Court of Appeals overturns *Chambers*, look to the catalyst theory as a means of awarding the added fees to class counsel.

Second, even if the Sixth Circuit's decision in *Chambers* did not act as bar to awarding attorneys' fees under the catalyst theory, the *Kifafi*, decision in this Court's view still makes its use inappropriate to award fees from a common fund money transferred by defendant to plaintiffs voluntarily and in a historical context. A closer look at *Kifafi* illustrates the point. In that case, the class plaintiffs brought an ERISA challenge to the Hilton Hotels retirement plan, in response to which Hilton amended the plan to benefit those class members. While the Court concluded it could award attorneys' fees on the value of the amendment to class

members, it deducted from that amount the value of the amendment that had already been paid out to class members or was in the process of being paid out. *Kifafi*, 999 F. Supp. 2d at 98. This was because ERISA prohibits alienation of retirement benefits that have been paid out or were in the process of being paid out. *Id.* While the rationale relied upon in *Kifafi* is ERISA-specific, the fact remains that the court in that case did not award attorneys' fees on amounts *previously* paid out by defendant to class plaintiffs during litigation. In this respect, the case is similar to *Chieftain Royalty*. Both cases strongly suggest that courts may appropriately award attorneys' fees to class counsel based on prospective relief—even in certain cases when the payment is made voluntary—but it is atypical and consequently inappropriate to award attorneys' fees based on monetary relief *previously* conferred on class plaintiffs, voluntarily, by a defendant.

The Court further notes that class counsel have not identified for the Court a wage-and-hour case where payments made *prior* to a settlement *were* included in the common fund for purposes of the attorneys' fee calculation. Instead, one of the cases identified by class counsel in their motion for approval of class action settlement, *Ayers v. SGS Control Servs., Inc.*, No. 03 Civ. 9078, 2008 WL 4185813 (S.D.N.Y. Sept. 9, 2008), points to the opposite result. In that case, payments that were previously made to class plaintiffs were *excluded* from a fee award calculation. Class counsel appealed that aspect of the district court's decision but lost specifically on that issue in the Second Circuit. *Ayers v. SGS Control Servs., Inc.*, 353 F. App'x 466, 467 (2d Cir. 2009).[5]

---

[5] There is a significant factual distinction between the *Ayers* case and the one at bar. In *Ayers*, the decision to exclude the previous payments made to the class plaintiffs before the negotiation of the settlement reached in that case was based on the Settlement Agreement itself, which provided that attorneys' fees would be calculated based on a percentage of the settlement payment, not based on the *total* recovery of the class. *Ayers*,

For all the reasons stated in the preceding paragraphs, the voluntary payments previously made by Kroger to Class Members before the settlement was reached are not properly included in the common fund for purposes of calculating attorneys' fees. Such fees will be calculated based on the Funds Available for Settlement specified in the parties' Settlement Agreement, which totals $10,335,768.80. Doc. 143, ¶ 21.[6] The Court concludes that this fund represents the "common fund to be distributed among members of the class," *Rawlings*, 9 F.3d at 515, that the settlement created.

### ii. Propriety of reducing award of attorneys' fees where fees negotiated separately from class recovery

Next, the Court must address whether, notwithstanding the errors in class counsel's common-fund calculation identified above, it should nonetheless award the requested fees based on class counsel's argument that the fees are coming out of Defendant's pocket and not any Class Members' pockets.

At the June 24, 2025 fairness hearing, class counsel represented that in the mediation conference when the general terms of settlement were agreed upon, the parties negotiated attorneys' fees separately from compensation for Class Members. According to class counsel, the parties negotiated the compensation that Class Members would receive in the settlement, then separately negotiated the attorneys' fees Kroger would pay to class counsel.[7]

---

353 F. App'x at 467. Here, the Settlement Agreement contemplates including the previous payments made by Kroger before the settlement as part of Plaintiffs' total recovery. Doc. 143, ¶ 33.

[6] As specified in the parties' agreement, the Funds Available for Settlement are $10,152,297.77 plus the costs of claim administration. Doc. 143, ¶ 21. In Plaintiffs' Settlement Motion, they identify the Funds Available for Settlement, including costs of claims administration, as $10,335,768.80. Doc. 145, PageID 1288.

[7] At the fairness hearing, counsel for Kroger did not contest this account of the parties' settlement negotiations.

At first blush, class counsel's argument seems appealing. After all, why not limit this Court's authority to award attorneys' fees different from the terms provided for in the parties' agreement, presumably negotiated at arm's length by attorneys of equal experience, resources, and sophistication?[8] The answer, of course, lies in the law. This Court has an unmitigated obligation to scrutinize class action settlements *and* the attorneys' fees awarded arising from its duty to protect absent Class Members; in the typical class action, every dollar awarded to class counsel is a dollar that would otherwise go to class members. *See Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1094–95 (6th Cir. 2016) ("[T]he court-approval mechanism [for class action settlements] contained in Rule 23(e) is designed to protect absent class members and other non-parties to the litigation . . . ."); *see also In re Cinfed,*, 2025 WL 1637686, at *10 (explaining that the duty to scrutinize attorneys' fees in class actions arises from "inherent conflict" between interests of class counsel and interests of absent class members, because in a typical common fund settlement, "every dollar that goes to the attorneys is one fewer dollar to share among the class"). Where the parties aver that attorneys' fees are only coming from Defendant, one might think the Court's role in scrutinizing attorneys' fees is assuaged.

As it turns out, there is authority to support limits on courts' authority to review settled attorneys' fees in wage-and-hour cases, but *not* in the class action context. In *Barbee v. Big River Steel, LLC*, 927 F.3d 1024 (8th Cir. 2019), the Eighth Circuit concluded that district courts do not have the authority to review settled attorneys' fees in FLSA actions. It observed: "The parties were entitled to settle the attorney fee issue, and no law gave the district court authority to interfere with that unconditional right." *Id.* at 1027. The settlement at issue in *Barbee*, however, was not a class-action settlement. While plaintiff in the *Barbee* action brought her

---

[8] Presumably, this is why class counsel discussed at the fairness hearing how negotiations were conducted.

case *initially* as a class action, her settlement with Big River was not on a class-wide basis—she agreed to release her claims against Big River, but no other members of the proposed class agreed to release their claims. *See Pierce v. Big River Steel LLC*, No. 3:17-CV-63, 2017 WL 5709905, at *1 (E.D. Ark. Nov. 13, 2017). Here, by contrast, the settlement provides that *all* Class Members who do not opt out will have released their claims against Kroger. Doc. 143, ¶ 40. For that reason, alone, *Barbee* must be viewed through a much different lens, and the Court finds that the rule expressed therein does not apply in this instance.

Additionally, as explained in *Hebert v. Chesapeake Operating, Inc.*, No. 2:17-CV-852, 2019 WL 4574509 (S.D. Ohio Sept. 20, 2019*)*, Sixth Circuit law clearly mandates that the Court review for reasonableness awards of attorney's fees in *all* class action settlements; there is no exception for fee awarded through a process negotiated separately from class recovery, which plays out often in many cases. *Id.* at *3 ("Sixth Circuit case law indicates that this Court must review settled attorney's fees for reasonableness in common fund cases such as this one.") (collecting cases); *see Rawlings*, 9 F.3d at 516 ("In this circuit, we require only that awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances."); *see also In re Cinfed*, 2025 WL 1637686, at *10 ("[C]ourts have a role to play in approving attorney's fees in class actions.").

### iii. Reasonableness of requested fee

Having resolved these two preliminary issues, the Court turns next to the penultimate question of whether class counsel's fee request is reasonable. "A reasonable fee is one that is adequate to attract competent counsel, but does not produce windfalls to attorneys." *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999) (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)) (alteration and internal quotation marks omitted). There are two methods for determining

23

whether an award of attorney's fees is reasonable: the percentage-of-the-fund method and the lodestar method. *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 498 (6th Cir. 2011). This Court sides with those courts that make it a practice to use one method to calculate fees and then to cross-check that determination using the other method. *Id.* Here, Plaintiffs' attorneys propose using the percentage-of-the-fund method. Doc. 146, PageID 1338. The Court agrees that this is the appropriate method for calculating attorneys' fees in this case. *See Satterly v. Airstream, Inc.,* Nos. 3:19-cv-32, 3:19-cv-107, 2020 WL 6536342 (S.D. Ohio Sept. 25, 2020) (adopting percentage method in wage-and-hour case and collecting supporting cases). However, the Court will calculate the percentage-of-the-fund using only the funds available for settlement, *excluding* the Initial Payments paid voluntarily by Kroger prior to any settlement being reached in this case between the parties.

Here, class counsel requests $4,878,376.85 in attorneys' fees and litigation expenses. Doc. 145, PageID 1288. However, the total funds available for settlement are $10,335,768.80. *Id.* As a percentage of the funds available for settlement, then, class counsel's requested fees are an eyebrow raising 47% –nearly half the recovery present in the common fund. This fee amount is high, given that the customary fees awarded in a typical wage-and-hour case in this and other districts is one-third of the common fund. *See Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 WL 6310376, at *5 (S.D. Ohio Nov. 25, 2019) (observing that "one-third of the settlement fund is a normal fee amount in a wage and hour case"); *Satterly*, 2020 WL 6536342, at *10 ("Class counsel requests an award of one-third of the settlement fund . . . . This is a normal fee amount in common fund settlement in wage and hour cases. The Court will not deviate from the norm here."); *Carr v. Bob Evans Farm, Inc.*, 1:17-cv-1875, 2018 WL 7508650, *4 (N.D. Ohio July 27, 2018) (Even "[i]n FLSA collective actions in Ohio,

courts have almost uniformly awarded attorney's fees that constituted one-third of the fund.").

Having noted that his award is higher as a percentage of the fund than what is typically awarded in actions of this type in this district, the Court turns to the *Ramey* factors as articulated by the Sixth Circuit for guidance. *See Ramey*, 508 F.2d at 1196. "There is no formula for weighing these factors. Rather, the Court should be mindful that each case presents a unique set of circumstances . . . and thus different factors could predominate depending on the case." *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 764 (S.D. Ohio Dec. 31, 2007).

### 1. Value of the settlement

As explained above, the settlement is valuable to Class Members, especially in light of the difficulties each Class Member would probably have faced in obtaining relief on their own, including having to hire counsel on their own. "The settlement provides tangible relief to class members and eliminates the risk and uncertainty that the parties would otherwise face if this litigation were to continue." *Cousin Vinny's Pizza*, 2019 WL 6310376, at *6. The fact that there were only eleven opt-outs out of a Class of more than 47,000 is a strong indication of the value the settlement provided to Class Members. Doc. 145, PageID 1297. *See Cousin Vinny's Pizza*, 2019 WL 6310376, at *6. However, the settlement is not *exceptionally* valuable to Class Members, such that it warrants awarding an unusually high percentage of the fund to class counsel.

### 2. Social value

There is no doubt a "benefit to society in ensuring that claimants with smaller claims may pool their claims and resources." *Id.* Society's stake in rewarding attorneys who take

25

wage-and-hour cases like this one indicates class counsel should receive a substantial award of attorneys' fees. However, the social value of this case is similar to other wage-and-hour cases; none of the factors present in this case militate towards awarding class counsel significantly more attorneys' fees—47% which is more than the—33% typically granted in this district for wage and hour and FLSA cases of this type.

### 3. Contingent fee basis

Class counsel took this case on a contingent-fee basis. Doc. 146, PageID 1341. Having assumed that risk, this supports the attorneys' request for receiving a significant portion of the common fund. By contrast, however, class counsel's representation agreement with Named Plaintiffs provided that Class Plaintiffs' attorneys were entitled to a contingency fee of up to 40% of the "gross settlement amount." Doc. 146-1, PageID 1352. Given the express terms of the agreement reached between the Named Plaintiffs and class counsel as to the percentage of the fund which should be paid as attorneys' fees and the determination by this Court that the Initial Payments should not be included in the settlement value, the Court concludes that it is proper to reduce the award of attorneys' fees to an amount more in line with the fund representing the "common fund to be distributed among members of the class," that the settlement created. *See Rawlings*, 9 F.3d at 515. An award of attorneys' fees in excess of 40% of the "gross settlement amount" violates that principle.

### 4. Value of the services on an hourly basis

This next consideration is sometimes referred to as the "lodestar cross-check." *Cousin Vinny's Pizza*, 2019 WL 6310376, at *6. In their initial request for an award of attorney's fees, class counsel did not provide information on the value of their services on an hourly basis. The Court requested that information at the fairness hearing, and class counsel provided those

billing records in subsequent briefing. Docs. 149, 150. Class counsel's lodestar is $1,707,980.05. Doc. 149, PageID 1425. This results in a "lodestar multiplier" of 2.85. Though slightly higher than the norm, this factor cuts in favor of approval of class counsel's requested fees, as courts frequently approve fee requests resulting in lodestar multipliers in this range. *See Cousin Vinny's Pizza*, 2019 WL 6310376, at *7; *see also Castillo v. Morales, Inc.*, No. 2:12-cv-650, 2015 WL 13021899, at *7 (S.D. Ohio Dec. 22, 2015) (observing that lodestar multipliers of approximately 2.5 are typical in wage-and-hour cases and other similar cases).

### 5. Complexity

The fifth factor, complexity of the litigation, cuts against approval of class counsel's requested fee award. Wage and hour cases are "generally complex, time-consuming, and risky." *Smith v. Local Cantina, LLC*, No. 2:20-cv-03064, 2022 WL 1183325, at *6 (S.D. Ohio Apr. 19, 2022). This case involves Class Members in many different states, which required class counsel to navigate the complexities of state-to-state variation in wage-and-hour law. However, this litigation was resolved at mediation at a rather early stage of the case, and did not involve a voluminous motion practice on the part of class counsel. *See* Doc. 145, PageID 1284.

Thus, compared to other wage and hour class actions litigated in this district which involve an extensive motion practice and multiple hearings this case is not particularly complex. For example, in *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2018 WL 5800594 (S.D. Ohio Nov. 6, 2018), class counsel's motion for class certification was opposed, and class counsel also needed to overcome defendant's motion to dismiss. In this case, by contrast, class counsel's motion for Class certification was unopposed, and Kroger never moved to dismiss. Importantly, class counsel in *Cousin Vinny's* received only one-third of the

common fund, which was less than their lodestar. *Cousin Vinny's Pizza, LLC*, 2019 WL 6310376, at *7.

To take another example, this Court recently approved a request for attorney's fees in the amount of one-third of the settlement amount where class counsel had prevailed before the Sixth Circuit on an issue of first impression. *Hawkins v. Cintas Corp.*, No. 1:19-cv-1062, 2025 WL 523909, at *4 (S.D. Ohio Feb. 18, 2025). That level of legal complexity, time consumption, and risk on the part of class counsel is absent here.

By comparison, it appears the most complex issue in the case was identifying how the underpayment came about and who was affected. While class counsel did a significant amount of work resolving that issue, Kroger and Deloitte also spent considerable time and resources in the effort to resolve the issue themselves. *See* Doc. 145, PageID 1284. Kroger, rather than class counsel, resolved much of the complexity in this case, while at the same time absorbing much of the additional administrative costs.

### 6. Professional skill and standing of counsel

The Court is aware that litigating against a national company of the size, sophistication, and economic resources of Kroger necessarily involves a degree of complexity. However, given that the case was resolved at an early stage, with more than a modicum of cooperation and administrative assistance from Kroger, the Court concludes that there is no unusual complexity here that justifies an award of attorneys' fees higher than what is typical in normal wage-and-hour class actions.

All parties in this action were represented by experienced wage-and-hour litigators. Anderson Alexander, PLLC has litigated hundreds of wage-and-hour cases around the country. *See Heitzman v. Calvert's Express Auto Serv. & Tire, LLC*, No. 22-cv-2001, 2023 WL

2117805, at *5 (D. Kan. Feb. 17, 2023). Robert DeRose, likewise, is an experienced wage-and-hour litigator. *See* Doc. 146, PageID 1343. Handley Farah & Anderson, which initially filed the *Austin* action in the Eastern District of Virginia and is included in the fee request here, is also experienced in class-action litigation. *See, e.g.*, *Shuman v. SquareTrade Inc.*, No. 20-cv-2725, 2023 WL 2311950 (N.D. Cal. Mar. 1, 2023). Counsel for Kroger, Mark Knueve, is chair of the wage and hour practice group at Vorys, Sater, Seymour and Pease LLP, one of Ohio's largest law firms. *See* Doc. 146, PageID 1343.

Counsel in this action have significant experience in wage-and-hour litigation. This cuts in favor awarding the requested fees, as it provides the Court some assurance that the request is reasonable. However, the professional skill and standing of counsel here does not automatically dictate that class counsel should receive a more generous fee award that is out of step with what is typically awarded in wage-and-hour class actions.

### iv. Reduced fee award

As previously noted, one-third of the common fund is a "normal fee amount in a wage and hour case." *Cousin Vinny's Pizza*, 2019 WL 6310376, at *5. The rule, as noted, is no different in FLSA collective actions in Ohio; courts have "almost uniformly awarded attorney's fees that constituted one-third of the fund. *Carr*, 2018 WL 7508650, at *4–*5. Beyond the wage-and-hour context, roughly one third of the common fund—or somewhat lower—is the typical award in class actions nationwide. *See* 5 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 15:89 (6th ed. 2025) (observing that recent empirical data indicates that "percentage awards in class actions are generally between 20%–30%, with the average award hovering around 25%"). A "normal fee amount" for a wage-and-hour case of one-third of the common fund, *see Cousin Vinny's Pizza*, 2019 WL 6310376, at *5, is reasonable

here, where the case involved the typical complexity of nationwide wage-and-hour litigation, but no unusual complexity beyond that.

For the reasons expressed, the Court will award approximately one-third of the funds made available for settlement. The total funds made available for settlement, including costs of claim administration, are **$10,335,768.80**. Accordingly, the Court will award attorneys' fees of **$3,445,256** to class counsel.

There is ample precedent in this circuit for an order of this type—reducing attorney's fees from the amount requested to one-third of the common fund. *See Carr*, 2018 WL 7508650, at *5 (reducing award of attorney's fees from approximately $1.2 million to $1 million, which was one-third of common fund); *see also Ramsey v. FirstEnergy Corp.*, No. 5:23-cv-86, 2023 WL 6794478, at *8 (N.D. Ohio Oct. 13, 2023) (reducing attorney's fees in FLSA action from $19,000 to approximately $15,000); *In re Cinfed*, 2025 WL 1637686, at *15 (reducing award of attorney's fees from approximately $230,000 to $175,000, which was *one fourth* of the common fund).

### v. Lodestar cross-check for reduced award

The Court has used the percentage-of-the-fund method to arrive at this award, having considered the *Ramey* factors and fees awarded in actions similar to this one. No separate analysis of the *Ramey* factors is necessary here, with the exception of factor four, the value of class counsel's services on an hourly basis, which is the "lodestar cross-check." *Cousin Vinny's Pizza*, 2019 WL 6310376, at *6.

Class counsel's lodestar is $1,707,980.05. The attorneys' fees awarded thus result in a lodestar multiplier of **2.017**—slightly below the norm for this district. This multiplier is reasonable, when compared with ones approved in similar cases in this circuit. *See Castillo*,

2015 WL 13021899, at *7 (approving multiplier of 2.5 in wage and hour class action, and collecting cases in which similar multipliers were approved); *Cousin Vinny's Pizza*, 2019 WL 6310376, at *7 (approving fee request that was *less than* class counsel's lodestar).

The current multiplier used here is also reasonable when viewed in light of the average lodestar multipliers approved in class actions nationwide. *See* William B. Rubenstein, § 15:89 (finding that average lodestar multiplier in common fund cases where size of fund was $ 6.5–12 million was 1.48, and average lodestar multiplier in Sixth Circuit common fund cases was 1.13). The lodestar multiplier of 2.02 for the fees awarded here—that is to say, a fee award of more than twice what class counsel would reasonably bill for their work—is "adequate to attract competent counsel, but does not produce windfalls to attorneys." *Rhodes*, 179 F.3d at 471.

### D. Counsel is entitled to reimbursement of costs.

Because the Court has reduced the award of Plaintiffs' attorneys' fees, it will separately address the litigation expenses incurred by class counsel. Class counsel did not request reimbursement of expenses separately from attorneys' fees in its Fee Motion. Doc. 146. Class counsel represent that they have incurred costs of approximately $48,845.38 in this litigation. *Id.* at PageID 1344–45.

"Under the common fund doctrine, Counsel are entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement." *Estate of Benjamin v. DJGN LLC*, No. 1:22-cv-166, 2023 WL 7536973, *7–8 (S.D. Ohio Nov. 13, 2023). These expenses are not excessive in the context of nationwide class-action litigation. In addition to attorneys' fees, the Court **AWARDS** $48,845.38 to class counsel as reimbursement of litigation expenses.

### E. The Court approves the proposed expenses of claim administration.

Class counsel requests approval of disbursal of administrative costs from the common fund, with settlement administrator Rust Consulting estimating those costs to be $175,000. Doc. 145-1, ¶ 16. The parties' Settlement Agreement contemplates disbursal of up to $220,000 of the common fund for settlement administration expenses. Doc. 143, ¶ 13. Based on the representations of Rust, an experienced settlement administrator, the Court finds these costs reasonable and **APPROVES** payment of settlement administration costs from the common fund.

### F. The Court approves case contribution awards to Named Plaintiffs.

As a final matter, the Court must address the question of case contribution awards for Named Plaintiffs. Under the terms of the proposed settlement, the Named Plaintiffs in the three cases presently before this Court will each receive enhancement payments of $5,000. *See* Settlement Agreement, Doc. 143, ¶ 45(d). Those named Plaintiffs are: Brandon Wilder, Donald Austin, Kacey Ebersole, Otis Woods, Deborah Winston, Sharon Simpson, and Lori Dalton. *Id.* ¶¶ 17, 26.

"[I]ncentive awards are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). Courts routinely approve these awards to compensate named plaintiffs for their service to the class and for the risks they incurred participating in the litigation. *See Hawkins*, 2025 WL 523909, at *5–6. In determining whether to approve incentive awards, courts often consider: (1) the benefit to members of the class, (2) whether class representatives assumed any financial risk, and (3) the amount of time and effort class representatives spent on the litigation. *Id.* at *5 (citation omitted).

Having considered these factors, the Court **APPROVES** the proposed case contribution awards. Notably, as to second of the *Hawkins v. Cintas Corp* factors identified, Named Plaintiffs took on some risk by leading a lawsuit against their employer. The first factor under *Hawkins v. Cintas Corp* also supports the incentive awards; this action produced meaningful benefits for Class Members. As for the third and final factor under *Hawkins v. Cintas Corp*, it cuts against approval because this case was resolved via settlement at an early stage, but the Court finds that this factor is outweighed by the other two. It is worth noting that case contribution awards in this range being approved by this Court for Named Plaintiffs are frequently approved in wage-and-hour class actions. *See Castillo*, 2015 WL 13021899, at *5 (S.D. Ohio Dec. 22, 2015) (approving $8,000 award for class representative and collecting cases where awards in similar amounts were approved).

## IV.    CONCLUSION

"In determining fee awards, courts should not become green-eyeshade accountants, but instead must content themselves with rough justice." *Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 618 (6th Cir. 2021). The Court has charted a course, in this case, as close to the Sixth Circuit's admonition as possible. Having concluded that class counsel erroneously included the Initial Payments in their calculation of the common fund,[9] the Court cannot approve the fee request because an award of 47% of the common fund is excessive given that this action was not especially complex. As class counsel themselves point out, an award of *one-third* of the common fund is routine in wage-and-hour class actions in Ohio. *See* Doc. 146, PageID 1338. Under these circumstances, the Court awards attorney's fees in the amount of one-third of the common fund. Such an award results in a lodestar multiplier of

---

[9]    The Court reached this conclusion, it should be noted, after requesting additional briefing on the issue.

just over two—which is proportional to what has been awarded in similar wage-and-hour actions in this and other districts across the nation under similar circumstances.  The Court finds this award to be appropriate in this case.

For the reasons stated, class counsel's Unopposed Motion for Settlement Approval (Doc. 145) is **GRANTED**. Class counsel's Unopposed Motion for Attorney Fees and Costs (Doc. 146) is **GRANTED IN PART**. The Court **AWARDS** attorneys' fees to class counsel in the amount of $3,445,256. The Court further **AWARDS** $48,845.38 to class counsel as reimbursement of litigation expenses, $175,000 to Rust Consulting for the costs of claims administration, and enhancement payments in the amount of $5,000 to each of the Named Plaintiffs in the three cases currently before this Court, as requested by class counsel.

**IT IS SO ORDERED.**

November 26, 2025

Jeffery P. Hopkins
United States District Judge